**John W. Stephens** (OSB No. 773583)
stephens@eslerstephens.com
**Michael J. Esler** (OSB No. 710560)
esler@eslerstephens.com
ESLER STEPHENS & BUCKLEY LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

**Christopher J. Kayser** (OSB No. 984244)
cjkayser@lvklaw.com
**John C. Rake** (OSB No. 105808)
jrake@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: (503) 222-4424
Facsimile: (503) 827-7600

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DIANE ANDERSON**, trustee of the Diane L. Anderson Revocable Trust; **BONNIE BUCKLEY**; trustee of the Bonnie K. Buckley IRA; **CARL AND KIRBY DYESS**, trustees of the Dyess Family Trust; **PETER KOUBECK**, an individual and trustee of Peter L. Koubeck IRA; **MICHAEL PETERSON**, trustee of the Michael T. Peterson IRA; and **ED WILSON**, an individual, | Case No.: 3:20-cv-01194-AC **SECOND AMENDED CLASS ACTION ALLEGATION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES (28 U.S.C. § 1332(d))** **DEMAND FOR JURY TRIAL** |
|      Plaintiffs, | |
|   v. | |

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

**DAVIS WRIGHT TREMAINE LLP**, a
Washington limited liability partnership;
**ROSS MILES**, an individual; **MAUREEN
WILE**, an individual;  **PACIFIC PREMIER
BANK**, a California chartered bank;
**RIVERVIEW COMMUNITY BANK, a
Washington chartered bank**,

        Defendants.

Plaintiffs allege:

## JURISDICTION

1.     By order dated February 23, 2022, the District Court determined that the

Court has jurisdiction of the subject-matter pursuant to § 4(a) of the Class Action Fairness

Act of 2005, 28 U.S.C. § 1332(d).

2.     This case involves the sale of "real estate" securities to Oregonians who were

told their investments would be well secured, responsibly managed, and safely returned

to them with promised interest.  Investors were told the securities consisted of "pooled"

real estate receivables secured by the underlying real property.  The securities were sold

by American Equities, including its principals, defendants Ross Miles and Maureen Wile,

with the participation and material aid of their lawyers, defendant Davis Wright

Tremaine, and their bankers, defendant Riverview Community Bank and defendant

Pacific Premier Bank.  In reality, the investments were not well secured, responsibly

managed, or safe.  Investor money was misused—it was commingled and then used for

improper and undisclosed purposes, including hiding earlier and ongoing losses,

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

"lending" to insiders and their family members, and paying returns to earlier investors.

Investor money was misused to repay loans defendant banks had made to American

Equities and its affiliates.  Collateral that was supposed to secure Receivables owned by

and owed to the Funds was instead transferred to defendant banks for (unrelated) loans to

American Equities.  In May 2019, the investment funds collapsed and were taken over by a

court-appointed receiver.  This action arises from the sales of securities in violation of the

Oregon Securities Law by American Equities, including Ross Miles and Maureen Wile,

and from the participation and material aid in those sales of Davis Wright Tremaine LLP

("Davis Wright"), Riverview Community Bank ("Riverview), and Pacific Premier Bank

("Pacific Premier").

## CLASS ACTION ALLEGATIONS

3.      Plaintiffs are seven investors who invested in securities issued by American

Equities, Inc. ("AEI") and its principals and affiliates, including defendant Ross Miles,

defendant Maureen Wile, their employee Miles Minsker, and AEI affiliate American Eagle

Mortgage Management, LLC ("AEMM").  This Second Amended Complaint refers to AEI

and its principals and affiliates, including defendants Miles and Wile, collectively as

"American Equities."

4.      The securities were in the form of private notes and ownership interests in at

least fourteen "American Eagle Mortgage"-branded funds, all of which are now in

receivership: American Eagle Mortgage 100, LLC; American Eagle Mortgage 200, LLC;

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**      ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

American Eagle Mortgage 300, LLC; American Eagle Mortgage 400, LLC; American Eagle

Mortgage 500, LLC; American Eagle Mortgage 600, LLC; American Eagle Mortgage

Mexico 100, LLC; American Eagle Mortgage Mexico 200, LLC; American Eagle Mortgage

Mexico 300, LLC; American Eagle Mortgage Mexico 400, LLC; American Eagle Mortgage

Mexico 500, LLC; American Eagle Mortgage I, LLC; American Eagle Mortgage II, LLC;

and American Eagle Mortgage Short Term, LLC (together, the "Funds" or "AEM Funds").

5.    Plaintiffs seek to recover their individual damages which, as of February 15,

2019, total over $3.7 million.  Plaintiffs are also suing as representatives on behalf of

members of a class of other similarly situated investors.  The class, as determined by the

Court in its order dated February 23, 2022, consists of at least 100 persons and total class

losses exceed $25.3 million.  Each plaintiff invested in one or more of the AEM Funds.

Plaintiffs' investment accounts are shown on the attached Schedule I, which lists the

investment/pool, account number, principal balance, and accrued and unpaid interest

according to the Receiver.  Each plaintiff was sold their AEM Fund securities by an offer to

sell that was made in Oregon or by an offer to buy the security that was made and

accepted in Oregon.

6.    The members of the Class are:

a.   each Oregon citizen who was sold a security issued by American Equities in one

of the Funds in violation of the Oregon Securities Law and is owed money by American

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Equities, including by one of the Funds, with respect to the Securities, and is not excluded from the Class pursuant to ¶ 7 below; and

b.   each person who is a co-claimant (*e.g.*, a co-owner) with a person described in subparagraph a. of this ¶ 6 and is not excluded from the Class pursuant to ¶ 7.

7.      The following persons are excluded from the Class:

a.    each person who is liable as provided in ORS 59.115(1) or (3) to any member of the Class, and including each defendant;

b.   each person who is an immediate family member of a person described in ¶ 7(a); and

c.   each person who opts out of the Class.

8.      Plaintiffs may sue as representative parties on behalf of all the members of the Class because: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defense of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interest of the class.

9.      This action may be maintained as a class action because, in addition to satisfying the prerequisites alleged in ¶ 8, the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

**DEFENDANTS**

10.    Defendant Ross Miles ("Miles") was the founder and sole owner of AEI and, with defendant Maureen Wile ("Wile"), an owner and manager of many of AEI's affiliates, including AEMM.  Miles holds himself out as a real estate developer and investment manager and he claims that he has had decades of success in real estate lending, development, sales, and investments.  Miles was the face of American Equities.  Miles and Wile together at all material times were in control of AEI, AEMM, and the AEM Funds. They used their positions to take significant amounts of investor money out of the AEM Funds for their own benefits and the benefit of their families.  As a part of their sales of AEM Fund securities, Miles and Wile targeted Oregon investors, primarily in the Portland metropolitan area, offering them securities by phone and mail while the investors were in Oregon.  In addition, Miles and Wile caused AEI and the AEM Funds to purchase receivables backed by Oregon real estate as a regular and ongoing part of the operations of the AEM Funds, AEI, and AEMM.  In addition to selling the AEM Fund securities, Miles and Wile participated in and materially aided the sales.

11.    When Miles and Wile decided to create and sell AEM Funds, they hired defendant Davis Wright to do all of the related legal work, including preparing all AEM Fund offering materials, filing notices of the sales with the SEC and various state agencies and serving as lawyers for the Funds.  Davis Wright is a Washington limited liability partnership that at all material times maintained a large office in Portland, Oregon, where

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

it has been registered to do business since 1996. A substantial number of the partners of Davis Wright are citizens of the State of Oregon. From 2002 through 2010, Davis Wright attorneys working primarily or exclusively in the firm's Portland office prepared offering materials for the AEM Funds used in connection with the sales of the AEM Fund securities, provided important legal services related to the Fund offerings, and served as general counsel to American Equities.

12.    Davis Wright participated and materially aided in the sales of securities alleged in this Second Amended Complaint. Davis Wright prepared the documentation used in connection with the sales, including so-called Private Placement Disclosure Documents ("PPMs") and accompanying subscription agreements, management agreements, limited liability company operating agreements, receivables purchase agreements, promissory notes (the securities documents), and underwriting criteria, which were exhibits to and were used in conjunction with the PPMs to sell the securities. These documents included legal papers necessary for American Equities to complete the sales of securities. Davis Wright's participation and aid in all these things contributed to the completion and consummation of the sale of the securities to investors. The documentation contained untrue statements and misleading omissions. (See below ¶¶ 26-31.) Davis Wright's knowledge, judgment, and assertions were reflected in the contents of the documents. On information and belief, Davis Wright also reviewed and advised American Equities on the content of general marketing brochures, marketing video(s), and

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

its website, all of which were intended to and did generate interest in American Equities

securities.  The Davis Wright-drafted offering materials were used to sell AEM Fund

securities to plaintiffs and other investors from no later than February 2003 until the Funds

entered receivership in May 2019.  Davis Wright also provided aid to the sales by locating

potential investors for AEM Funds and directing them to American Equities to invest, and

by listing the AEM Fund offerings on their website as successful transactions that they had

handled.

13.    Offering materials for all of the Funds required investors to provide written

notice directly to Davis Wright's Portland office, addressed to one of the firm's partners, in

order to make any legally effective notice to the Fund.  For every Fund except AEM

Mexico 400, each page of the Fund PPMs was stamped with a footer containing the firm's

full name, "Davis Wright Tremaine, LLP," and the PPM exhibits (the LLC agreement,

subscription agreement, etc.) were stamped with the firm's initials, "DWT."  Beginning in

August 2008, the PPMs for AEM 500 and AEM 600 (the largest Fund) told investors, under

the all-caps heading LEGAL MATTERS, "The law firm of Davis Wright Tremaine, LLP,

Portland, Oregon, has acted as counsel to the Company in connection with the offering of

Units in this offering."  Davis Wright instilled investor confidence in American Equities

by, among other things, affirmatively inserting its name in documents used to sell AEM

Fund securities.  Without Davis Wright's participation and aid, the sales of AEM Fund

securities would not have been accomplished.

