Christopher J. Kayser, OSB #984244
cjkayser@lvklaw.com
John C. Rake, OSB #105808
jrake@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: (503) 222-4424

John W. Stephens, OSB #773583
stephens@eslerstephens.com
Michael J. Esler, OSB #710560
esler@eslerstephens.com
ESLER STEPHENS & BUCKLEY, LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-223-1510

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIANE ANDERSON, trustee of the Diane L. Anderson Revocable Trust; BONNIE BUCKLEY; trustee of the Bonnie K. Buckley IRA; CARL AND KIRBY DYESS, trustees of the Dyess Family Trust; PETER KOUBECK, an individual and trustee of Peter L. Koubeck IRA; MICHAEL PETERSON, trustee of the Michael T. Peterson IRA; and ED WILSON, an individual, | Case No.: 3:20-cv-01194-AR |
| Plaintiffs, | **CLASS REPRESENTATIVES' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT AND MEMORANDUM IN SUPPORT** |
| v. | |
| DAVIS WRIGHT TREMAINE LLP, a Washington limited liability partnership; ROSS MILES, an individual; MAUREEN WILE, an individual; PACIFIC PREMIER BANK, a California chartered bank; and RIVERVIEW COMMUNITY BANK, a Washington chartered bank, | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 2

II.   BACKGROUND ......................................................................................................... 4

    A.   Allegations of the Action .................................................................................. 4

    B.   Procedural Background ...................................................................................... 4

    C.   Mediation and Settlement Process .................................................................... 5

III.  SUMMARY OF KEY SETTLEMENT TERMS ....................................................... 6

    A.   The Class Definition ......................................................................................... 6

    B.   The Settlement Consideration ........................................................................... 8

    C.   Release of Claims .............................................................................................. 8

    D.   Contribution Claims Bar and Reductions of Class Members' Claims............................ 8

IV.   NOTICE OF THE SETTLEMENT ........................................................................... 9

V.    LEGAL ARGUMENT............................................................................................... 9

    A.   The Proposed Settlement Warrants Preliminary Approval. ............................. 9

        1.   Class Representatives and Class Counsel Have Adequately Represented the Class and the Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations. ....................................................................................... 12

        2.   The Relief Provided to the Class Is Adequate. .................................... 16

        3.   The Settlement Does Not Grant Preferential Treatment to Class Representatives or Segments of the Class................................................................. 17

    B.   The Court Should Make a Preliminary Determination that the Proposed Class Satisfies the Standard for Certification Under Rule 23................................ 18

        1.   The Rule 23(a) Requirements Are Met............................................... 19

            a.   Numerosity: The Class Is So Numerous that Joinder of All Members Is Impracticable............................................................ 19

            b.   Commonality: Numerous Common Issues Exist. ......................... 19

            c.   Typicality: The Class Representatives' Claims are Typical of Those of Other Class Members.......................................................... 21

            d.   Adequacy: The Class Representatives and Their Counsel Adequately Represent the Interests of the Class. .......................................... 22

        2.   Predominance: The Rule 23(b) Requirements Are Met. ..................... 23

CLASS REPRESENTATIVES' MOTION FOR                        Page i
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

a.    Common Questions of Fact or Law Predominate. ........................................ 23

b.    Superiority: The Class Action Mechanism Is Superior to Any Other Method of Adjudication. ........................................................................................... 25

C.    The Proposed Distribution Plan Is Fair and Reasonable. ........................................ 27

D.    The Proposed Claims Administrator Should Be Approved. ........................................ 29

E.    The Form and Method of Notice Should be Approved. ........................................ 30

F.    The Court Should Appoint Class Counsel ........................................ 33

VI.    PROPOSED SCHEDULE ........................................................................................... 34

VII.    CONCLUSION ........................................................................................... 36

# TABLE OF AUTHORITIES

## Cases

*Ainslie v. First Interstate Bank*, 148 Or. App. 162 (1997).............................................. 33

*Ainslie v. Spolyar*, 144 Or. App. 134 (1996) ...................................................... 33

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...................................... 23, 25, 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) .................................. 24, 25

*Anderson v. Carden*, 146 Or. App. 675 (1997)......................................................... 33

*Bell v. Consumer Cellular, Inc.*, 2017 WL 2672073 (D. Or. June 21, 2017) .............................. 14

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ................................... 17

*Bickley v. Schneider Nat'l Inc.*, 2016 WL 4157355 (N.D. Cal. Apr. 25, 2016) ........................... 12

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................... 18, 21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979)............................................... 13

*Bravo v. Gale Triangle, Inc.*, 2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ............................... 17

*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 998 (E.D. Cal. 2019) .................................. 16, 17

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...................................... 31

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......................................................... 18

*Cooks v. TNG GP*, 2020 WL 5535397 (E.D. Cal. Sept. 15, 2020)........................................ 32

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................... 20

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)........................................................... 32

*Fosbre v. Las Vegas Sands Corp.*, 2015 WL 3722496 (D. Nev. June 15, 2015) ...................... 25

*Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980) ........................................................... 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................. 26

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ........................... 19

*Hefler v. Wells Fargo & Co.*, 2018 WL 4207245 (N.D. Cal. Sep. 4, 2018)........................ 15, 27

*Hurst v. First Student, Inc.*, 2015 WL 6437196 (D. Or. Oct. 22, 2015) ............................... 20

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ................................................................. 21

*In re Blech Sec. Litig.*, 187 F.R.D. 97 (S.D.N.Y. 1999) ............................................... 25

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................... 14

*In re Computer Memories Sec. Litig.*, 111 F.R.D. 675 (N.D. Cal. 1986)................................ 18

*In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353 (9th Cir. 1979)........................ 29

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007).......................... 32

*In re Intelcom Grp., Inc. Sec. Litig.*, 169 F.R.D. 142 (D. Colo. 1996) ............................... 25

*In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584 (N.D. Cal. 2009)........................... 26

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007) ............................................ 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000),
    *as amended* (June 19, 2000)........................................................................................ 14, 16, 22

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008) ...................... 27

*In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627 (D. Idaho 2007) ...................................... 26

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007)........................................ 27

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)................................................... 12

*In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529 (N.D. Cal. June 30, 2007)................ 32

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ............................................................ 9

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)................................... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ........ 27

*In re Vitamins Antitrust Litig.*, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ............................... 27

*In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ................................... 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597,
    610 n.18 (9th Cir. 2018)............................................................................................................ 11

*In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015).................................. 18

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) ....................................................... 20

*Junkersfeld v. Med. Staffing Sols., Inc.*, 2022 WL 223964 (E.D. Cal. Jan 25, 2022)............ passim

*Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) .......................... 32

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995)............................................................. 21

*Koch v. Desert States Emps. & UFCW Unions Pension Plan*, 2021 WL 4318477
    (D. Ariz. Sept. 23, 2021)........................................................................................................... 12

*Lane v. Brown*, 166 F. Supp. 3d 1180 (D. Or. 2016) ..................................................................... 9

*Medearis v. Oregon Teamster Emps. Tr.*, 2009 WL 1788183 (D. Or. June 19, 2009)................ 12

*Mondrian v. Trius Trucking, Inc.*, 2022 WL 2306963 (E.D. Cal. June 27, 2022)........................ 15