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

14.     Riverview is a Washington chartered bank with branch offices in Vancouver, Washington.  On or before 2001, defendant Riverview began lending money to American Equities on what became a $3 million to $4 million line of credit.  Riverview did so knowing its own credit memoranda showed that in 2003 and beginning with 2005, in every year thereafter, American Equities was insolvent—its liabilities exceed its assets—and increasingly so.  (By January 31, 2008, AEI had a negative net worth of $400,000 and net operating losses of $383,000.)  Riverview knew that American Equities used the line of credit to purchase "first position real estate contracts and first position notes with deeds of trusts," that American Equities then formed "packages or 'pools'" of those loans, and then sold the "'pools' [securities] to investors."  In essence, on an ongoing basis, Riverview provided American Equities with the product that American Equities then securitized and sold to investors.  Riverview understood that repayment of its loans to American Equities depended upon American Equities' ability to continue to generate new investors: Riverview's loans to American Equities were to be paid when American Equities sold the "pools" of loans American Equities had purchased using the line of credit.  E.g., Credit Memoranda, Nov. 10, 2004, Feb. 17, 2006, Oct. 5, 2007, Oct. 3, 2008, Sep. 15, 2009, May 24, 2010.  Riverview knew that with the "economic slowdown" in 2007 and 2008, investors had "decreased"—being "more concerned about keeping cash than buying real estate products."  This had put "extreme pressure" on American Equities' "ability to continue to 'revolve' our line of credit," and had "left [American Equities] with no short-term source

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

to liquidate their inventory of notes/contracts on our line."  Credit Memoranda, Sep. 15, 2009.

15.     Riverview understood that American Equities was "operating essentially as a 'bank.'"  Credit Memoranda, Nov. 10, 2004, Feb. 17, 2006, Oct. 5, 2007, Oct. 3, 2008, Sep. 15, 2009, May 24, 2010.

16.     In addition to directly aiding American Equities in the sale of its securities, Riverview also held the Funds' deposit accounts.  It knew, therefore, the amount investors were paying for AEM Fund securities, and how those funds were being (mis)used.  On top of that, from September 28, 2007 to April 18, 2008, Riverview received $7,369,000 in payments on American Equities' line of credit by payment directly from the AEM Funds. Riverview was, in other words, "participating" in the proceeds from the sales of securities to investors.

17.     Riverview continued to lend money to American Equities (and separately to Miles personally) through the Great Recession and the collapse of the real estate market, and when American Equities was insolvent.  The Riverview line of credit remained in place until Fall 2009, at which time, Riverview began pumping the brakes in the face of AEI's difficulty in raising new capital from investors.  After years of AEI's insolvency and difficulties in meeting its obligations to the bank, Riverview stopped loaning funds and eventually was repaid through the combination of investor funds, the Funds' collateral, and the proceeds from a Regents Bank loan.  See below.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

18.    From around June 2008 until at least December 2018, defendant Pacific Premier Bank, including its predecessor Regents Bank, ("Pacific Premier") was an integral participant in the sales of AEM Fund securities.  Pacific Premier is a California chartered bank with branch offices in Portland and Vancouver Washington.  Pacific provided necessary financing to an insolvent American Equities through: (i) a "guidance line of credit" to AEI (and beginning in December 2010, AEMM); (ii) a credit line to defendant Miles, personally, that was earmarked for American Equities business operations; and (iii) several loans and credit lines to American Equities affiliates.  Pacific Premier did so knowing that with the exception of 2005, American Equities was at all times insolvent— that its total liabilities exceeded its total assets.  E.g., Loan Memoranda, Feb. 11, 2008, Aug. 10, 2009.  Pacific Premier did so knowing that American Equities was in the securities business and that Pacific Premier's loans were going to be used to finance the operation of that securities business.  Pacific Premier also did so knowing that as of 2009, American Equities prospects did not look good, that there had been a "significant decrease in the number of refinances within the pool of contracts managed by AEI, and  the "down turn in the economy ha[d] negatively impacted AEI's investor activity, resulting in a reduction in the sale of new contracts," and that "[l]osses within the stock market and/or from other investments have reduced the amount of excess investment capital available to AEI's client base."  Loan Memoranda, Aug. 10, 2009.  As alleged in more detail below, the financing was secured by real estate Receivables taken from AEM Funds, with no benefit to the

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**    ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Funds, and the loans enabled Miles to continue to sell securities to investors in the

insolvent American Equities/AEM Fund operation.  Money from Pacific Premier was

deposited into a general checking account and was used as part of commingled funds

across American Equities.  In 2015, Miles' personal contacts left the bank.  After nine

renewals of the guidance line, new bank management began questioning the propriety of

the guidance line of credit.  Pacific Premier worked with Miles to quietly wind down the

guidance line of credit in a way that was designed to cause minimal interruption to

American Equities' operations, including its continuing sales of securities in the AEM

Funds.  Specifically, the bank arranged for the transfer of the remaining guidance line of

credit debt off its books to a different lender, which was owned by Miles' personal

contacts and former bank managers.  All the while, the bank continued to provide Miles

and Wile with necessary funding so that American Equities could continue to operate and

sell securities through 2018.

19.    Advances on the AEI/AEMM guidance line were supposed to be used, in

Pacific Premier's words, "to finance the acquisition of specific contracts (secured by deeds

of trust or real estate contracts), to be sold to various investment pools managed by the

Borrower, or outside investors, within 12 months."  As Pacific Premier also put it, the

purpose was to "allow" (i.e., materially aid) American Equities to "purchase real estate

contracts at a discount" to be included in "various Investment Pools" that would then be

"sold to individual investors."  E.g., Loan Memoranda, Feb. 11, 2008, Aug. 10, 2009.  The

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

reference to "investment pools" was a reference to the existing Funds that AEI continued

to solicit investments in from plaintiffs, the class and other investors.  In essence, on an

ongoing basis, Pacific Premier provided American Equities with the product that

American Equities then securitized and sold to investors.  Pacific Premier also understood

that repayment of its loans to American Equities depended upon American Equities'

ability to continue to generate new investors:  Pacific's loans to AEI and AEMM were in

Pacific's own loan reports, to be, "paid off by investor funds."  E.g., Credit Approval

Memoranda, Nov. 16, 2015, Feb. 16, 2016.  The loans were to be repaid "from the sale[s] of

the real estate contract[s] into a new or established Investment Pool," that is, the AEM

Fund securities.  E.g., Loan Memoranda, Feb. 11, 2008, Aug. 10, 2009.  Pacific Premier was,

in other words, "participating" in the proceeds from the sales of securities to investors.

Those investors included the Oregon purchasers of AEM Fund securities, like plaintiffs

and the Class they seek to represent.  Many of the contracts purchased with Pacific

Premier financing were secured by Oregon real estate, and Pacific Premier recorded its

interests in each of the Oregon Counties where the real estate was located.  Despite what

American Equities was telling investors, Pacific Premier also knew American Equities was

in the (securities) business of "purchas[ing] real estate contracts at a discount and then

sell[ing] th[o]se contracts to investors at face value," and American Equities was earning

interest income from contracts held as inventory, broker fees, management fees from the

creation of investment pools, contract collection fees, and miscellaneous fees.  *Id.*  Pacific

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Premier's financing to American Equities made it possible to hide the insolvency of the AEM Funds and American Equities. But for Pacific Premier's ongoing financing and its cooperation in quietly winding down the AEI/AEMM guidance line, the insolvency of American Equities and the AEM Funds would have been apparent, and American Equities would not have been able to continue to sell AEM Fund securities after 2008. Pacific Premier provided material aid to and participated in the AEM Fund security sales at issue here.

20.     Davis Wright's, Riverview's, and Pacific Premier's participation or material aid—their personal contributions to the transactions—were important. It was necessary to complete the sale of securities. Each of them was a participant in the sale because, among other things, without its assistance, the sales would not have been accomplished; the sales would and could not have been completed or consummated without defendants' participation and material aid.

## FACTUAL ALLEGATIONS

### Early Formation of the Funds and the Means by which the Securities were Sold

22.     As it would repeatedly advertise to investors in all of the Fund PPMs, AEI was founded in 1979 by defendant Ross C. Miles, who was joined at the operation in 1984 by defendant Maureen Wile. At all relevant times, AEI acted through Miles and Wile. During the 1980s and 90s, their primary business was purchasing individual real estate mortgages on properties in Oregon and Washington for resale to investors in the Portland-

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Vancouver area.  The business model was described as a "one-to-one ratio investment": "we purchase an individual receivable and package it for sale to one individual."

23.     AEI's business of selling real estate paper required it to have a variety of licenses in Oregon and Washington, but AEI was never properly licensed.  In 1995, the Oregon Department of Consumer and Business Services issued a Cease and Desist Order to AEI, demanding that it stop selling real estate paper to Oregon residents without first obtaining a mortgage broker license.  The unlawful operations foreshadowed what would be a general practice over the following decades of operating outside of state and federal investor-protection laws.

24.     Before 2003, some investors made money on their AEI investments but, on information and belief, many investments were unsuccessful.  The one-to-one investments were not standalone real estate deals.  Instead, AEI, Miles, and Wile were involved in real estate development projects in Oregon and Washington, and sold to investors securities backed by real estate receivables secured by the same real estate in the developments owned and controlled by AEI, Miles, and Wile.  Defendant Davis Wright provided important legal services to AEI related to these development projects, which included RC Hanes LP; American Securities, Inc.; and Ridgecrest Properties III, LLC (together, and without excluding other development projects, "AEI Developments").  The success of a particular one-to-one investment was tied to the overall success of the particular development project, and by 2003, several of the AEI Developments, on information and

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

belief, were not generating sufficient returns for AEI to satisfy promises made to one-to-one investors.

25.     In early 2003 AEI introduced the AEM Funds as a new investment product it called "diversified mortgage funds."  The Funds were created to purchase real estate-backed notes from AEI Developments, which were to be pooled together into a portfolio specific to each fund.  Defendant Davis Wright was central to this new financing vehicle. In the words of one of its partners, Davis Wright was "producing" the offerings.

26.     The AEM Fund securities sold by American Equities consisted of long-term note obligations (Notes) issued by each Fund.  The Notes were securities as defined in ORS 59.015(19)(a).  The Notes had varying maturity terms: five, ten, and fifteen years. After August 2008, two Funds (AEM 500 and AEM 600) also offered a one-year Note.  The interest rate obligation on the Notes varied depending on the term (and, in later years, sometimes depending also on the amount invested), from 7% to 10%.  Interest was to be paid monthly.  Investors had the option of "reinvesting" the monthly interest paid in the Fund's securities.  Each monthly interest reinvestment constituted a new sale of a security to that investor.  American Equities accounted for the interest reinvestments by increasing the "principal balance" due on the investor's Note, thus effectively compounding the interest paid on the security.