*Moss v. U.S. Secret Serv.*, 2015 WL 5705126 (D. Or. Sept. 28, 2015) ................................... 20, 24

*Mostajo v. Nationwide Mut. Ins. Co.*, 2022 WL 3141879 (E.D. Cal. Aug. 5, 2022)............. 11, 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
    (C.D. Cal. 2004)........................................................................................................................ 13

*Nobles v. MBNA Corp.*, 2009 WL 1854965 (N.D. Cal. June 29, 2009)........................................ 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................ 10, 16

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) ............................................................... 31

*Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135 (E.D. Cal. July 6, 2015)................. 15

*Pecover v. Elec. Arts Inc.*, 2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ................................... 20

*Rieckborn v. Velti PLC*, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ........................................... 32

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................................. 12, 15

CLASS REPRESENTATIVES' MOTION FOR
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ..................................................... 31, 32

*Smith v. Am. Greetings Corp.*, 2015 WL 4498571 (N.D. Cal. July 23, 2015) ............................ 12

*Taylor v. Populus Grp., LLC*, 2022 WL 3045366 (S.D. Cal. Aug. 2, 2022) ......................... 13, 14

*Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628
　　(N.D. Cal. Oct. 20, 2017) ................................................................................ 27

*Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir. 2016) ................................... 24

*Towery v. Lucas*, 128 Or. App. 555 (1994) ........................................................ 25

*Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016) ................................................. 24

*U.S. National Bank v. Boge*, 311 Or. 550 (1991) ................................................. 28

*Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ............................ 16

*Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307 (D. Or. 2017) ................... 19

*Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................ 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................. 20

*Zepeda v. PayPal, Inc.*, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) ............................... 12

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ passim

**Treatises**

4 William G. Rubenstein, *Newberg and Rubenstein on Class Actions* (6th ed. 2022).......... passim

**Secondary Sources**

Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes ................................................. 11

CLASS REPRESENTATIVES' MOTION FOR
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Proposed Order Preliminarily Approving Settlement and Providing for Notice |
| A-1 | Notice of Pendency and Settlement of Class Action |
| A-2 | Proof of Claim and Release |
| B | [Proposed] Limited Judgment |

CLASS REPRESENTATIVES' MOTION FOR
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

## CERTIFICATION OF CONFERRAL AND WORD COUNT

Defendant Davis Wright Tremaine ("DWT") does not oppose this motion. Without agreeing they have standing to object, Class Representatives' counsel conferred with counsel for defendants Pacific Premier Bank, Riverview Community Bank, and Ross Miles by telephone and email and made a good faith effort to resolve objections. Ross Miles objects based on perceived prejudice from a claims bar order contemplated by the settlement agreement. Pacific Premier Bank and Riverview Community Bank (collectively, the "Banks") state that they also object based on prejudice arising from a claims bar. In addition, citing pending motions to dismiss, the Banks claim the settlement approval would seek to limit their rights in a court lacking jurisdiction over them. Because entry of a claims bar order is not currently before the Court, defendants' objections are unripe, but Class Representatives understand that non-settling defendants are not waiving their right to object to a future request for entry of a claims bar order.

This brief complies with the applicable word-count limitation under LR 7-2(b), because it contains 10,323 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

Pursuant to Rule 23(e), Plaintiffs Diane Anderson (as trustee of the Diane L. Anderson Revocable Trust), Bonnie Buckley (as trustee of the Bonnie K. Buckley IRA), Carl and Kirby Dyess (as trustees of the Dyess Family Trust), Peter Koubeck (an individual and as trustee of Peter L. Koubeck IRA), Michael Peterson (as trustee of the Michael T. Peterson IRA), and Ed Wilson (collectively, "Class Representatives") move the Court for an order granting the following relief:

1.      Preliminarily approving a proposed class action settlement (the "Settlement") with Defendant Davis Wright Tremaine LLP ("DWT") (the Class Representatives and DWT are collectively "the Parties") on the terms set forth in the Class Settlement Agreement dated August 26, 2022 (the "Settlement"), which is attached as Exhibit A to the Declaration of John C. Rake;

2.      Provisionally certifying a settlement class (the "Class");

3.      Preliminarily approving the distribution plan from the Settlement ("Distribution Plan");

4.      Approving the retention of the proposed Claims Administrator, Transeth & Associates, LLC;

5.      Approving the form and method for providing notice of the Settlement to the Class;

6.      Preliminarily approving counsel for the Class Representatives as Settlement Counsel; and

7.      Scheduling a hearing at which the Court will consider (a) final approval of the Settlement, (b) certification of the Settlement Class, (c) approval of the Distribution Plan,

(d) Class Counsel's request for fees and expenses, (e) entry of a Limited Judgment, and (f) such other relief as the Court may deem appropriate.

This motion is supported by the Declarations of John C. Rake and John W. Stephens, filed herewith.

## MEMORANDUM IN SUPPORT OF MOTION

### I.   INTRODUCTION

The Class Representatives have reached a settlement in this action with DWT that represents a significant recovery for the proposed Class and avoids the costs and risks associated with continued litigation, including the danger of a smaller recovery, or no recovery, at trial. In a comprehensive settlement with the Class, the Receiver, and a separate group of investors who filed similar actions against DWT (the "Beattie Plaintiffs," described below), DWT has agreed to pay $4,500,000. The Settlement provides an immediate and substantial benefit to the Class of $3,677,000 or 81.4% of the total, comprehensive settlement. In return, the Class will release all claims against DWT. Additionally, the Settlement is explicitly conditioned upon the entry by the Court of a contribution claims bar.

This Settlement represents a significant recovery that is in the best interest of the Class, and should be reviewed in light of risks that further litigation might lead to no recovery, or a smaller recovery, for the Class, balanced against the potential damages that could be recovered if the claims against DWT proceed to trial. The Class Representatives and proposed Class Counsel recommend this Settlement. The Settlement meets the standard for preliminary approval because it was the product of arm's-length negotiation between experienced counsel, has no obvious deficiencies, does not grant preferential treatment to the Class Representatives or any other portion

of the Class, and falls within the range of possible approval. The Receiver for the AEM Funds is a party to the Settlement and approves it as well.

Further, because all the requirements for class certification are met, the Court should certify the Class for settlement purposes only. *See infra* Section V(B). The Court should also grant preliminary approval of the proposed Distribution Plan. The Distribution Plan seeks to disburse the settlement amount to Class members based on their account balances as of May 10, 2019, as confirmed by the Receiver, and thus has a "reasonable, rational basis." *See infra* Section V(C).

The Court should also approve the proposed Notice and method of notice to Class members because the Notice complies with the requirements of Rule 23(c)(2)(B), and the proposed method of notice satisfies the requirements of Rule 23 and due process. *See infra* Section V(E). The Court should also approve Transeth & Associates, LLC, as Claims Administrator to administer the method of notice and distribute the Settlement proceeds. *See infra* Section V(D). Additionally, the Court should appoint counsel for the Class Representatives as Class Counsel. *See infra* Section V(F).

Lastly, the Court should schedule a final fairness hearing for approximately four months after the preliminary approval order is entered, to allow sufficient time both for providing the Notice to Class Members and for them to object or exclude themselves from the Class, as well as sufficient time for the Class Representatives to review any objections and file a motion for Final Approval. *See infra* Section VI.