27.     Each offering was a "part-or-none" offering meaning that in order for the project to get underway with a reasonable chance of success, a minimum amount had to

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

be raised.  American Equities told investors in offering materials that each investor's

investment amount would be held in escrow until such time as the minimum amount had

been received by that Fund.  Part-or-none offerings provide an assurance to investors that

the enterprise will be at least minimally capitalized.  In addition, a less knowledgeable

investor may be reassured and may be more willing to buy knowing that the offering

must be reviewed and found to be acceptable by other investors who, the investor may

reasonably hope, are more knowledgeable.  Part-or-none offerings mean that when

securities are sold by means of untrue statements or misleading omissions to an investor

who is part of the "minimum," the securities are sold by means of those untrue statements

or misleading omissions to all investors in that Fund.

28.     American Equities and defendant Davis Wright created each Fund as a

nominally separate limited liability company and described them that way to investors in

the PPMs and other materials prepared or edited by Defendant.  The Funds were named

sequentially, American Eagle Mortgage ("AEM") 100, AEM 200, 300, etc.; with two

additional sequences for the Funds designated as concentrating in Mexican properties

(AEM Mexico 100, AEM Mexico 200, etc.) and those available to non-accredited investors

(AEM I and II).  Investors in each Fund except AEM 600 were told that the offering would

expire on the earlier of several different dates, but in practice the Funds were kept open

for many years, as reflected in the chart below.  Consistent with that practice, in 2009 the

AEM 600 PPM told investors that "The Manager may, in the Manager's Discretion, extend

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

the offering." Following is a list of each Fund, the date on the PPM for that fund, the dates

on which it received funding from its first investor and the last funding by a new investor,

and the cost of Davis Wright's services for the offering (according to Regulation D filings

by Davis Wright). There were no AEM Fund PPMs other than those drafted by Davis

Wright. The Funds are listed in chronological order by PPM date.

| Fund | Date of Davis Wright-Drafted PPM | Date of First Investor Money | Date of Last *New* Investor Money | Cost of Davis Wright's Services for the Offering |
|---|---|---|---|---|
| AEM 100 | 2003.01.15 | 2003.02.01 | 2007.10.22 | $80,000 |
| AEM I | 2003.03.26 | 2003.04.15 | 2003.11.18 | $5,000 |
| AEM II | 2003.10.15 | 2003.12.09 | 2006.05.30 | $5,000 |
| AEM 200 | 2004.03.01 | 2004.04.07 | 2005.03.01 | $5,000 |
| AEM Short Term | 2004.12.01 | 2005.01.12 | 2005.01.12 | *Unknown* |
| AEM Mexico 100 | 2005.03.15 | 2005.02.11 | 2008.12.05 | $10,000 |
| AEM 300 | 2005.03.14 | 2005.03.25 | 2015.03.14 | *Unknown* |
| AEM Mexico 200 | 2005.06.06 | 2005.07.11 | 2013.10.29 | $7,500 |
| AEM 400 | 2006.05.01 | 2006.05.09 | 2007.10.22 | *Unknown* |
| AEM Mexico 300 | 2006.08.01 | 2006.08.18 | 2010.05.21 | $7,500 |
| AEM Mexico 400 | 2007.08.10 | 2007.06.21 | 2014.05.30 | $7,500 |
| AEM 500 | 2008.08.06 | 2008.08.12 | 2009.10.30 | $7,500 |
| AEM Mexico 500 | 2009.01.26 | 2009.04.05 | 2009.04.05 | *Unknown* |
| AEM 600 | 2009.06.30 2009.11.05 | 2009.07.30 | 2017.12.14 | *Unknown* *Unknown* |

29. Although the American Equities books currently show that the last money

from a <u>new</u> investor came into American Equities in December 2017, through a sale of a

security denoted for AEM 600, existing investors continued to invest accrued interest and

to reinvest money in the Funds for notes that matured through 2018 and into 2019. With

the exception of the AEM 600 PPM dated June 30, 2009, the PPMs were never updated;

and none of the PPMs or other offering materials ever showed new investors the historical

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

results of actual operations of the particular Fund or the results of actual operations of Funds managed by American Equities.

30.     American Equities sold investments in the AEM Funds to investors by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading (and the buyers did not know of the untruths or omissions):

a.  American Equities told investors in each Fund PPM, among other things, that:

i.     The funds raised by each Fund from each investor would be used exclusively for the purpose of acquiring secured real estate receivables in the form of land sale contracts, trust deeds, real estate mortgages, and promissory notes secured by those documents, which together would make up that Fund's identified "Receivables" portfolio. Each of the Receivables would embody an obligation secured by specific real property.

ii.    Each Fund and each Fund's portfolio of secured Receivables would be managed by a "Manager," which, in all cases, would be American Equities, Inc. (AEI), an entity that had been formed in 1979 by Miles and that specialized in the very business of each Fund: purchasing, servicing, and selling first position mortgage loans and trust deeds secured by interests in single and multi-family residences, income-producing property, mobile homes, and improved or unimproved land.  The Manager was controlled by its president, Miles, who, in turn, had over twenty-five years' experience in financial services.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**       **ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

This Manager was under a "fiduciary duty" to them and would perform its duties in good faith and with care, according to the Limited Liability Company Agreement included in each Fund PPM.  Using Washington law as an example, this duty is breached when a fiduciary misappropriates an asset or an opportunity that rightfully belongs to the LLC.

    iii.  The Manager would determine the purchase price for each Receivable acquired, "generally based on the anticipated return that the Receivable will generate for the Company, appropriately discounted to reflect the risks associated with the Receivable."  Each of the secured Receivables each Fund acquired would meet minimum underwriting criteria described in an exhibit to the Fund PPM. (The minimum underwriting criteria set forth different maximum investment to market value percentages (akin to a loan-to-value ratio) depending on the characteristics of the real property underlying the Receivable and the credit ("excellent payment") history of its owner.)  The Manager would review and analyze information regarding the Receivables, and because of its experience in the industry dating back to 1979, it was confident that its investigations would be complete and that it would be able to ascertain whether the information was accurate.  The Manager would act in good faith in purchasing any Receivables from its Affiliates; and that the price actually paid by the Company for any Receivable purchased an Affiliate might ("may") be "more or less" than the price that would have been paid in an arm's length transaction.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

iv.    The Manager (AEI) would manage and service (including collecting on) the Receivables, manage and service the Notes (including the obligations owed to investors), and report to investors "any important developments" relative to the Receivables. (Management Agreement included in each Fund PPM.)

v.    The investments (Notes) in each Fund would be repaid from amounts collected on that Fund's identified or identifiable portfolio of secured Receivables. Revenues from the collections on each Fund's secured Receivables would be used to pay, in the following order: (1) that Fund's defined expenses and reimbursable third party expenses; (2) a "Base Fee" (.5%, except for AEM 500, for which investors would pay a .75% Base Fee) and a "Reinvestment Fee" (1.5% of the amount of any Reinvestment); (3) the obligations owed to that Fund's investors on their investments (Notes); and (4) "Bonus Compensation" to the Manager of any remaining profit on the Fund's Receivables portfolio.

vi.    AEI had certain potential conflicts of interest arising from its affiliate relationships and management of other Funds, but AEI would conduct the business and operations of each Fund separate and apart from the business and operations of AEI, its affiliates, and the other Funds; would segregate each Fund's assets (including revenues from the collections on each Fund's secured Receivables) and not allow them to be commingled with the assets of other Funds, AEI, or other affiliates; and would maintain books and records specific to each Fund separate and apart from the books and records of

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

AEI, its affiliates, and each other Fund.

b.   American Equities repeated the messages told in the PPMs, telling investors in a

brochure (made around 2008), among other things, that:

i.   "American Equities, Inc. offers high-yield, stable investment opportunities in real estate receivables.  In business since 1979, we have accumulated a vast amount of experience buying individual notes and packaging them for resale to investors. We have cultivated a tradition of trust that we believe individual investors and brokers have come to expect.

Since opening our doors in 1979, we believe American Equities, Inc. has earned a reputation as a trusted advisor, astute investor, and an expert in the complex world of purchasing, servicing, and selling first position real estate receivables, secured by real property.

Thanks to our knowledgeable in-house investment specialists and thorough due diligence approach, we have historically maintained a steady, predictable, and safe return on investment for our clients.

We seek to provide investors a higher-than-average fixed rate of return by investing in well-secured first position real estate receivables. Historically, these receivables have typically outperformed the more volatile stock market.

We believe that our investors continue reinvesting with us because they know we will work hard to preserve their capital, provide a predictable cash flow, and deliver the responsive service they deserve."

ii.   "It is our mission to continue developing our tradition of trust, by refining our investment opportunities for our clients.  We intend to accomplish this by:

• Making sure that every major decision is made by our six-member senior staff with over 120 years' experience at American Equities, Inc., ensuring in-house, competent decisions.
• Maintaining a highly trained professional work force that provides unparalleled customer service.
• Continuing to refine and upgrade our education, technologies, products, and services."