## II.  BACKGROUND

### A.  Allegations of the Action

This is a class action brought by Oregon investors with Oregon Securities Law claims resulting from what the Securities and Exchange Commission ("SEC") and a court-appointed receiver have described as a lengthy "Ponzi scheme" by American Equities, Inc. ("AEI"); its principals, defendants Ross Miles and Maureen Wile; and AEI affiliate American Eagle Mortgage Management (collectively, AEI, AEMM, Miles, and Wile are referred to as "American Equities"). American Equities sold unregistered securities in the form of promissory notes and membership interests in at least fourteen American Eagle Mortgage–branded funds ("AEM Funds") in violation of the Oregon Securities Law. DWT, a law firm with offices in Portland, Oregon, was American Equities' law firm, prepared offering materials for the AEM Funds used in connection with the sales of securities, and provided legal services relating to the AEM Funds' offerings. Class Representatives allege that DWT is liable pursuant to ORS 59.115(3) for participating and materially aiding in unlawful sales of AEM Fund securities.

### B.  Procedural Background

Class Representatives filed this action in Multnomah County Circuit Court on February 25, 2020. Def. Davis Wright Tremaine LLP's Notice of Removal, Ex. A at 1, ECF 1. Class Representatives are seven Oregon investors who purchased investments in various AEM Funds and assert claims on behalf of the Class. Second Amended Complaint ¶¶ 4–5, Schedule I, ECF 60 ("SAC"). The original complaint named DWT as the only defendant. Class Representatives filed a First Amended Complaint on July 17, 2020. Def. Davis Wright Tremaine LLP's Notice of Removal, ECF 1, Ex. A at 62 ("FAC"). The FAC added Miles, Wile, and Pacific Premier Bank

("Pacific Premier") as defendants. On July 22, 2020, DWT removed the action to this Court, contending this Court had subject matter jurisdiction over the action pursuant to the Class Action Fairness Act of 2005. ECF 1. Class Representatives moved for remand to state court. Plaintiff's Motion for Remand to State Ct., ECF 16. On July 14, 2021, Judge Acosta issued findings and recommendations concluding that there were 104 class members and the motion to remand should be denied. Findings and Recommendation, ECF 42. Judge Hernandez largely adopted Judge Acosta's findings and denied plaintiffs' motion to remand on February 23, 2022. Order, ECF 52. Judge Hernandez's only modification to Judge Acosta's findings was to exclude Ronald Larson as a class member. *Id.* On March 25, 2022, following resolution of the remand motion, plaintiffs filed a Second Amended Complaint that added Riverview Community Bank ("Riverview") as a defendant. SAC.

The Banks have filed motions to dismiss against the SAC. Def. Pacific Premier Bank's Motion to Dismiss Second Amended Class Action Complaint; Alt. Motion for More Definite Statement, ECF 65; Def. Riverview Community Bank's Motion to Dismiss Second Amended Class Action Complaint; Alt. Motion for More Definite Statement, ECF 72. Class Representatives have opposed those motions. Plaintiffs' Combined Opposition to Motions to Dismiss of Defendants Pacific Premier Bank and Riverview Community Bank, ECF 85.

### C. Mediation and Settlement Process

On December 1, 2021, after Judge Acosta issued findings and recommendations regarding the motion to remand, but before Judge Hernandez issued the Court's ruling, Class Counsel and DWT's counsel, along with the counsel for the Banks, counsel for Clyde A. Hamstreet & Associates, LLC (the court-appointed receiver for various AEM Funds), and counsel for Beattie

Plaintiffs, participated in a lengthy mediation session with Robert A. Meyer, JAMS Mediation, Arbitration and ADR Services. Negotiations with DWT lasted into the evening. DWT reached tentative settlement terms with Class Representatives, Beattie Plaintiffs, and the Receiver, with DWT agreeing to pay a total settlement amount of $4.5 million that would be split between the Class, Beattie Plaintiffs, and Receiver. Committing the settlement terms to paper took many months due to various factors, including, among other things, the complexities of allocating the total settlement amount among the different investor groups and COVID-related complications that affected attorney's availability.

### III. SUMMARY OF KEY SETTLEMENT TERMS

#### A. The Class Definition

The proposed settlement class (the "Class") is a settlement class, consisting of all persons determined by this Court (in rulings denying plaintiffs' remand motion) to be members of the class alleged in paragraph 4 of Class Representatives' First Amended Complaint filed in this action, with two exceptions discussed below. Settlement at I.1.e.

The FAC defined the Class as follows:

4. The members of the Class are:

a. each Oregon citizen who was sold a security issued by American Equities in one of the Funds in violation of the Oregon Securities Law and is owed money by American Equities, including by one of the Funds, with respect to the Securities, and is not excluded from the Class pursuant to ¶ 5 below; and

b. each person who is a co-claimant (e.g., a co-owner) with a person described in subparagraph a. of this ¶ 4 and is not excluded from the Class pursuant to ¶ 5.

5. The following persons are excluded from the Class:

a. each person who is liable as provided in ORS 59.115(1) or (3) to any member of the Class;

b. each person who is an immediate family member of a person described in ¶ 5(a); and

c. each person who opts out of the Class.

ECF 1, Ex. A ¶¶ 4-5. (This definition of the Class is repeated in the SAC, ¶ 6.). The "Funds" included in the class definition above are: American Eagle Mortgage 100, LLC; American Eagle Mortgage 200, LLC; American Eagle Mortgage 300, LLC; American Eagle Mortgage 400, LLC; American Eagle Mortgage 500, LLC; American Eagle Mortgage 600, LLC; American Eagle Mortgage Mexico 100, LLC; American Eagle Mortgage Mexico 200, LLC; American Eagle Mortgage Mexico 300, LLC; American Eagle Mortgage Mexico 400, LLC; American Eagle Mortgage Mexico 500, LLC; American Eagle Mortgage I, LLC; American Eagle Mortgage II, LLC; and American Eagle Mortgage Short Term, LLC. References to "AEM Funds" and the "Funds" do not include American Eagle Mortgage III, LLC, American Eagle Mortgage IV, LLC, or American Eagle Mortgage Mexico.

As discussed above, in the remand proceedings, Judge Acosta found there were 104 persons who met the above definition. ECF 42 at 17. Judge Hernandez adopted Judge Acosta's findings and recommendations, with one modification excluding Ronald Larson from the Class. ECF 52 at 2. In addition, from the list of 103 class members identified by Judge Acosta's findings and recommendations, as modified by Judge Hernandez, Class Representatives and DWT have agreed that Robert MacLellan, Gay MacLellan, RSM Revocable Trust (Robert MacLellan and Gay MacLellan, trustees) and M2M Development Inc. 401k PSP (Robert MacLellan and Gay

MacLellan, trustees) are not members of the Class, because they are Beattie Plaintiffs and will be compensated through DWT's separate settlement with that group. Settlement at I.1.e.

## B. The Settlement Consideration

The total settlement amount to be paid to the Class is $3,677,000. Settlement at I.1.v.