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

iii.  "OUR VISION – Our purpose for being in business is to create investment opportunities that meet the financial goals of our clients, with the objective of allowing them to preserve their capital and providing them with predictable cash flow."

iv.  "Over the course of his 30 plus years in business, [Founder and President] Ross [Miles] has personally bought, built, developed, owned and sold well in excess of $60 million worth of real estate involving everything from single family homes to rock quarries, restaurants to farms, warehouses to subdivisions.  We believe you would be hard-pressed to find a type of real estate in which Ross Miles has not been involved.  An expert problem solver, Ross' meticulous attention to detail and his ability to think outside the box gives him a keen eye for excellent investments."

v.  "In an effort to allow our investors to diversify their investment dollars among many receivables, we offer diversified mortgage portfolios.  We handle the day-to-day management of the funds, but the investors own the receivables, not AEI. We put the investors in the driver's seat, while simultaneously offering expert advice and management that historically has provided a straightforward, stable, and predictable return-on-investment."

vi.  In acquiring real estate receivables, "AEI first conducts a thorough due diligence process which includes verifying credit, reviewing payment history, conducting a loan-to-value analysis, receiving documentation for approval and property title insurance.  We then purchase the seller's interest in the receivable and take over the right to receive the monthly payments from the payor.  We then package the receivable for resale to an investor or hold for our own portfolio.  This is what we call a one-to-one (1:1) receivable investment."

vii.  "Preservation of capital – We strive to give our investors confidence that their original capital will be preserved by conducting a thorough due diligence process.  Although past performance does not guarantee future results, they can draw further confidence from the fact that, in our history, no AEI investor has lost any amount of capital, whatsoever."

viii.  "Less than 2% default rate in most years – Our default rate is historically low.  Since opening our doors in 1979, AEI has experienced less than 2% default rate in most years on our receivables. In cases where defaults occurred, most of the properties still sold for a greater amount than what was owed on the property."

ix.  "A predictable cash flow – The investment offers a fixed rate of return for the

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**    **ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

length of the receivable so that investors can enjoy a predictability of cash flow. The only interruption to this arises if a foreclosure or early pay off occurs."

x.   "How much risk is associated with these investments? – Since AEI only invests in receivables where your original investment does not exceed a total of 80% of the property value, our default rate has been historically very low.  Though the national average is significantly higher, AEI has experienced a foreclosure rate of less than 2% of all receivables in most years since 1979.  In fact, although past performance does not guarantee future results, not one of AEIs' investors has ever lost any of their original capital as a result of a default.  You should always consider risk factors in offering circulars and related documents before making an investment decision."

xi.   "What if a default occurs? – Since the value of the real estate almost always exceeds our investment amount, in most cases there is a potential profit to be realized if the property were to be foreclosed upon and resold.  Historically, other real estate investors interested in purchasing distressed properties have shown interest in acquiring these loans in default."

xii.   Who handles the monthly disbursement on these investments? – Investors have the option of handling these themselves, or <u>AEI, a licensed contract collection agency</u>, can handle monthly collections and distribution.

xiii.   "COMPARISON OF RETURNS [from the CHAPTER FOUR: RISK VS. REWARD]

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**          **ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995





c.  In a marketing video made, on information and belief, around the same time as the brochure, American Equities told investors substantially the same things, and additional statements, including:

i.  The following voiceover describing the charts reprinted above:

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

"As you can see since year 2000, American Equities has out-performed the major index funds as well as most other fixed rate bond funds as per our example of one of the highest rated bond funds. If $100,000 was invested into each of these investment vehicles in January of 2000 through December of 2007, you can see that investing with American Equities Incorporated, which offers a fixed rate, less volatile return, has given the investor a significantly higher rate of return."

    ii. The following explanation of American Equities' shift from 1:1 investments to mortgage pools (i.e., the Funds):

"AEI looked to diversified mortgage funds as a way to respond to feedback from investors. A diversified mortgage fund is an opportunity for individual investors to participate in pooled investments, allowing for more diversification and potentially greater returns than 1:1 ratio receivables could offer. When we became looking into diversified mortgage funds in 2002, we saw that the vast majority of other companies owned the assets and sold divestures or bonds to investors. When investing in this type of fund, the issuing company is agreeing to pay a certain percent of interest and that promise is secured by corporate assets. From the company's point of view this is a very viable investment vehicle that gives them total control over the assets of the company regardless of the investors' input. In essence this takes all control away from the investor. If the company mismanages the investments there is little recourse for investors. In the case of mismanagement there are often legal fees and creditors to pay as well as other costs and expenses, leaving investors with a return of their investment that often ends up being pennies on the dollar.

American Equities Incorporated takes a different approach. For the benefit of the investors AEI creates limited liability companies (or LLCs) that purchase or lend first position real estate receivables for a group of investors. This group owns the LLC on a pro rata basis. AEI is hired to manage these funds on their behalf. In the event that AEI went out of business the assets of the fund would not be affected, since the LLC, which is wholly owned by investors, owns 100% of the assets. AEI manages the assets under specific directives from investors and is held accountable in accordance with its management agreement with the LLC. Our day to day management activities include a specific due diligence process in selecting receivables for the funds to purchase."

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

iii. "Our investors rely on our extensive experience and our ability to conduct a thorough due diligence process in selecting the receivables for the LLC. At American Equities Incorporated our goal is to mitigate any loss to investors and we show this commitment by offering our bonus compensation, both past and future compensation, as a means of protecting our investors' returns. While these investments are not guaranteed, American Equities Incorporated has attempted to lower the risk to investors through the creation of this reserve and through our due diligence processes for safer and reliable investing.

AEI has maintained a steady and predictable return on investment for our clients since 1979. While future performance is impossible to predict, our clients' investment funds have consistently grown since we opened our doors, providing yields between 7% and 12% per year. We believe our investors return to us because of our commitment to providing higher than average fixed rates of return by investing in well secured first position receivables. We also believe our clients continue reinvesting with AEI because they know we strive to preserve their capital, provide predictable cash flows, and deliver the responsive service they deserve.

Almost all our clients are repeat investors. Once a client begins investing with us, we believe our results speak for themselves. That is why most of your customers continue to increase their investments with us over time. We believe investors come back to us again and again because we present attractive options, handle their transactions competently and swiftly and maintain an intense level of personal involvement. Because we are principals, not brokers, we believe investors have confidence that we will make sound investment choices for them with diligence and with speed. We strive to operate on the worst-case scenario theory. If we would not be comfortable owning a property in the event of a foreclosure, we won't offer it to our investors. We always strive to put ourselves in our investors' position when helping them make investment decisions.

Contact us today to find out more about sound investment opportunities with American Equities Incorporated. Our accessible investor specialists are available to work with you to find an appropriate and flexible investment strategy."

d. The statements made to investors described in ¶¶ 30 a. – c. were material—a reasonable investor would find them important in making a decision to invest. Likewise, the facts that were not disclosed that, in light of the circumstances under which the

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

statements were made, made those statements misleading, also were material.  If

American Equities had published its actual track record, its true financial condition, its

inability to perform its obligations to investors and other creditors, its misuse of proceeds

(see below ¶¶ 32-33), and its noncompliance with state and federal laws and regulations

(see below ¶¶ 34-40), it would have adversely affected the market for its securities; it

would have shattered the illusion that American Equites created and maintained with the

material aid of defendants (see below ¶ 31).

    e.   The untrue and/or misleading statements made by American Equities in

connection with the sale of securities (and the illusion they created and maintained)

created a market for the AEM Fund securities, even if a particular investor did not see the

statement.

### Illusion of Credibility and False Expectations

    31.   The untrue statements and misleading omissions by means of which

American Equities sold the securities (see above ¶¶ 30 a.–c.) created and maintained an

(false) illusion of credibility, prosperity, and false expectations; created and maintained a

false impression that AEI was solvent, that it had a track record of successful investments

in real estate and real estate-backed notes, that it could keep and perform its obligations,

that an investor was taking upon him or herself nothing more than the ordinary risks

incident to a debt investment in a well-operated business of that sort run by successful

managers, and that investments with AEI, including the AEM Funds, were safe and

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

secure.  The untrue statements and misleading omissions and the resulting illusion and

impression they created, instilled, and maintained investor confidence in American

Equities, and created and maintained a market with investors for AEI securities, including

the AEM Funds.  The untrue statements and misleading omissions and the illusion and

impression they created covered up the undisclosed risks, including significant credit and

default risks associated with the real estate receivables that American Equities purchased

and packaged purportedly with money raised from investors.  The untrue statements and

misleading omissions created the illusion that American Equities possessed all the

necessary state and federal licenses and registrations permitting it to sell securities and

permitting it to conduct its securities and business operations, the purpose of such state

and federal licenses and registrations being to protect investors.  (See below ¶¶ 34-40).

They were misleading (at the times specified below) because American Equities did not

disclose:

    a.   Beginning in 2003, American Equities had significant credit and default risks

associated with the real estate receivables that American Equities purchased and packaged

with money raised from investors.

    b.   Beginning in 2003, American Equities and the AEM Funds suffered liquidity

problems that put it at risk of insolvency greater than the ordinary risks incident to a real

estate investment.

    c.   Beginning in 2003, American Equities did not have a track record of entirely

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**     **ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

successful investments in real estate and real estate-backed notes.

d.  By 2007, and on information and belief, beginning in 2003, American Equities could not keep and perform its obligations.  An investor was taking upon him or herself more than the ordinary risks incident to a well-operated business of that sort run by successful managers, and the AEM Fund investments offered by American Equities were not safe and secure; and

e.  By 2008, American Equities was insolvent or was at risk of insolvency.

f.  American Equities was in the (securities) business of "purchas[ing] real estate contracts at a discount and then sell[ing] th[o]se contracts to investors at face value."  There was no "may" be about it.

g.  American Equities was secretly earning interest income from contracts held as inventory, broker fees (see below ¶¶ 32 g.,55), management fees from the creation of investment pools, contract collection fees, and miscellaneous fees.

Through their conduct alleged in this Second Amended Complaint, defendants participated and materially aided in the sales of securities by aiding American Equities in creating and maintaining the illusion(s).

### Misuse of Proceeds

32.    American Equities' statements to investors about how funds raised by each Fund from investors would be used; how the amounts collected on each Fund's Receivables would be used; how the business and operations of each Fund would be

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

conducted separate and apart from the business and operations of American Equities and the other Funds; how each Fund's assets would be segregated and not commingled with the assets of other Funds, American Equities, or other affiliates; and how each Fund would maintain its own books and records separate and apart from the books and records of American Equities and each other Fund, were untrue and were misleading because American Equities omitted to disclose facts a reasonable investor would find important in making a decision to invest. In particular:

a.  By no later than 2007, and on information and belief, beginning in 2003, on a regular and consistent basis, one or more Funds did not have the cash flow to keep and perform its/their obligations to investors.

b.  On a regular and consistent basis during that time, one or more Funds required money to be taken from other Funds or from American Equities or its affiliates to cover and hide losses, an operation-wide inability to keep and perform obligations to investors, and other defaults; and to maintain the illusion that investing in American Equities securities was a safe and sound investment. That misuse covered up the undisclosed risks, including significant credit and default risks.

c.  As a part of the misuse of proceeds, American Equities regularly took money from one Fund's account (or, especially in early years, from an American Equities or an affiliate account), commingled it with other Funds' money, then used the commingled money to pay Funds' expenses, Fees, obligations, and Bonus Compensation.  Money

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

transferred from Fund to Fund, and among Fund(s) and American Equities, was not lent or repaid on any commercially standard terms.  American Equities also used Fund money to make loans and gifts to Miles, Wile, and their family members and business affiliates.