## C. Release of Claims

Once the settlement is effective, the Class Representatives and Class Members who have not opted out will release all claims for damages against DWT arising out of or relating in any way to (1) any claim that is asserted or could be asserted in the class action, or (2) American Equities, the Receivership Pools[1] and/or American Equities Securities.[2]

## D. Contribution Claims Bar and Reductions of Class Members' Claims

The Settlement is conditioned upon the entry of an injunction barring contribution claims by the other defendants in this action against DWT. Settlement, ¶ 25; *id.* at Ex. B (form of claims bar). In addition, it contemplates a form of limited judgment in this action that dismisses the action against DWT as to all Class Members with prejudice and that results in a dollar-for-dollar

---

[1] This is defined as "American Eagle Mortgage 100, LLC; American Eagle Mortgage 200, LLC; American Eagle Mortgage 300, LLC; American Eagle Mortgage 400, LLC; American Eagle Mortgage 500, LLC; American Eagle Mortgage 600, LLC; American Eagle Mortgage Mexico 100, LLC; American Eagle Mortgage Mexico 200, LLC; American Eagle Mortgage Mexico 300, LLC; American Eagle Mortgage Mexico 400, LLC; American Eagle Mortgage Mexico 500, LLC; American Eagle Mortgage Mexico 600, LLC; American Eagle Mortgage I, LLC; American Eagle Mortgage II, LLC; and American Eagle Mortgage Short Term, LLC." Settlement ¶ I.1.r. For the sake of clarity, the release applies to investments in American Eagle Mortgage Mexico 600, LLC, even though it is not one of the "Funds."

[2] This is defined as "securities that were in the form of private notes and ownership interests in certain 'American Eagle Mortgage'–branded funds or pools (other than American Eagle Mortgage III, LLC and American Eagle Mortgage IV, LLC), which are now in receivership (i.e., the Receivership Pools)." Settlement ¶ I.1.c.

reduction of the amount of claims a plaintiff or a Class member may have against defendants Ross Miles, Maureen Wile, Pacific Premier, Riverview, or a future Defendant. Settlement ¶ 18; *id.* Ex. A ¶ 13 (form of judgment).

## IV. NOTICE OF THE SETTLEMENT

The [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached as Exhibit A to this motion, mandates that within twenty-eight (28) calendar days of the Court's order preliminarily approving the Settlement, Class Counsel shall provide notice to Class Members through mailing to all identifiable Class Members: i) the proposed Notice of Pendency and Settlement of Class Action (the "Notice") (substantially in the form annexed as Exhibit A-1 to the Preliminary Approval Order); and ii) the Proof of Claim and Release (substantially in the form annexed as Exhibit A-2 to the Preliminary Approval Order).

## V.  LEGAL ARGUMENT

### A.  The Proposed Settlement Warrants Preliminary Approval.

The Federal Rules of Civil Procedure require Court approval and notice before a putative class action may be settled. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). "There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016) (cleaned up) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution" and this is "especially true in complex class action litigation ….").

Approval of a settlement is a multi-step process as follows: (1) preliminary approval of the settlement and conditional certification of the class; (2) notice sent to the class with an opportunity for class members to object; and (3) a fairness hearing after which the Court determines whether to give "final approval." 4 William G. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:10 (6th ed. 2022). Pursuant to Rule 23(e), the Court may grant preliminary approval and authorize notice to be sent to the class upon a showing that the court "will likely be able to" grant final approval of the settlement under section 23(e)(2) of the rule. Fed. R. Civ. P. 23(e)(1)(B). Subsection 23(e)(2) in turn provides that final approval of a settlement may be granted if it is "fair, reasonable, and adequate" after considering the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). Preliminary approval is, accordingly, not a dispositive assessment of the fairness of the proposed settlement. The Court's "primary objective" at this point "is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." Rubenstein, *supra*, § 13:10.

CLASS REPRESENTATIVES' MOTION FOR                                Page 10
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

"Likely approval" under Rule 23(e) "focuses on the fairness of the settlement for absent class members." *Mostajo v. Nationwide Mut. Ins. Co.*, 2022 WL 3141879, at *4 (E.D. Cal. Aug. 5, 2022). Decisions in the Ninth Circuit that predate the rule include several similar factors:

- the strength of the plaintiffs' case;

- the risk, expense, complexity, and likely duration of further litigation;

- the risk of maintaining class action status throughout the trial;

- the amount offered in settlement;

- the extent of discovery completed and the stage of the proceedings;

- the experience and views of counsel;

- the presence of a governmental participant; and

- the reaction of the class members to the proposed settlement.

*Mostajo*, 2022 WL 3141879, at *4–5 (cleaned up) (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 610 n.18 (9th Cir. 2018)); *Junkersfeld v. Med. Staffing Sols., Inc.*, 2022 WL 223964, at *4 (E.D. Cal. Jan 25, 2022). *See also* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated … factors [that] focus on comparable considerations, but each circuit has developed its own vocabulary for expressing these concerns. … The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns … that should guide the decision whether to approve the proposal.")

Preliminary approval establishes an "initial presumption" of fairness. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (cleaned up). "Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval.'" *Bickley v. Schneider Nat'l Inc.*, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1079); *see also Koch v. Desert States Emps. & UFCW Unions Pension Plan*, 2021 WL 4318477, at *7 (D. Ariz. Sept. 23, 2021) (same); *Smith v. Am. Greetings Corp.*, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) (same); *Zepeda v. PayPal, Inc.*, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015) ("The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.") (cleaned up); *see also* Rubenstein, *supra*, § 13:13.

All factors under the Rule and as articulated by the Ninth Circuit weigh in favor of preliminary approval here.

### 1. Class Representatives and Class Counsel Have Adequately Represented the Class and the Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations.

The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also Medearis v. Oregon Teamster Emps. Tr.*, 2009 WL 1788183, at *3 (D. Or. June 19, 2009). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). *See also Nat'l Rural Telecommunications Coop. v. DIRECTV,*

*Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (same); *Taylor v. Populus Grp., LLC*, 2022 WL 3045366, at *7 (S.D. Cal. Aug. 2, 2022) ("Because the parties' counsel are the ones most familiar with the facts of the litigation, courts give great weight to their recommendations.") (cleaned up). "[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural,* 221 F.R.D. at 528. Accordingly, when experienced counsel support a settlement that is the product of an arm's-length negotiation after relevant discovery has been conducted, "plaintiff's counsel's recommendations 'should be given a presumption of reasonableness.'" *Taylor*, 2022 WL 3045366, at *7 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). *See also Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting "courts give great weight to [parties' counsel's] recommendations" because they "are the ones most familiar with the facts of the litigation.").

In this case, the proposed Settlement arises out of extended, informed, arm's-length negotiations between experienced counsel for the Parties, including a lengthy mediation with Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services. Rake Decl., ¶¶ 3-11; Stephens Decl., ¶¶ 4-10. Prior to the December 2021 mediation, the parties engaged in nearly two years of investigation and discovery. Rake Decl., ¶¶ 3-6; Stephens Decl., ¶¶ 4-8. Class Representatives' counsel conducted an extensive investigation beginning in August 2019 that resulted in the filing of the initial complaint in February 2020. Rake Decl., ¶ 4; Stephens Decl., ¶ 6. Prior to the mediation, plaintiffs had, through formal and informal discovery, obtained more than 122,600 pages of documents from DWT, the Receiver, and the Banks. Rake Decl., ¶ 6. Specifically, approximately 20,700 pages of Receiver documents related to DWT, while DWT separately produced approximately 4,400 pages of discovery. *Id.* Accordingly, the Settlement

reflects the Class Representatives' informed assessment of the risks in connection with this dispute, as well as the risks attendant to litigation generally. *See Taylor*, 2022 WL 3045366, at *7 ("a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement.") (cleaned up); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (noting that the "significant investigation, discovery and research" conducted by Class Counsel supported the lower court's decision that plaintiffs "had sufficient information to make an informed decision about the Settlement ....").