d.   By no later than 2006, and, on information and belief, beginning in 2003, American Equities commingled the funds raised by each Fund from investors (among Funds and among other American Equities monies) and commingled the amounts collected on each Fund's Receivables (including with amounts collected through AEI or its affiliates).  Assets of each Fund were not segregated and were commingled with the assets of other Funds, American Equities, and other affiliates.  Each Fund did not maintain its own books and records separate and apart from the books and records of American Equities and each other Fund.  When one Fund did not have the cash flow to keep and perform its obligations, *i.e.*, to pay its expenses, Fees, obligations, and Bonus Compensation, money was taken from other Funds to cover the obligations, *i.e.*, to pay the expenses, Fees, obligations, and (unearned) Bonus Compensation.  On top of that, "gifts" and undocumented "loans" were made out of the commingled accounts to affiliates and family members of the owners of American Equities.  The inter-Fund transfers never carried commercially reasonable terms such as interest rates, payment schedules, or maturity dates.  In the early years, some inter-Fund transfers were repaid to the transferor-Fund at the same amount (*i.e.*, without any interest), but no such repayment was promised and often it did not happen.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

e.   For example, at the end of 2006 (the earliest year for which plaintiffs currently have AEI financial statements), AEI's books reflected that it owed no less than $150,000 to the AEM Funds then in existence without any benefit to the AEM Funds and without any commercially reasonable terms governing AEI taking the money.  That amount ballooned to over $1.9 million by the end of 2007.  Those amounts reflect only <u>unpaid</u> debts owed to the AEM Funds, as recorded on AEI's books, and do not reflect debts that were paid back (which debts never carried interest or any commercially reasonable terms and were not in the interest of the AEM Funds).  Consistent with American Equities' practice of commingling all AEM Fund and American Equities money, AEI's financial statements do not specify from which AEM Fund AEI had taken money—American Equities moved money freely among all AEM Funds.

f.   As just one illustration of the extent of cash transfers between the Funds (as set out in the declaration of an AEI employee based on a review of records and filed by the Receiver), at month's end in November 2016, AEM 600 had transferred approximately $925,000 to AEI, $6.2 million to other Funds, and $189,000 in undocumented loans to affiliates or family members of Miles and Wile.

g.   Beginning no later than 2011, American Equities caused the AEM Funds to pay a newly created affiliate, AEMM, "Broker Fees."  On information and belief, AEMM served no business purpose other than to facilitate commingling within American Equities and to hide American Equities' insolvency.  The Broker Fees were paid to AEMM by an

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**    ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

AEM Fund each time the Fund purchased Receivables, served no legitimate purpose, and AEM Funds received nothing in exchange for the Broker Fees.

h.   According to the Receiver, as of April 2019, the balance of outstanding inter-Fund cash transfers was $10.9 million. This is separate from and does not account for the use of a central bank account to direct cash across the operation as needed.

i.   American Equities used offering proceeds (*i.e.*, investor cash) to gift or loan money to at least sixteen people or entities affiliated with American Equities or related to Ross Miles or Maureen Wile.  These transfers were not carried out through normal corporate procedures or on commercially reasonable terms.  The transfers were often not recorded in the books and records, and the money was often not paid back to the transferor-Fund.  Forensic investigation by the AEM Funds' Receiver found that, as of May 9, 2019, outstanding "loans" from the Funds to these people and entities totaled about $10.7 million in principal amount.  Nearly all of the "loans" to these people and entities were in default and in some instances, the people and entities never made any payment on the "loans."  There was no meaningful effort by American Equities to collect on "loans" to these people and entities.

j.   By 2007, and on information and belief, beginning in 2003, American Equities had a practice of pledging Fund Receivables as security to obtain third-party financing (including, by no later than June 2010, to obtain financing from defendant Pacific Premier Bank) for its benefit, without regard to the best interest of the Fund which had purchased

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

the receivable or investors in that Fund.  Specifically, American Equities would assign a

Receivable that had been held by a Fund to itself (*i.e.*, to AEI, AEMM, Miles, etc.) without

consideration, then would pledge the Receivable as collateral for a bank loan.  On

information and belief, the bank financing was used: (i) to satisfy obligations to investors

in various other Funds; (ii) to further the operations of AEI Developments described in ¶

24, and (iii) generally to benefit American Equities.  It was not uncommon for a Receivable

to later be reassigned back to one of the fourteen Funds, without regard to which Fund

initially held it.  This directly contradicted what investors were told: that they were the

sole owners of the Fund Receivables, that they held first position liens, and that

Receivables would be held by the Fund they invested in until maturity.

k.  As just one example, between March 2007 and July 2014, one Receivable

contract that a Fund had initially purchased from an AEI Development was then

transferred at least six times among six different Funds and American Equities.  At three

different time periods during those years, the Receivable contract served as collateral to a

bank for a loan to American Equities.

33.     In essence, at all relevant times, American Equities treated investor money

and assets as its own to use freely for its own benefit or the benefit of Miles and Wile, their

relatives, and their other business interests.  Investors were never told their money could

be treated that way or that American Equities needed to borrow money and the

Receivable contracts from the AEM Funds in order to continue operating.  Instead

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

investors were always told that their money would be used exclusively to purchase Receivables that would be held by the Fund in which they invested to maturity of the loan.

### Lack of State and Federal Licenses and Registrations

34.     Throughout the life of the Funds, American Equities was out of compliance with numerous investor and consumer safety laws and regulations.  As Davis Wright prepared the Fund offerings, the 1995 Cease and Desist Order from the State of Oregon referenced in ¶ 23 was not the only regulatory compliance matter that was not disclosed to investors.  Undisclosed regulatory compliance issues were of two broad categories: compliance with laws protecting consumers in real estate transactions and compliance with laws protecting consumers in securities transactions.  By not complying with the licensing and registration requirements, American Equities was able to unlawfully avoid disclosing its true financial condition to regulators and investors.

35.     American Equities told investors that each Fund and its portfolio of secured Receivables would be managed by a Manager: who had years of experience in the very business of each Fund; who was under a fiduciary duty to each Fund; who would perform its duties in good faith and with care; who would ensure that each secured Receivable met minimum underwriting criteria; who would review and analyze information regarding the Receivables and ensure that its investigations were complete and the information was accurate; who would manage and service the Receivables and the Notes; who would

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

report to investors "any important developments" relative to the Receivables; who would

conduct the business and operations of each Fund separate and apart from the business

and operations of American Equites and the other Funds; and who was a licensed

collection agency.  Those statements were untrue or misleading because American

Equities failed to disclose that:

a.   During its decades of experience and ongoing operations, AEI had not obtained

or maintained licenses and registrations from the states in which it operated that were

necessary to successfully conduct business and operations in the manner it told investors

it would, or even to conduct them at all.  It was not a "licensed contract collection agency."

(See ¶ 30 b.xii.)  Its track record included the 1995 Oregon Cease and Desist Order.  At all

material times, the failures to register or comply with regulations created material risks of

substantial monetary fines, and a risk that one or more of its business operations could be

shut down or significantly restricted by regulatory authorities.

b.   At all material times, AEI did not have the escrow agent license that was

required for it to collect and process payments on seller-financed real-property loans that

were held by others.  State regulation of licensed escrow agents included state authority to

"[r]emove or prohibit any principal officer, controlling person, director, employee, or

licensed escrow officer from participation in the conduct of the affairs of any licensed

escrow agent."  Wrongfully operating without a license is a criminal misdemeanor and

punishment includes the possibility for prison time and daily fines.  (In April 2018, AEI

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

entered into a Consent Agreement with the Washington Department of Financial

Institutions, agreeing that it was required to have an escrow agent license.  It agreed to

stop "conducting any servicing or contract collections activities that would require a

license" until it obtained the license or qualified for an exemption.)

      c.  AEI did not have a Washington Consumer Loan Act license, which was

required to service residential mortgage loans on properties in the State of Washington.

(The State of Washington told AEI to stop servicing mortgage loans in Washington

without a license.)

      d.  AEI was not licensed as an investment adviser in the State of Washington,

which was required for it to provide investment advisory services in the State of

Washington, including to the AEM Funds, which it managed.

      e.  AEI was not registered with the Securities and Exchange Commission (SEC) as a

Registered Investment Adviser under the federal Investment Advisers Act of 1940

("Advisers Act"), which was required to provide investment advisory services to the

Funds, which it managed.

      f.  AEI was not registered as a securities broker in accordance with the Securities

Exchange Act of 1934, nor was it licensed as a securities broker by the States of

Washington and Oregon.  All three of these licenses were required for it to effect securities

transactions for the Funds.  In addition, AEI's sales employees, including Miles Minsker,

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

were not licensed as securities salespersons by the States of Washington or Oregon, which was likely required because they were paid to sell AEI securities.

g.   Because neither AEI, its principals, agents or AEMM had the registrations and licenses required by state and federal laws, American Equities could not lawfully conduct its business operations, and there was a continuing material risk that its business operations could be shut down or significantly restricted.

h.   Because neither AEI, its principals, agents, or AEMM had the registrations and licenses required by state and federal laws and American Equities could not lawfully conduct its business operations, it was incurring significant contingent liabilities that could prevent it from keeping and performing its obligations to investors, including paying its debts as they came due, and could render it insolvent.

36.     The omissions alleged in ¶ 35 were material.  A reasonable investor would consider AEI's failure to have the federal and state licenses that were required, and its consequent inability to lawfully conduct its business operations, to be important in making a decision to invest. In addition, it evidenced a scofflaw attitude that belied the idea that the Manager was a highly-experienced, faithful, and careful fiduciary. Reasonable investors would find it important in deciding whether to invest that American Equities failed to comply with applicable laws, especially laws put in place to protect investors; they would find it important that the State's investor protections were not in place for an investment in American Equities.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**          **ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

37.    In 2009, defendant Davis Wright prepared the offering materials for AEM 600.  The first PPM for AEM 600 was dated June 30, 2009.  It contained no disclosures related to securities regulation risk, consistent with all of the previous offering materials for AEM Funds.

38.    Davis Wright prepared a new version of the AEM 600 PPM dated November 5, 2009.  In that new version, Davis Wright and American Equities added the following paragraph.