Class Representatives' counsel are experienced and have received recognition for their work in handling significant securities cases and class action litigation such as this matter. Stephens Decl., ¶¶ 2-3; Rake Decl., Ex. B.

There is no collusion or conflict of interest between and among the parties in reaching the Settlement. The Ninth Circuit recognizes three signs of collusion:

> (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund.

*Bell v. Consumer Cellular, Inc.*, 2017 WL 2672073, at *7 (D. Or. June 21, 2017) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

Here, the Settlement provides that Class Counsel's fees must be approved by this Court and that such fees may not exceed 25% of the Settlement Amount. Rake Decl., Ex. A, p. 12. *See Mostajo*, 2022 WL 3141879, at *6 ("The benchmark for attorney's fees in the Ninth Circuit is

CLASS REPRESENTATIVES' MOTION FOR                                    Page 14
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

25 percent."). There is no reversion of any of the Settlement Amount to DWT. Rake Decl., Ex. A, p. 6. And while DWT has agreed in the Settlement that it will take no position in response to Class Counsel's attorney fee petition (provided it remains under the 25% threshold), any attorney fees awarded will be paid from the Settlement Fund and thus do not raise the sort of "clear sailing" concerns associated with payment of attorney fees separate and apart from the Settlement Fund. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sep. 4, 2018) ("[A] clear sailing provision is generally not a sign of possible collusion in cases where the attorneys' fees will be sought from the same common fund as the class settlement."); *see also id.* ("In such cases, a clear sailing provision is of little value because settling defendants already have little incentive to oppose a subsequent fee motion where it will not affect the amount of defendants' liability.") (citing *Rodriguez*, 563 F.3d at 961 n.5).

Additionally, where the parties have engaged in mediation, as here, such participation "tends to support the conclusion that the settlement process was not collusive." *Mondrian v. Trius Trucking, Inc.*, 2022 WL 2306963, at *14 (E.D. Cal. June 27, 2022) (quoting *Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *8 (E.D. Cal. July 6, 2015)). The presence in the negotiations of counsel for the Class Representatives, the Beattie Plaintiffs, and the Receiver further underscores the lack of any collusion. Rake Decl., ¶¶ 5, 7-8; Stephens Decl., ¶¶ 9-10.

Finally, the Settlement contains no obvious defects of the types that courts have found to preclude preliminary approval, such as "unreasonably high attorney fees; unduly preferential treatment of class representatives; deficient notice plan; unjustifiably burdensome claims procedure; plainly unfair allocation scheme; and overly broad releases of liability." Rubenstein, *supra*, § 13:15 (cleaned up).

In sum, the Settlement is the result of serious, informed, non-collusive negotiations between the Class Representatives, the Beattie Plaintiffs, the Receiver, and DWT. The Class Representatives and their counsel have adequately represented the class and recommend the Settlement as being fair, reasonable, adequate, and in the best interests of the Class Members. Rake Decl., ¶ 12; Stephens Decl., ¶ 11.

### 2. The Relief Provided to the Class Is Adequate.

The Second Amended Complaint seeks damages in the approximate amount of $25.3 million from five defendants. The Settlement, in turn, resolves the dispute as to one defendant only—DWT—in exchange for payment of just under $3.7 million, nearly 15% of the total damages sought.

"To determine whether [a] settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp.3d 998, 1011 (E.D. Cal. 2019). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459 (citing *Officers for Justice*, 688 F.2d at 628). The adequacy of the amount offered in settlement "cannot be assessed in a vacuum. Rather, it must be considered in light of the strength of the plaintiff's case and the risks in pursuing further litigation." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016). *See also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.") (citing *Mego*, 213 F.3d at 459). As the *Carlin* court observed, "[c]ourts regularly approve class settlements where class members recover

CLASS REPRESENTATIVES' MOTION FOR                                    Page 16
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

less than one quarter of the maximum potential recovery amount." 380 F. Supp. 3d at 1011 (citing *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *10 (C.D. Cal. Feb. 16, 2017) (approving a settlement with an approximate 14% recovery of the anticipated total recovery); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement with approximately 8.5% recovery of the anticipated total recovery)).

Here, the substantial relief (nearly $3.7 million) that will be received by the Class pursuant to the partial settlement is highly favorable, especially when viewed against the litigation risks. Due to the complexities inherent in this case, the certainty of this substantial settlement amount has to be judged in the context of the legal and practical obstacles to obtaining a large judgment against DWT at trial. Moreover, even if the Class Representatives had tried the case and prevailed, DWT could have appealed the verdict, thus adding years of further delay and expense to the litigation. The form of limited judgment negotiated as part of the Settlement contemplates a dollar-for-dollar reduction of any claims Class Members have against other defendants, so it fairly reduces the damages exposure of non-settling defendants consistent with the settlement recovery.

For all of these reasons, and those discussed above regarding the recommendations of counsel, the sufficient discovery obtained and evaluated prior to Settlement, and more, the amount of the Settlement is clearly adequate.

### 3.   The Settlement Does Not Grant Preferential Treatment to Class Representatives or Segments of the Class.

Another factor to consider is whether the Settlement grants preferential treatment to Class Representatives or segments of the Class. It does not. The Plan of Distribution is designed to compensate all Class Members equally based on their net recognized losses, which derives from

their investment account balance on May 10, 2019, as adjusted. (Notice at 6–7, 14; Claim Form at 10–12). There is no preferential treatment when Class Representatives will receive the same pro rata distribution based on their losses as other Class Members, nor are the Class Representatives entitled to any sort of incentive award. *See, e.g.*, *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).

### B. The Court Should Make a Preliminary Determination that the Proposed Class Satisfies the Standard for Certification Under Rule 23.

The Court should make a preliminary determination that the proposed Class satisfies the standards for certification under Rule 23. Rule 23(e)(1)(B) provides that notice of the proposed settlement may be sent to the class if the moving party demonstrates that the court "will likely be able to … certify the class for purposes of judgment on the proposal." As such, "the Court must review the class certification standards under Rule 23(a)–(b), and based on those standards the court must reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement." *Junkersfeld*, 2022 WL 223964, at *4 (cleaned up).

Courts within the Ninth Circuit have taken a "liberal view" of class certification in cases such as this, recognizing that "securities litigation is particularly well-suited for class action treatment." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (citing *Blackie v. Barrack*, 524 F.2d 891, 902–04 (9th Cir. 1975)). To certify the proposed Class, the Class Representatives must satisfy all four of the requirements of Rule 23(a) and the relevant portions of Rule 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Junkersfeld*, 2022 WL 223964, at *4 ("For class certification, the class must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and

adequacy of representation. The proposed class must also satisfy the requirements of Rule 23(b), which defines the three different types of classes allowed.") (cleaned up).