**Risks Related to Status of the Company and the Manager Securities Regulators.** [sic]

The Manager and the Manager's employees and agents are not registered with the SEC as investment advisers under the Investment Advisers Act of 1940, and are not registered with the SEC as brokers under the Securities and Exchange Act of 1934.  The Company is not registered with the SEC as an investment company under the Investment Company Act of 1940.  The Company, the Manager, and the Managers employees and agents are not registered as brokers or investment advisers with any state securities regulators.  If state or federal regulators were to investigate and determine that exemptions from registration are not available to the Company, the Manager, or the Manager's employees and agents, such determination would have a material adverse impact on the Company's operations and financial results, and may result in the financial failure of the Company.

39.    That November 2009 disclosure was never provided to AEM 600 investors who first invested in an AEM Fund before November 5, 2009.  What's more, no similar disclosure was added to any other Fund's PPM.  Therefore, it was not provided to investors in any of the other Funds, all of which continued soliciting existing investors to reinvest accruing interest and otherwise-matured investments, and at least the following

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

Funds which continued to solicit and receive <u>new</u> investor money:  AEM 300 (until no earlier than 10/29/15), AEM Mexico 200 (until no earlier than 10/29/13), AEM Mexico 300 (until no earlier than 5/21/10), AEM Mexico 400 (until no earlier than 5/30/14), and AEM 500 (until no earlier than 10/30/09).  Moreover, the November 2009 disclosure to AEM 600 investors did not provide any factual information by which an investor could have assessed the <u>level</u> of that risk, let alone disclose that such registration was, in fact, required and the likelihood that the SEC or one of the states in which AEI was selling securities or operating its receivables business would discover AEI's noncompliance and take regulatory action.  The underlying facts and the "risk" arising from AEI's (i.e., "the Manager's") failure to register with the SEC or the states in which it was operating as an investment adviser or broker would be important to reasonable investors considering investments or reinvestments in any AEM Fund.

40.    The November 2009 disclosure given to AEM 600 investors failed to disclose that AEI had been required to register with the State of Washington as an investment adviser since before 2003 and had failed to do so.  It also omitted to state either on what basis AEI supposedly was exempt from the registrations described in ¶ 38 above, or the likelihood that regulators, upon investigation, would "determine that exemptions from registration are not available."  On information and belief, there was no lawful exemption for AEI's failure to register with either state or federal regulators as an investment adviser and also likely as a broker, and that fact was not disclosed to investors.

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

41.     The omissions alleged in the previous paragraph made the November 2009 disclosure on regulatory risk to new investors in AEM Fund 600 misleading, because without those omitted disclosures, investors were given the impression that AEI (the Fund Manager) was in compliance with all applicable laws and regulations.  Reasonable investors would find the omissions in the previous paragraphs 28 through 34 important in deciding whether to invest in AEM Funds.

### Riverview Community Bank

42.     The line of credit described above (see above ¶¶ 14-17) was very profitable for Riverview—producing a high return on the bank's equity ("ROE") of close to 36%. Credit Memorandum, Oct. 5, 2007.  Riverview continued to extend credit to American Equities even when its financial statements revealed that it was insolvent.  The line of credit was known as a "guidance" line because any advances required that the use of the funds meet specific criteria and that the purchased Receivables needed proper documentation and an acceptable risk.  Most of the advances, however, lacked the required documents, and American Equities chronically failed to comply with material terms of the guidance line of credit such as timely providing financial statements. American Equities continued to struggle, but Riverview continued to accommodate its ongoing operations, embarking on a quiet exit from the relationship.  In the face of AEI's insolvency and years' long difficulties in meeting its obligations to the bank, as late as

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

2012, Riverview allowed AEI to defer loan payments, counting on AEI to have the loan

"refinanced with investor funds by year end," saying:

> American Equities is seeking investors to refinance RCB loan prior to 12/31/12. Borrower will pay the two Quarterly payments on 12/31/12 from company's operating cash flow if the subject loan is not refinanced with investor funds by year end."

Credit Memorandum, Oct. 23, 2012.

     43.    When new investors for the AEM Funds became harder for American

Equities to find, Riverview responded by refusing to renew the line of credit and terming

out the balance that American Equities owed.  Noting that American Equities' "debt to

worth…has been increasing to alarming levels over the past two or three years as the

company struggles to rid itself [of] non-earning real estate assets," Riverview decided that

"because of [American Equities'] lack of profitability and lack of revolving on the line, it is

prudent for the bank to discontinue the revolving function."  Credit Memorandum, Sep.

15, 2009, May 24, 2010, Sep. 15, 2010.  Despite all this, Riverview did not take steps to

foreclose on its loans, and, instead chose the strategy of making a quiet exit that would

help (aid) ensure that investors did not learn about the precarious financial condition of

American Equities and the Funds and would help facilitate the repayment of its loan, at

least in part, from investor funds.  Foreclosing on the line of credit and the Fund

Receivables would have shattered the (false) illusion of solvency, safety, and prosperity

that was necessary for American Equities to continue selling securities and for Riverview

to be repaid.  By following the quiet exit strategy, the bank managed to end its credit

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

relationship with AEI and to be made whole, and thereby enabling (aiding) American

Equities to victimize more investors.

## Pacific Premier Bank

44.    In 2008, after a period of rapid increase in real estate values, the real estate

market crashed.  The market collapse affected the AEI Developments, American Equities,

and its borrowers as well.  As a result, there was a decline in performing loans and an

increase in defaults, particularly from more recent loans where the loss of value of the real

estate exceeded the loan the property secured.  This was true not only of loans made by

American Equities and the Funds to unrelated parties, but also to investments the Funds

had made to related parties and affiliates.  American Equities had become functionally

insolvent in that it could not liquidate its assets for enough money to repay investors and

it needed new investor money to continue to pay interest and redeem investors whose

notes came due.

45.    American Equities did not tell investors that by no later than 2008, American

Equities' and the Funds' undisclosed previous liquidity problems had developed into

functional insolvency.  Nor did American Equities tell investors that new investor money

coming into the Funds was needed to keep the operations afloat and make payments of

interest and redeem notes that were due and that the only way American Equities could

continue to maintain the appearance of stability and safety was through the rampant

commingling across the operations described in ¶¶ 23-33, above.

**SECOND AMENDED CLASS ACTION COMPLAINT**
    **FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

46.     Beginning no later than June 2008, defendant Pacific Premier Bank provided a guidance line of credit to AEI that was necessary to American Equities' operations, including in selling the AEM Fund securities.  Like Riverview's guidance line, Pacific Premier required American Equities (and later AEMM) to meet certain criteria before any money could be drawn on the loan.  The guidance line was first provided to AEI in the amount of $3.1 million.  Advances on the line were purportedly to be used by AEI to purchase real estate-secured promissory notes, with the notes secured primarily by properties located within the Western United States, including many in Oregon.

47.     AEM Fund security sales to investors were the "primary source of repayment" to Pacific Premier for the life of the guidance line, which remained in place through no earlier than early 2015.  The stated purpose of the guidance line was short-term funding.  American Equities (and later AEMM) was supposed to document each advance with a separate promissory note with a maximum maturity of 12 months, by which time Pacific Premier understood there would be a "sale of the … contracts to either an individual investor or an established investment pool," *i.e.*, one of the AEM Funds.

48.     AEI provided the bank with financial statements in 2008 that reflected the scale of its liberal borrowing from the AEM Funds and its accelerating difficulty in covering for its borrowing with new investor money:  outstanding debt owed by AEI to the AEM Funds increased by over 1,100% between fiscal year ends 2006 and 2007.  In early 2008, the outstanding balance owed to the AEM Funds on AEI's books was nearly $2

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

million.  The Davis Wright-drafted AEM Fund PPMs and offering materials, which Pacific

Premier refers to as "prospectuses" in its internal loan memoranda, did not permit AEI to

borrow from the AEM Funds.

49.    Guidance line of credit advances were made by Pacific Premier based on

"drive by appraisals" to determine the value of the real property securing each loan,

perpetuating American Equites' general business practice of acquiring real estate interests

that were overvalued.  And the property "value" that the bank approved as supporting an

advance often included a broker's fee, paid by American Equities to a third party or to an

affiliate.  When AEI purchased a Receivable contract for resale to an AEM Fund (the

purpose of the guidance line funding), American Equities capitalized broker's fees into the

supposed value of the contract on its books.  When it sold a contract to a Fund (the bank's

expected primary source of repayment), the fee continued to be included in the contract's

"value," contributing to the overvaluation of contracts on the Funds' books.

50.    In 2012, the bank considered requiring industry standard appraisals to

determine the value of the real estate securing each advance on the guidance line.  Miles

told Pacific Premier that AEI would be "unable to comply" with such a requirement and

that AEI would "consider developing an alternative banking relationship" if Pacific

Premier required industry standard appraisals.  As a result, the guidance line of credit was

renewed again without the change.

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

51.     Advances on the guidance line of credit were paid directly by Pacific

Premier into a checking account belonging to AEI or, after December 2010, AEMM.  The

guidance line of credit was an essential part of American Equities' misuse of proceeds,

alleged above in ¶¶ 32-33.  Although the bank recorded a security interest in real property

to secure each advance, it did not require that American Equities use the advances for

their intended purpose of purchasing an interest in that real estate, or for any particular

use.  And in fact, American Equities freely used funds from the guidance line for its wider

operational costs, transferring the money to Miles, Wile, and among affiliates.

52.     Also, advances on the guidance line were sometimes secured by Receivable

contracts that belonged to the AEM Funds.  In or around March 2013, reassigning

Receivable contracts out of an AEM Fund to secure advances on the Pacific Premier line,

without consideration to the AEM Fund, became a widespread practice by American

Equities.  In that month alone, American Equities transferred no fewer than six Receivable

contracts from different AEM Funds to AEMM and then to Pacific Premier in exchange for

over $833,000 in funding.  That money was first paid by Pacific Premier into an AEMM

checking account, then transferred to AEI, and was then used, on information and belief,

to pay down AEI's debt at Riverview (or to cover other costs or obligations, to make that

paydown possible without revealing American Equities' true financial condition).

53.     At least three of those Receivable contracts taken from AEM Funds in March

2013 were later transferred back to a Fund, only to be transferred out again in or around

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**     ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

June 2014, again to be used as collateral for a Pacific Premier advance on the guidance line. Throughout those times, the records of the Funds continued to reflect the Receivables as held by the Funds, even though they had been assigned to the bank to collateralize a loan to American Equities.