Each of these requirements is met in this case.

### 1. The Rule 23(a) Requirements Are Met.

#### a. Numerosity: The Class Is So Numerous that Joinder of All Members Is Impracticable.

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable" does not mean impossible, but only that joinder would be difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). Numerosity depends on the facts and circumstances of each case and does not require any specific minimum number of class members. *In re Live Concert Antitrust Litig*., 247 F.R.D. 98, 116 (C.D. Cal. 2007) (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)); *see also Junkersfeld*, 2022 WL 223964, at *8 (same). "This district has held that, as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017). In this case, the class, as determined by the Court in its order dated February 23, 2022, consists of at least 100 persons. This figure is more than sufficient to establish the numerosity of the Class.

#### b. Commonality: Numerous Common Issues Exist.

Under Rule 23(a)(2), Class Representatives must establish that there are "questions of law or fact common to the class." *Villanueva*, 319 F.R.D. at 315. The requirements of Rule 23(a)(2) have "been construed permissively." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.

2011); *Moss v. U.S. Secret Serv.*, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015). Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010). "All questions of fact and law need not be common to satisfy the rule." *Junkersfeld*, 2022 WL 223964, at *9 (cleaned up). Rather, commonality requires the existence of even a single common contention that is capable of class-wide resolution. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "As *Dukes* and all of our subsequent caselaw have made clear, a class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number." *Jimenez*, 765 F.3d at 1165 (cleaned up).

Here, the SAC identifies numerous common issues of fact and law, each of which is amenable to class-wide proof, including, without limitation, the following:

o    Whether the American Equities securities were sold by means of untrue statements and misleading omissions or the sales otherwise violated the Oregon Securities Law (SAC ¶¶ 69, 82); and

o    Whether DWT participated or materially aided in the unlawful sales of American Equities securities (SAC ¶¶ 75, 88).

The determination of these common issues "will resolve an issue that is central to the validity of each claim in one stroke." *Hurst v. First Student, Inc.*, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015).

CLASS REPRESENTATIVES' MOTION FOR                                    Page 20
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

c.  **Typicality: The Class Representatives' Claims are Typical of Those of Other Class Members.**

Rule 23(a) next requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class …." Fed. R. Civ. P. 23(a)(3). "This typicality requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Junkersfeld*, 2022 WL 223964, at *9 (cleaned up). Also relevant is whether the class representatives "are subject to unique defenses or have different claims from those of any other member of the class." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995). In a securities class action, "the claims and nature of evidence are generally considered sufficient to satisfy the typicality requirement." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (cleaned up); *Blackie*, 524 F.2d at 903 n. 19 ("class members may well be united in establishing liability for fraudulently creating an illusion of prosperity and false expectations").

Class Representatives' claims here arise from the same events or course of conduct that gives rise to claims of other Class Members, and the claims asserted are based on the same legal theories. All Class Members purchased American Equities securities in AEM Funds which, Class Representatives allege, were sold in violation of the Oregon Securities Law. Class Representatives' purchases cover at least eight of the fourteen AEM Funds identified in the putative class. SAC, Schedule I. Class Representatives allege the various AEM Funds were marketed as stable, secure, and solvent investments. *Id.* ¶¶ 30–33. Class Representatives allege DWT participated and aided in the unlawful sales of the American Equities securities by preparing offering materials and lending credibility to American Equities' fundraising. *Id.* ¶¶ 11–13. Class

CLASS REPRESENTATIVES' MOTION FOR                                    Page 21
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

Representatives (and Class Members) allege the same legal theories for holding DWT and the other defendants accountable and assert the same legal right to rescissory damages. Further, Class Representatives are not subject to any unique defenses that could make them atypical of Class Members. Therefore, the Class Representatives' claims are typical.

### d. Adequacy: The Class Representatives and Their Counsel Adequately Represent the Interests of the Class.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the members of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Junkersfeld*, 2022 WL 223964, at *10 (quoting *Mego*, 213 F.3d at 462). "This showing requires that plaintiffs demonstrate that the proposed class representatives have no interests [that] are antagonistic to the interest of the other members of the class." *In re Vivendi Universal*, *S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007).

Here, as described above, the named Class Representatives have no interests that are antagonistic to other Class Members. Rather, their interests are typical of and coextensive with those of the Class. The proposed Class Representatives are committed to pursuing the claim that they and all Class Members have suffered injury from their purchase of American Equities securities.

As to whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class, the Class Representatives have retained counsel highly experienced in

securities and other complex class actions throughout the United States. The Class Representatives and their counsel have prosecuted this action vigorously to date, and will continue to do so on behalf of the Class, thus satisfying the adequacy requirement.

### 2.  Predominance: The Rule 23(b) Requirements Are Met.

The class may be certified under Rule 23(b)(3) when: (a) "questions of law or fact common to the class members predominate over any questions affecting only individual members"; and (b) the class action mechanism is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant factors bearing on these issues include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D); *see also*, *Junkersfeld*, 2022 WL 223964, at *11 (quoting the rule and citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616 (1997)).

Both of these requirements are satisfied in this case.

### a.  Common Questions of Fact or Law Predominate.

"[Q]uestions of law or fact common to class members must predominate over any questions affecting only individual members." *Junkersfeld*, 2022 WL 223964, at *10. To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud

or violations of the antitrust laws."). "An individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (cleaned up) (quoting *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

"Predominance exists when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Moss*, 2015 WL 5705126, at *4 (cleaned up). Fed. R. Civ. P. 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor."). Predominance does not require a plaintiff to show a complete absence of individual issues. Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453. Predominance is not a matter of "nose-counting," but "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres*, 835 F.3d at 1134.

To prevail at trial on their claim against DWT under ORS 59.115(3), the Class Representatives need to prove that: 1) American Equities committed a "primary violation" of the Oregon Securities Laws by selling unregistered securities or selling securities by means of untrue

CLASS REPRESENTATIVES' MOTION FOR                                    Page 24
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

statements and misleading omissions; and 2) DWT committed a "secondary violation" by participating or materially aiding in the sale of these securities. Class Representatives and Class Members will likely rely on the same evidence when establishing each of the foregoing at trial, and thus, common issues predominate over individual issues. As in *Amgen*, the proposed Class is "entirely cohesive: It will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." 568 U.S. at 460. Indeed, the Supreme Court has recognized that predominance is a test "readily met" in cases alleging securities violations. *Amchem*, 521 U.S. at 625. That is particularly true with the Oregon Securities Law, where ORS 59.115 does not impose an obligation of inquiry on the buyer or purchaser. *See Towery v. Lucas*, 128 Or. App. 555, 563 (1994) (holding that ORS 59.115(10(b) imposes "obligation of inquiry on defendants who seek to avoid liability for their untrue statements"). For these reasons, common issues predominate in this Action.