54.     In the spring of 2014, the bank renewed the guidance line of credit for the ninth time.  In underwriting the renewal, the bank analyzed AEMM's and AEI's internally prepared financial statements and the overall operations of American Equities, including management of the pools (*i.e.*, the Funds).  In its memorandum approving the loan renewal—signed off on by at least five bank employees—the bank noted that AEMM revenues in 2013 were half of the 2011/12 averages.  "Prior year revenues were weighted heavily in contract sales," *i.e.*, selling real estate contracts to the AEM Funds, but "[i]n 2013, this shifted away from contract sales ([down to] 29.5% [of revenue]) and more towards broker fees."

55.     The bank explained in its memorandum that these "broker fees" were a means for American Equities to profit on the front end of an AEM Fund purchase of a Receivable contract:  "Broker fees are earned when AEMM facilitates the purchase of contracts/notes directly by the individual pool [Fund], instead of acquiring within AEMM and subsequently selling to the pool.  The broker fees represent the difference between the purchase price and the price that provides the desired return to the pool."  In other words, investor money into a Fund was used to pay an undisclosed "Broker Fee" to AEMM on

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

top of each Receivable contract purchase. "In 2013," the bank observed, "Broker fees were significant at $723M. Broker fees were zero in 2012. This is expected to remain high in the future."

56.    Pacific Premier also explained that AEMM was using the investor money in part to pay $15,000 each month to an AEI Development for money it lent American Equities to pay off other third-party debt. (See above ¶¶ 32-33.)

57.    Pacific Premier approved the ninth renewal of the guidance line in April 2014. As in past loan memoranda, the bank noted favorably Ross Miles' relationship with bank founder Thomas Young, "dating back to the late 1970's," when American Equities began. Miles also touted his relationship with Young to investors.

58.    By 2015, when the guidance line came up for its tenth renewal, Young had left Regents, Pacific Premier's predecessor. The bank's internal assessment of American Equities by new management soured, noting that it was highly leveraged and its "in-house accounting [was] not adequate." Its hesitations, however, were counterbalanced by the continued benefits of Miles' business with the bank: "Borrower has been a strong advocate for Regents Bank in the past and has provided strong deposit relationship and has referred a number of clients … Borrower and referred clients (for which Ross maintains a certain level of influence) maintain $3.4MM in loans outstanding and $3.2MM in avg deposits."

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

59.    Over the course of several months, the bank met with Miles and, although the guidance line of credit had not been renewed and existing loans on the line were maturing, the bank did not terminate its relationship or cut off funding to American Equities.  It provided extensions on the maturing loans until quietly passing them off its books to Young's new financing company.

60.    Throughout this time, Pacific Premier had also provided credit directly to Miles for American Equities operations, which continued after 2015 through 2018.  In June 2008, for example, the bank approved a $50,000 line of credit to Miles "to finance short-term business cash flow needs," recognizing the "business" as AEI, its affiliates, and the AEM Funds.

61.    In late 2009 and early 2010, Miles took bad debt off of the bank's hands and the bank, in exchange, lent additional money to Miles secured by deeds of trust taken from the AEM Funds for no consideration.  (See above ¶¶ 32-33.)  Specifically, in December 2009, Miles purchased a loan from the bank at par; the loan was secured by a promissory note and deed of trust, the borrower on which, Franchise Management Services, Inc., was in bankruptcy.  Given the uncertainty of the borrower's ability to pay, Miles approached the bank looking for more "cash flow."  The bank agreed to lend Miles $1.025 million.  The bank described the loan as being "a result of negotiations with the Borrower on the sale of a problem credit by the Bank to Mr. Miles."  The $1.025 million reciprocal loan to Miles was secured by two real estate receivables, which Pacific Premier recognized "were

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**    **ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

originally owned by American Eagle Mortgage 100 and American Eagle Mortgage 400."

The bank accepted them as collateral for the loan to Miles after they were "assigned from

the given investment [fund] to Ross Miles personally and then assigned to [Pacific

Premier's predecessor] Regents Bank" as a requirement to close the loan, which happened

in May 2010.  Earlier in January 2009, Pacific Premier "loaned" Miles $600,000 in order that

that Miles could pay off another bad Miles-related loan Pacific Premier had made on a

property in La Pine.  Miles provided as collateral six Receivables that were owned by and

owed to AEM Funds.  The AEM Funds received no consideration for transferring the real

estate loans to Pacific Premier.  Miles willingness to take the bad debts off the bank's

hands motivated Pacific Premier to continue to extend credit to American Equities and

then <u>quietly</u> wind down the guidance line of credit—all the while providing American

Equities the money necessary to maintain its (false) illusion of solvency, safety, and

prosperity, and necessary for it to continue selling securities.

62.    As a part of that $1.025 million loan in May 2010, Miles and the bank agreed

that all payments by the underlying borrowers on the two real estate loans now securing

his personal debt, which had been part of the Receivables owned by AEM 100 and AEM

400, would go directly to a Pacific Premier account, from which Miles' loan payments to

the bank would automatically be deducted.  Miles was expected to personally net over

$6,000 each month from the transaction—*i.e.*, from the reassignment of two contracts from

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

AEM Funds to Pacific Premier as security for a personal loan.  The AEM Funds received

no consideration for transferring the real estate loans to Pacific Premier.

63.     In January 2011, Pacific Premier renewed Miles' $50,000 "short-term business

cash flow" line of credit for the fourth time.  The bank noted that as a revolving line of

credit, it was intended to be used "at 50% of the commitment amount" and fully

"revolve"—*i.e.*, rest at a zero balance for some time—each year.  During 2010, however,

the outstanding balance was never below $40,000 and was maxed out at the time of

renewal.  Despite that, the bank renewed the line of credit.

64.     When Pacific Premier quietly wound down the guidance line of credit in

2015, it not only left Miles' line of credit in place, but it increased the available credit to

$75,000.  Pacific Premier's credit line to Miles was used, on information and belief, to pay

obligations to existing investors and as needed throughout American Equities to hide its

insolvency.  In 2017, Miles still was not meeting the bank's requirement that the line rest at

a zero balance for 30 days, but the bank continued to renew it.  In December 2018, with

American Equities in freefall, it was renewed yet again.

65.     The Pacific Premier lines of credit to American Equites (including to AEI,

AEMM, and Ross Miles) made possible the sales of AEM Fund securities from no later

than June 2008 to the collapse of the Funds in 2019.  Without those lines of credit,

American Equities would not have the money necessary to continue its (false) illusion of

solvency, safety, and prosperity; it would have not been able to continue selling securities.

**SECOND AMENDED CLASS ACTION COMPLAINT**
              **FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

By providing credit advances of necessary funding secured by receivable contracts taken from the AEM Funds, Pacific Premier participated in American Equities unlawful securities sales and its unlawful operations of a securities business.

### Collapse of American Equities

66.     By early 2019, obligations to investors finally overwhelmed American Equities' capacity for bringing in new money.  In order to stave off investors and other claimants, Miles and Wile hired a workout specialist to attempt to negotiate with creditors and investors.  When the workout specialist reviewed the situation, he told Miles and Wile that they should consent to the appointment of a Receiver to take charge of the Funds.

67.     In May 2019, on Ross Miles' motion, the Funds were put into a court-supervised Receivership and an injunction was entered preventing plaintiffs from suing AEI and the Funds.  The Court has since granted the Receiver's request that all of the Funds be treated as a single operating entity due to the extensive commingling of assets and cash among the Funds.

### FIRST CLAIM FOR RELIEF

**Oregon Securities Law**
**Sales in Violation of ORS 59.115(1)(b);**
**Recovery under ORS 59.115(2)**
**Against Defendants Miles and Wile**

68.     Plaintiffs reallege ¶¶ 1-67.

69.     Miles and Wile (along with others in American Equities) sold securities to plaintiffs and members of the Class by means of untrue statements of material facts or

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of ORS 59.115(b). The untrue or misleading statements of fact are described in ¶¶ 22-65 above. Each of the untrue or misleading statements were material in that a reasonable person in the position of plaintiffs and the other investors would have considered the information important in making a decision to invest in an AEM Fund.

70.    A schedule of plaintiffs' investment accounts is attached as Schedule I. Pursuant to ORS 59.115(1), (2), and (3), plaintiffs and members of the Class are each entitled to damages in the amount of the consideration that was paid for the securities, and interest from the date of payment equal to the greater of 9% interest or the rate provided in the security, less any amount received on the securities. In those cases where an investor received an interest dividend and simultaneously reinvested it (*i.e.*, where an investor did not receive an immediate cash payment of the interest), the interest is accounted as (a) an "amount received on [a] security"; and (b) the "consideration paid for [a] security," and it bears interest at the rate of 9% from the date of payment. The damages of plaintiffs and the members of the Class are in an approximate amount in excess of $25.3 million. Interest accrues until the date of payment. Plaintiffs will tender their securities at a time before entry of judgment.

71.    In those cases where a plaintiff no longer owns a security, a plaintiff is entitled to recover damages in the amount that would be recoverable upon a tender, less

Page 54    **SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**    ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

the value of the security when the purchaser disposed of it and less interest on such value at the rate of 9% per annum from the date of disposition.

72.     Pursuant to ORS 59.115(10), this Court should award plaintiffs their reasonable attorney fees.

## SECOND CLAIM FOR RELIEF

**Oregon Securities Law**
**Sales in Violation of ORS 59.115(1)(b);**
**Liability under ORS 59.115(3); Recovery under ORS 59.115(2))**
**Against Defendants Davis Wright, Riverview, and Pacific Premier**

73.     Plaintiffs reallege ¶¶ 1-67.

74.     American Equities sold securities to plaintiffs and members of the Class by means of untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of ORS 59.115(b).  The untrue or misleading statements of fact are described in ¶¶ 22-65 above.  Each of the untrue or misleading statements were material in that a reasonable person in the position of plaintiffs and the other investors would have considered the information important in making a decision to invest in an AEM Fund.

75.     Defendant Davis Wright is jointly and severally liable with American Equities, including Miles and Wile, for participating or materially aiding in the sales in the manner described in ¶¶ 11-13, 20, and 34-41 above.  (ORS 59.115(3).)

76.     Defendant Riverview Community Bank is jointly and severally liable with

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

American Equities, including Miles and Wile, for participating or materially aiding in the sales in the manner described in ¶¶ 14-17, 20, and 42-43 above.  (ORS 59.115(3).)