### b. Superiority: The Class Action Mechanism Is Superior to Any Other Method of Adjudication.

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication. "It is preferable to determine … common questions once, rather than a multitude of times (or not at all if the small value of individual recoveries would deter any single plaintiff from bringing suit)." *Fosbre v. Las Vegas Sands Corp.*, 2015 WL 3722496, at *5 (D. Nev. June 15, 2015). Securities class actions are generally found to be superior to individual actions. *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In general, securities suits such as this easily satisfy the superiority requirement of Rule 23."); *In re Intelcom Grp., Inc. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996) ("[T]he superiority of class actions in large securities

fraud is well recognized."); Rubenstein, *supra*, § 22:82 ("[S]ecurities class actions rarely fail the superiority test"); *see also id.* ("[G]iven the breadth of most securities classes, the relatively small stakes of most plaintiffs, and the significant cost of most such cases, the superiority requirement is easily met in most securities class actions.").

Considering the factors of Rule 23(b)(3) set forth above "requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009). A class action is the superior method for resolving the claims at issue in this Action. But for a class action, investors would be forced to file 100 individual claims that "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs[,]" thereby demonstrating the superiority of a class action. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). *See also In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627, 635 (D. Idaho 2007) ("If this action was not certified as a class, each plaintiff would have to establish the same fraudulent scheme. This repetitive process would unnecessarily burden the judiciary.") (cleaned up)).

Further, because the claims are being certified for purposes of settlement, the Court need not consider any purported issues with respect to the manageability of this case as a class action. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Moreover, aside from the Beattie Plaintiffs described above, there is no other action against DWT brought on behalf of members of the proposed Class. Rake Decl., ¶ 14.

For these reasons the proposed Class meets the requirements of Rules 23(a) and 23(b)(3) and the Court should grant provisional certification for purposes of effecting the proposed Settlement.

**C. The Proposed Distribution Plan Is Fair and Reasonable.**

"Approval of a plan of allocation of settlement proceeds in a class action … is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2007). Allocation plans that disburse settlement funds to class members on a "pro rata basis based on the relative size" of potential claims have "frequently been determined to be fair, adequate, and reasonable." *Hefler*, 2018 WL 4207245, at *12 (first citing *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *8 (N.D. Cal. Oct. 20, 2017); then citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *4 (N.D. Cal. Apr. 3, 2013); and then citing *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000)). *See also In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

Here, Class Representatives propose that the Court adopt a Distribution Plan described in the Notice and Claim Form, whereby each Class Member shares in the Settlement Fund on a pro rata basis based on their AEM Fund account balance on May 10, 2019, as adjusted. (Notice at 6–7, 14; Claim Form at 10–12). Using the Class Members' account balances in AEM Funds as of May 10, 2019 as a starting point for the distribution has several benefits. First, using the account balance as of the same date treats each Class Member the same as every other Class Member. (Of

course, as discussed above, the Class Representatives will receive the same pro-rata allocation as every other Class Member.) Second, a Distribution Plan that is based on the amounts of principal and interest owed as of the same date best honors each investor's expectations in terms of what they invested and the interest income they were promised. *E.g.*, *U.S. National Bank v. Boge*, 311 Or. 550, 565 (1991) (doctrine of good faith and fair dealing "protects reasonable expectations of the parties to a contract"). Third, as a practical matter, using account balances as of May 10, 2019 (amounts which have been confirmed by the Receiver) relieves the significant burden that would otherwise fall on Class Members to document their investments as a part of the claims process, and could save tens of thousands of dollars in claims administration expenses.

The Distribution Plan proposed in the Notice includes the possibility of several reasonable adjustments to a Class Member's account balance as of May 10, 2019, to arrive at a "net recognized loss." For example, if a Class Member has received distributions from the Receiver, that will reduce their net recognized loss. In contrast, if a Class Member has paid money to the Receiver to settle clawback claims, for example, that will increase their net recognized loss. Finally, although plaintiffs and their lawyers are not aware of any such Class Members, it is possible some Class Members have obtained settlements with a third party (such as an investment adviser) arising out of their AEM Fund investments. The claim form requires Class Members to disclose any such payments, and calls for such payments to reduce the net recognized loss. These offsets are all appropriate where (a) the third party recovery is for losses that form the basis of the securities class action, (b) the approval of the plan of distribution is derived in part from the fact that the claims of the class members exceed the sums in the settlement fund, (c) the class members are innocent

victims, (d) eliminating the offset provision could mean a double recovery for some class members (even if the chances are small), and (e) eliminating the offset provision would mean at the very least that the partial recoveries for the losses of the innocent class members would be more uneven than recoveries with the offset provision in place. *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1357, 1363, 1365 (9th Cir. 1979).

Because it has a reasonable and rational basis and treats all Class Members fairly, the proposed Distribution Plan should be granted preliminary approval.

### D. The Proposed Claims Administrator Should Be Approved.

The Class Representatives also respectfully request the appointment of Transeth & Associates, LLC ("Transeth"), a Portland-based claims administrator and forensic accounting firm, as Claims Administrator. Rake Decl., Ex. C. As Claims Administrator, Transeth will be responsible for, among other things, mailing the notices to the Class, reviewing claims from Class Members, attempting to resolve misunderstandings and disputes, claims administration, and compiling a schedule for distribution to Class Members. As the *Newberg and Rubenstein on Class Actions* treatise explains:

> If a class action culminates with a settlement fund that must be distributed to the class members, courts typically appoint a claims administrator or special master to oversee the claiming process. The court authorizes the claims administrator to receive proofs of claims, respond to class member questions, rule on the validity of claims, conduct hearings on challenges to claims, and order final distribution of the settlement fund.

Rubenstein, *supra*, § 12:20 (cleaned up).

Transeth has over 12 years of experience as a claims administrator compensation, following a lengthy federal law enforcement career . Rake Decl., Ex. C. Transeth has handled

CLASS REPRESENTATIVES' MOTION FOR
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

Page 29

claims administration in several large securities matters, including but not limited to Berjac of Oregon (*Cox v. Holcomb Fam. Ltd. P'ship*, Multnomah County Circuit Court, Case No. 1308-12201); Grifphon/Sasquatch, Capital Consultants (Jeffrey Grayson, Andrew Wiederhorn), Sunwest Management Inc. (Jon Harder), and Aequitas. Rake Decl., Ex. C. These matters have involved the administration of larger settlement funds and more claims from putative class members than this matter. *Id.*

### E. The Form and Method of Notice Should be Approved.

Rule 23(c)(2)(B) provides: "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice *that is practicable under the circumstances*, including individual notice to all members who can be identified through reasonable effort." (emphasis added). Similarly, Rule 23(e)(1)(B) requires that a court approving a class action settlement "direct notice *in a reasonable manner* to all class members who would be bound by the proposal …." (emphasis added). The notice must provide the following information:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

CLASS REPRESENTATIVES' MOTION FOR                          Page 30
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

"Although that notice must be 'reasonably certain to inform the absent members of the plaintiff class,' actual notice is not required." *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). The form and method of notice proposed by the Class Representatives in Section IV, *supra*, are appropriate because the form of the Notice complies with the requirements of Rule 23(c)(2)(B)(i)–(vii); the method of notice complies with Rule 23(c)(2)(B) and due process requirements by providing the "best notice that is practicable under the circumstances."