77.    Defendant Pacific Premier Bank is jointly and severally liable with American Equities, including Miles and Wile, for participating or materially aiding in the sales in the manner described in ¶¶ 18-20 and 44-65 above.  (ORS 59.115(3).)

78.    A schedule of plaintiffs' investment accounts is attached as Schedule I. Pursuant to ORS 59.115(1), (2), and (3), plaintiffs and members of the Class are each entitled to damages in the amount of the consideration that was paid for the securities, and interest from the date of payment equal to the greater of 9% interest or the rate provided in the security, less any amount received on the securities.  In those cases where an investor received an interest dividend and simultaneously reinvested it (*i.e.*, where an investor did not receive an immediate cash payment of the interest), the interest is accounted as (a) an "amount received on [a] security"; and (b) the "consideration paid for [a] security," and it bears interest at the rate of 9% from the date of payment.  The damages of plaintiffs and the members of the Class are in an approximate amount in excess of $25.3 million.  Interest accrues until the date of payment.  Plaintiffs will tender their securities at a time before entry of judgment.

79.    In those cases where a plaintiff no longer owns a security, a plaintiff is entitled to recover damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value

**SECOND AMENDED CLASS ACTION COMPLAINT FOR OREGON SECURITIES LAW DAMAGES**         ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

at the rate of 9% per annum from the date of disposition.

80.    Pursuant to ORS 59.115(10), this Court should award plaintiffs their reasonable attorney fees.

### THIRD CLAIM FOR RELIEF

**Oregon Securities Law –**
**Sales in violation of ORS 59.135;**
**Recovery under ORS 59.115(2)**
**Against Defendants Ross Miles and Maureen Wile**

81.    Plaintiffs reallege ¶¶ 1-67.

82.    Miles and Wile, along with American Equities, sold securities in violation of ORS 59.135(2) through (3) (civil liability under ORS 59.115(1)).  Miles and Wile, directly or indirectly, in connection with the sale of the securities or the conduct of a securities business:

(1) made untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; and

(2) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

83.    A schedule of plaintiffs' investment accounts is attached as Schedule I. Pursuant to ORS 59.115(1), (2), and (3), plaintiffs and class members are each entitled to damages in the amount of the consideration that was paid for the securities, and interest from the date of payment equal to the greater of 9% interest or the rate provided in the security, less any amount received on the securities.  In those cases where an investor

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

received an interest dividend and simultaneously reinvested it (*i.e.*, where an investor did not receive an immediate cash payment of the interest), the interest is accounted as (a) an "amount received on [a] security"; and (b) the "consideration paid for [a] security," and it bears interest at the rate of 9% from the date of payment. The damages of plaintiffs and the members of the Class are in an approximate amount in excess of $25.3 million.  Interest accrues until the date of payment.  Plaintiffs will tender their securities at a time before entry of judgment.

84.      In those cases where a plaintiff no longer owns a security, a plaintiff is entitled to recover damages in the amount that would be recoverable upon a tender, less the value of the security when the purchaser disposed of it and less interest on such value at the rate of 9% per annum from the date of disposition.

85.      Pursuant to ORS 59.115(10), this Court should award plaintiffs their reasonable attorney fees.

**FOURTH CLAIM FOR RELIEF**

**Oregon Securities Law –
Sales in violation of ORS 59.135;
Liability under ORS 59.115(1) and ORS 59.115(3);
Recovery under ORS 59.115(2))
Against Defendants Davis Wright, Riverview, and Pacific Premier**

86.      Plaintiffs reallege ¶¶ 1-67.

87.      American Equities, including Miles and Wile, sold securities in violation of ORS 59.135(2) through (3) (civil liability under ORS 59.115(1)).  American Equities,

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

including Miles and Wile, directly or indirectly, in connection with the sale of the

securities or the conduct of a securities business:

>     (1) made untrue statements of a material fact or omitted to state material
>
> facts necessary in order to make the statements made, in the light of the
>
> circumstances under which they are made, not misleading; and
>
>     (2) engaged in acts, practices, or courses of business which operated or
>
> would operate as a fraud or deceit upon any person.

88.     Defendants Davis Wright, Riverview, and Pacific Premier are jointly and

severally liable with American Equities for participating or materially aiding in the sales in

the manner described above in ¶¶ 11-13, 20, and 34-41, for Davis Wright, ¶¶ 14-17, 20, and

42-43, for Riverview, and ¶¶ 18-20 and 44-65, for Pacific Premier.  (ORS 59.115(3)).

89.     A schedule of plaintiffs' investment accounts is attached as Schedule I.

Pursuant to ORS 59.115(1), (2), and (3), plaintiffs and class members are each entitled to

damages in the amount of the consideration that was paid for the securities, and interest

from the date of payment equal to the greater of 9% interest or the rate provided in the

security, less any amount received on the securities.  In those cases where an investor

received an interest dividend and simultaneously reinvested it (*i.e.*, where an investor did

not receive an immediate cash payment of the interest), the interest is accounted as (a) an

"amount received on [a] security"; and (b) the "consideration paid for [a] security," and it

bears interest at the rate of 9% from the date of payment. The damages of plaintiffs and the

Page 59          **SECOND AMENDED CLASS ACTION COMPLAINT
                 FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

members of the Class are in an approximate amount in excess of $25.3 million.  Interest

accrues until the date of payment.  Plaintiffs will tender their securities at a time before

entry of judgment.

90.    In those cases where a plaintiff no longer owns a security, a plaintiff is

entitled to recover damages in the amount that would be recoverable upon a tender, less

the value of the security when the purchaser disposed of it and less interest on such value

at the rate of 9% per annum from the date of disposition.

91.    Pursuant to ORS 59.115(10), this Court should award plaintiffs their

reasonable attorney fees.

92.    Plaintiffs demand a jury trial.

WHEREFORE, plaintiffs, on their own behalf and on behalf of members of the

Class, respectfully demand an award against defendants in an approximate amount in

excess of $25.3 million, along with interest from the dates of payments of consideration

equal to the greater of 9% interest or the rate provided in the security; awarding plaintiffs

…

…

…

…

…

…

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR OREGON SECURITIES LAW DAMAGES**

**ESLER, STEPHENS & BUCKLEY, LLP**
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

their reasonable attorney fees; awarding plaintiffs their costs and disbursements; and

providing for such further relief as the Court may deem appropriate.

DATED this 25th day of March 2022.

By: ___ s/ John W. Stephens _____

John W. Stephens (OSB No. 773583)
stephens@eslerstephens.com
Michael J. Esler (OSB No. 710560)
esler@eslerstephens.com
ESLER STEPHENS & BUCKLEY, LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

By: ___ s/ Christopher J. Kayser _____

Christopher J. Kayser (OSB No. 984244)
cjkayser@lvklaw.com
John C. Rake (OSB No. 105808)
jrake@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: (503) 222-4424
Facsimile: (503) 827-7600

Attorneys for Plaintiffs

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR OREGON SECURITIES LAW DAMAGES**

ESLER, STEPHENS & BUCKLEY, LLP
Attorneys at Law
121 S.W. Morrison Street, Suite 700
Portland, Oregon 97204-3183
Telephone: (503) 223-1510
Facsimile: (503) 294-3995

| Plaintiff | "Pool" | Account Number | Principal Balance | Accrued & Unpaid Interest Per Receiver |
|---|---|---|---|---|
| **Anderson, Diane,** trustee of Diane Anderson Trust | American Eagle Mortgage 200 LLC | 4108 | $ 47,570.72 | $ 634.28 |
| **Anderson, Diane,** trustee of Diane Anderson Trust | American Eagle Mortgage 400, LLC | 6103 | $ 124,940.73 | $ 1,665.88 |
| **Anderson, Diane,** trustee of Diane Anderson Trust | American Eagle Mortgage Mexico 200 LLC | 0144 | $ 53,620.54 | $ 848.99 |
| **Buckley, Bonnie,** trustee of Bonnie K. Buckley IRA | American Eagle Mortgage 600, LLC | 8113 | $ 70,000.00 | $ 875.00 |
| **Buckley, Bonnie,** trustee of Bonnie K. Buckley IRA | American Eagle Mortgage 600, LLC | 8114 | $ 70,000.00 | $ 933.33 |
| **Buckley, Bonnie,** trustee of Bonnie K. Buckley IRA | American Eagle Mortgage 600, LLC | 8115 | $ 70,000.00 | $ 991.67 |
| **Dyess, Carl and Kirby,** trustees of Dyess Family Trust | American Eagle Mortgage Mexico 200 LLC | 0102 | $ 223,553.32 | $ 3,725.89 |
| **Dyess, Carl and Kirby,** trustees of Dyess Family Trust | American Eagle Mortgage Mexico 400 LLC | 0107 | $ 688,105.67 | $ 11,468.43 |
| **Dyess, Carl and Kirby,** trustees of Dyess Family Trust | American Eagle Mortgage 100 LLC | 1171 | $ 957,596.82 | $ 11,171.96 |
| **Koubeck, Peter L.,** an individual | American Eagle Mortgage Mexico 100 LLC | 5139 | $ 334,504.65 | $ 7,944.48 |
| **Koubeck, Peter,** trustee of Peter L. Koubeck IRA | American Eagle Mortgage Mexico 400 LLC | 0141 | $ 440,368.80 | $ 10,465.17 |
| **Peterson, Michael,** trustee of Michael T. Peterson IRA | American Eagle Mortgage 500, LLC | 7122 | $ 124,686.15 | $ 1,558.58 |
| **Peterson, Michael,** trustee of Michael T. Peterson IRA | American Eagle Mortgage 500, LLC | 7123 | $ 128,795.78 | $ 1,824.61 |
| **Peterson, Michael,** trustee of Michael T. Peterson IRA | American Eagle Mortgage 600, LLC | 8222 | $ 98,500.00 | $ 1,231.25 |
| **Peterson, Michael,** trustee of Michael T. Peterson IRA | American Eagle Mortgage Mexico 200 LLC | 0147 | $ 134,612.08 | $ 2,131.36 |
| **Wilson, Ed,** an individual | American Eagle Mortgage Mexico 100 LLC | 5101 | $ 64,675.00 | $ 1,024.02 |
| **Wilson, Ed,** an individual | American Eagle Mortgage Mexico 200 LLC | 137 | $ 68,891.99 | $ 1,090.79 |
| **TOTALS** | | | **$ 3,700,422.25** | **$ 59,585.69** |