The Federal Judicial Center ("FJC") has formulated model forms of combined notice of a settlement class action proposed compromise. An overview of the FJC's methodology in creating such forms can be found on its website: https://www.fjc.gov/content/overview-methodology. Importantly, the FJC has created a model form of notice for use in securities cases. That form can be found here: https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf. Class Representatives' proposed Notice is based closely on the FJC form.

In addition to modeling the FJC model form, the proposed Notice complies with the specific requirements of Rule 23(c)(2)(B) because it clearly and concisely states in plain, easily understood language: (i) the nature of the action (Notice at 4); (ii) the class definition (Notice at 5); (iii) the claims, issues, and defenses (Notice at 4); (iv) that a Class Member may enter an appearance through an attorney (Notice at 9); (v) Class Members' right to exclude themselves from the class (Notice at 8-9); (vi) the time and manner for requesting exclusion (Notice at 8–9); and (vii) the binding effect of a class judgment on all Class Members who do not request exclusion (Notice at 12). *See also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to

alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up).

Likewise, Class Representatives' proposed method for providing notice to Class Members constitutes the best practicable notice under the circumstances. Class Representatives propose to mail, by first class mail, individual copies of the Notice, together with a copy of the Proof of Claim and Release form (the "Proof of Claim"), to all potential Class Members at the address of each such person as set forth in American Equities records or who otherwise may be identified through further reasonable effort. The Claims Administrator will also maintain a settlement website dedicated to this Settlement and make its contact information available on that website and in written communications to Class Members. Courts regularly approve similar notice plans in securities class actions. *See, e.g., Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (finding adequate notice provided by publication of notice in *Investor's Business Daily* and on the internet and mailing notice to potential class members); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (similar); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (similar); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (finding mailed and published notices satisfy Rule 23(c)(3)); *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *8 (N.D. Cal. Dec. 8, 2021) (finding mailed notices were adequate); *Cooks v. TNG GP*, 2020 WL 5535397, at *11 (E.D. Cal. Sept. 15, 2020) (same).

The Court should approve both the proposed form and method of Notice because they comply with the requirements of Rule 23 and due process, and they represent the "best notice practicable" under the circumstances. *Silber*, 18 F.3d at 1454.

**F.  The Court Should Appoint Class Counsel**

Rule 23 requires a court to appoint class counsel that will "fairly and adequately" represent

the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must

consider:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the
> class[.]

Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). Further, the court "may consider any other matter pertinent to

counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P.

23(g)(1)(B).

Larkins Vacura Kayser LLP ("LVK") and Esler Stephens & Buckley, LLP ("Esler

Stephens") seek to be appointed Class Co-Lead Counsel. Both LVK and Esler Stephens have

extensive experience in handling complex class actions, including securities class actions. Rake

Decl., Ex. B; Stephens Decl., ¶¶ 2-3. For example, LVK and Esler Stephens together represented

over 140 investors who lost more than $40 million in a Ponzi-like scheme managed by Aequitas

Capital Management, ultimately achieving favorable settlements with multiple defendant groups

and a receiver. *See Pommier et al. v. Deloitte & Touche et al.*, Multnomah County Circuit Court,

Case No. 16CV36439. Esler Stephens has also represented the successful parties in reported cases

including *Ainslie v. First Interstate Bank*, 148 Or. App. 162 (1997); *Anderson v. Carden*, 146 Or.

App. 675 (1997); and *Ainslie v. Spolyar*, 144 Or. App. 134 (1996), among other cases. In 2015,

Judge You of the Multnomah County Circuit Court appointed Esler Stephens to serve as class

CLASS REPRESENTATIVES' MOTION FOR                                    Page 33
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

counsel in an Oregon Securities Law settlement class action, *Adams, et al. v. Bruhn. et al.*, Multnomah County Circuit Court, Case No. l110-12903.

Both firms have represented Class Representatives from the outset of this case, beginning work in August 2019. LVK and Esler Stephens vigorously investigated and prosecuted this case, including conducting extensive document discovery as described above and preparing key pleadings and briefs, and have negotiated an early partial settlement that provides significant monetary relief to the Class Members. Rake Decl., ¶¶ 3-12; Stephens Decl., ¶¶ 4-11.

Thus, the Court should appoint LVK and Esler Stephens as Class Co-Lead Counsel.

## VI. PROPOSED SCHEDULE

The Court's entry of the proposed Preliminary Approval Order would, among other things, (i) certify, for settlement purposes, this action as a class action; and (ii) direct notice of the Settlement to all members of the Class. As such, the Preliminary Approval Order sets a proposed schedule for mailing and publication of the Notice and Summary Notice, as well as deadlines for submitting claims and/or objecting to the Settlement or opting out of the Class. The following timeline is consistent with the Preliminary Approval Order and provides for notice and a fairness hearing within a reasonable time frame similar to those in numerous class action settlements.

| Date | Event |
|------|-------|
| Not later than twenty-eight (28) days after entry of Preliminary Approval Order | Settlement documents posted to www.AmericanEagleClassAction.com website. |
| Not later than twenty-eight (28) days after the entry of the Preliminary Approval Order | Mailing of Notice and Proof of Claim by first class mail to all Oregon citizens who can be identified with reasonable effort who purchased AEM Fund investments and were owed money for such investments as of May 10, 2019. |

CLASS REPRESENTATIVES' MOTION FOR                               Page 34
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

| Not later than forty-two (42) days prior to the Fairness Hearing | Class Counsel to file Proof of Mailing by Declaration of Claims Administrator with the Court. |
|---|---|
| Not later than forty-two (42) days prior to the Fairness Hearing | Due date for Class Representatives' papers in support of final approval of the Settlement and papers in support of the request for an award of attorneys' fees and expenses. |
| At least twenty-eight (28) days prior to the Fairness Hearing | Due date for postmark or delivery of requests for exclusion. Due date for delivery and filing of objections and intents to appear at the Fairness Hearing. |
| No later than fourteen (14) days prior to the Fairness Hearing | Due date to file request for an award of attorneys' fees and expenses and reply papers, if any, in support of final approval of the Settlement. |
| To be set by the Court approximately four months following entry of the Preliminary Approval Order | Fairness Hearing |

CLASS REPRESENTATIVES' MOTION FOR                                    Page 35
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT

## VII.   CONCLUSION

Counsel for the Parties reached this Settlement following extensive discussions and arm's-length negotiations, and after significant discovery and motions practice. At this juncture, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable, and adequate. The Court is being asked only to grant preliminary approval of the proposed Settlement so that notice of the terms of the Settlement may to be sent to the Class, and to schedule a fairness hearing to consider final approval.

DATED: October 6, 2022.

LARKINS VACURA KAYSER LLP

/s/ John C. Rake
John C. Rake, OSB #105808
jrake@lvklaw.com
Christopher J. Kayser, OSB #984244
cjkayser@lvklaw.com
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

ESLER STEPHENS & BUCKLEY, LLP

/s/ John W. Stephens
John W. Stephens, OSB #773583
stephens@eslerstephens.com
Michael J. Esler, OSB #710560
esler@eslerstephens.com
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-223-1510

Attorneys for Plaintiffs

CLASS REPRESENTATIVES' MOTION FOR                                          Page 36
PRELIMINARY APPROVAL OF PARTIAL
SETTLEMENT AND MEMORANDUM IN
SUPPORT