UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DIANE ANDERSON, *trustee of the Diane L. Anderson Revocable Trust*, BONNIE BUCKLEY, *trustee of the Bonnie K. Buckley IRA*, CARL and KIRBY DYESS, *trustees of the Dyess Family Trust*, PETER KOUBECK, *an individual and trustee of Peter L. Koubeck IRA*, MICHAEL PETERSON, *trustee of the Michael T. Peterson IRA*, ED WILSON, *an individual*,

          Plaintiffs,

   v.

DAVIS WRIGHT TREMAINE LLP, *a Washington limited liability partnership*, ROSS MILES, *an individual*, MAUREEN WILE, *an individual*, PACIFIC PREMIER BANK, *a California chartered bank*, RIVERVIEW COMMUNITY BANK, *a Washington chartered bank*,

          Defendants.

Case No. 3:20-cv-01194-AR

**FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**

_____

Page 1  – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

**ARMISTEAD, Magistrate Judge**

Plaintiffs seek to represent a class of investors who purchased private real estate securities sold by American Equities Inc. (AEI), American Eagle Mortgage Management LLC (AEMM), defendant Ross Miles, and defendant Maureen Wile (collectively, American Equities). Plaintiffs allege that American Equities made numerous false representations and material omissions about their investments, including that the securities consisted of "pooled" real estate receivables (the Funds or AEM Funds) that were secured by the underlying real property and that the Funds were responsibly managed. Plaintiffs assert that they were misled, and that investor money was commingled and used to hide earlier losses, to pay loans from defendants Riverview Community Bank and Pacific Premier Bank (collectively, the Banks), to pay returns to earlier investors, and to pay loans made to Miles, American Equities, and family members. Plaintiffs also allege that American Equities improperly transferred the real estate collateral that they were told secured their investments to the Banks to secure American Equities' loans and lines of credit. Eventually, the Funds collapsed and were taken over by a court-appointed receiver.

In this action, plaintiffs assert two claims of primary securities liability against defendants Miles and Wile for selling securities by means of untrue statements of material fact or omissions, ORS § 59.115(1)(b) (Claim 1), and for selling securities using fraud or deceit, ORS § 59.135 (Claim 3). Plaintiffs also seek to hold nonsellers Davis Wright Tremaine LLP (DWT), Riverview, and Pacific Premier jointly and severally liable for participating or materially aiding the unlawful sale of American Equities securities under ORS § 59.115(3) (Claims 2 & 4). Plaintiffs allege that defendant DWT participated or materially aided the securities sales to plaintiffs and putative class members by drafting the Private Placement Disclosure Documents

Page 2 – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

(PPMs), the offering materials, and the other documents necessary for American Equities to complete the securities sales. Plaintiffs allege that Riverview and Pacific Premier materially aided the sales by providing loans and lines of credit to Miles, Wile, and American Equities to keep the investment scheme afloat for years. Plaintiffs seek $25.3 million in damages.

Presently before the court is plaintiffs' motion for preliminary approval of a settlement that it has reached with defendant DWT (the Proposed Settlement). If approved, DWT has agreed to pay $4.5 million to the putative class members in exchange for a release of all claims against it. The Proposed Settlement also is conditioned upon entry by the court of a contribution claims bar. Defendants Pacific Premier and Riverview oppose the settlement contending that entry of a contribution claims bar violates their statutory contribution rights.[1]  As explained below, the court recommends that preliminary approval of the Proposed Settlement be granted.

## BACKGROUND

A.    *Facts Relevant to Settlement*

Plaintiffs allege that American Equities sold securities without necessary state and federal licenses and registrations and by means of untrue statements or omissions of material fact in violation of Oregon securities law. American Equities was forced into receivership on May 10, 2019, *In re: American Eagle Mortgage 100, LLC*, Case No. 19-2-01458-06 (Clark Cnty. Superior Ct.). On February 19, 2020, the Receiver brought an action for money damages against AEI, AEMM, Miles, and Wile that later was amended to include Riverview and Pacific Premier,

---

[1]    In its opposition, Riverview joined all arguments made by Pacific Premier; it did not advance any separate arguments. For clarity, the court refers to Pacific Premier and Riverview collectively as the Banks.

Page 3  – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

*Hamstreet & Assocs. v. American Equities, Inc.*, Case No. 20-2-00507-06 (Clark Cnty. Superior Ct.) (the Fund Litigation). (Decl. J. Matthew Donohue Supp. Pac. Premier Mot. Dismiss (Donohue Decl.) Exs. 1, 6, ECF No. 67-1, 67-6.) On April 27, 2022, the Securities and Exchange Commission (SEC) initiated an action against Miles, Wile, and AEI, *SEC v. American Equities, Inc.*, 3:22-cv-00621-SB (D. Or.) (the SEC Action). Another group of investors have brought an action against defendants DWT, Miles, Wile, Pacific Premier, and Riverview, in Multnomah County Circuit Court, *Beattie v. Davis Wright Tremaine, LLP*, Case No. 20CV09419) (the *Beattie* Litigation). The *Beattie* plaintiffs are investors whose domicile prevents them from joining this putative class action. If this settlement is approved, it also will resolve the claims brought against DWT in the *Beattie* Litigation.

Defendant DWT is a law firm whose attorneys in Portland, Oregon, prepared the legal materials necessary for American Equities to sell securities through various real estate entities known as AEM Funds. The Banks are alleged to have provided funding used by American Equities to purchase the underlying first-position real estate contracts, promissory notes, and deeds of trust (Receivables) that were then "pooled" and sold to investors. In this action, plaintiffs allege that DWT and the Banks are jointly and severally liable with American Equities for violations of Oregon securities law because they participated and materially aided in the sales of various AEM Funds to plaintiffs and other putative class members.

**B.      *Procedural History***

Plaintiffs are seven Oregon investors who purchased securities in various AEM Funds and filed this action in Multnomah County Circuit Court on February 25, 2020. They assert claims personally and as trustees and they seek to represent a class of similar investors. (Notice

Page 4  – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

of Removal Ex. A, ECF No. 1.) The complaint originally was brought against DWT; the First

Amended Complaint added Miles, Wile, and Pacific Premier as defendants. (*Id.* Ex. A at 62

(attaching First Amended Complaint).) On July 22, 2020, DWT removed the action to this court,

contending that this court has jurisdiction under the Class Action Fairness Act of 2005, 28

U.S.C. § 1332(d). Plaintiffs moved to remand the case back to Multnomah County Circuit Court.

In a July 14, 2021 Findings and Recommendation, Magistrate Judge John V. Acosta denied the

motion to remand, concluding that there were 104 class members. (F&R at 17, ECF No. 42.)

District Judge Marco A. Hernández adopted the F&R, modifying it to exclude Ronald Larson as

a class member, and reducing the class to 103 members. (Order at 2, ECF No. 52.) This action

was reassigned to this court on March 23, 2022. (Notice of Reassignment, ECF No. 59.) Shortly

thereafter, plaintiffs filed a Second Amended Complaint (SAC) adding Riverview as a defendant.

(SAC ¶¶ 42-43, ECF No. 60.)

**C.**     ***Mediation and Settlement Process***

            In December 2021, counsel for plaintiffs, DWT, Riverview, Pacific Premier, the

Receiver, and the *Beattie* plaintiffs participated in a lengthy mediation with Robert A. Meyer of

JAMS Mediation, Arbitration, and ADR Services. (Pls.' Mot. Prelim. Approv. Settlement at 5-6,

ECF No. 89.) DWT reached a tentative settlement with plaintiffs, the *Beattie* plaintiffs, and the

Receiver. (*Id.* at 6.) DWT has agreed to pay $4.5 million to be split among them. "Committing

the settlement terms to paper took many months due to various factors, including . . . the

complexities of allocating the total settlement amount among the different investor groups and

COVID-related complications that affected attorney's availability." (*Id.*) The plaintiffs reached a

formal agreement with DWT on August 26, 2022, and with the Receiver on October 28, 2022. (Settlement Agreement, ECF No. 90-1.)

On November 21, 2022, plaintiffs filed a Supplemental Motion, informing the court that the Receiver has agreed to release its claims against DWT in exchange for a sum of $36,818.89, a slightly revised figure from the $36,770 included in the initial Notice. (Pls' Supp. Mot. Prelim. Approv. at 3, ECF No. 1 Ex. 1, ECF No. 101) (stating that the initial Notice provided $36,770 in consideration to the Receiver, that the final agreed upon sum is $36,818.89, noting the $48.89 difference, and attaching a revised Notice). Additionally, the Supplemental Motion accommodates a request by Pacific Premier that the Notice be modified to "accurately state that non-settling defendants (in addition to DWT) deny wrongdoing." (*Id.* at 3.)

**D.    *The Settlement Agreement***

**1.    Class Definition**

The proposed settlement class (the Class) is defined as:

a. each Oregon citizen who was sold a security issued by American Equities in one of the Funds in violation of the Oregon Securities Law and is owed money by American Equities, including by one of the Funds, with respect to the Securities, and is not excluded from the Class pursuant to ¶ 7 below; and

b. each person who is a co-claimant (e.g., a co-owner) with a person described in subparagraph a. of this ¶ 6 and is not excluded from the Class pursuant to ¶ 7.

(SAC ¶ 6.a-b.) The Funds included in the class definition are: American Eagle Mortgage 100, LLC; American Eagle Mortgage 200, LLC;  American Eagle Mortgage 300, LLC; American Eagle Mortgage 400, LLC; American Eagle Mortgage 500, LLC; American Eagle Mortgage 600, LLC; American Eagle Mortgage Mexico 100, LLC; American Eagle Mortgage Mexico 200, LLC; American Eagle Mortgage Mexico 300, LLC; American Eagle Mortgage Mexico 400,

Page 6  – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

LLC; American Eagle Mortgage Mexico 500, LLC; American Eagle Mortgage I, LLC;

American Eagle Mortgage II, LLC; and American Eagle Mortgage Short Term, LLC (together,

the "Funds" or "AEM Funds"). (SAC ¶ 4.)

The Class excludes persons who are liable under ORS § 59.115(1) or (3) to any member

of the Class, including each defendant; immediate family members; and persons who opt out.

(SAC ¶ 7.) Additionally, plaintiffs and DWT have agreed that the following are not members of

this class: Robert MacLellan, Gay MacLellan, RSM Revocable Trust (Robert MacLellan and

Gay MacLellan, trustees), and M2M Development Inc. 401k PSP (Robert MacLellan and Gay

MacLellan, trustees). They are excluded from the Class because they are *Beattie* Litigation

plaintiffs and will be compensated through DWT's settlement with that group. (Pls. Mot. Prelim.

Approv. at 8.)

### 2.    Settlement Consideration Benefits

DWT has agreed to pay the class $3,677,000. (Rake Decl. Ex. 1, Settlement Agreement at

6, ECF No. 90-1.) Under the terms of the Proposed Settlement, plaintiffs have agreed to pay the

Receiver $36,818.89, to reimburse the Receiver for the costs of compiling the claims amounts

for plaintiff and the Class. (Supp. Rake Decl. Ex. B (Supp. Agreement) ECF No. 102-1 at 19.)

The Proposed Settlement provides for a Distribution Plan that pays class members based on their

account balances as of May 10, 2019, as adjusted and confirmed by the Receiver.

### 3.    Release

In exchange, plaintiffs and class members who have not opted out will release all claims

for damages against DTW arising out of or relating in any way to: (1) any claim that is asserted

or could be asserted in the class action; or (2) American Equities, the Receivership Pools, or American Equities securities.[2] (Pls.'s Mot. Prelim. Approv. at 8 & n. 1-2.)

### 4.    Class Notice and Administration of Claims

The Proposed Settlement provides that the court will appoint Transeth & Associates LLC as third-party Claims Administrator to supervise and administer the notice procedure, process claims, resolve any disputes, and compile a schedule of distributions. (Mot. Prelim. Approv. at 29.) The Proposed Settlement mandates that, within 28 calendar days of the court's order preliminarily approving the settlement, Class Counsel will provide Notice to Class Members through mailing to all identifiable Class Members: (1) the Proposed Notice of Pendency and Proposed Settlement of Class Action (Notice) (substantially in the form attached to Supp. Rake Decl., ECF No. 102-1); and (2) the Proof of Claim and Release and Reduction of Claim (substantially in the form attached to Rake Decl., ECF No. 89-3). Additionally, within 28 days after the entry of the Preliminary Approval Order, settlement documents will be posted to www.AmericanEagleClassAction.com website.

### 5.    Attorney Fees and Costs

After Final Approval of the Settlement, class counsel will apply to the court for an award from the Gross Settlement Fund requesting attorney fees not to exceed 25 percent of the settlement amount for reimbursement of charges and expenses. (Rake Decl. Ex. A, ECF No. 90-1.)

---

[2]    The Proposed Settlement Agreement applies to investments in American Eagle Mortgage Mexico 600, LLC, even though it is not one of the "Funds" described in the SAC.

**6.    Contribution Claims Bar**

The Settlement is expressly conditioned upon entry of an injunction barring contribution claims by the other defendants against DWT. (Settlement ¶ 25 & Ex. B). Additionally, the Settlement contemplates a form of limited judgment in this action that dismisses the action against DWT as to all Class Members with prejudice and that results in a dollar-for-dollar reduction of the amount of claims a plaintiff or Class Member may have against defendants Miles, Wile, Pacific Premier, and Riverview. (Settlement ¶ 18, Ex. ¶ 13.)

**7.    Objections and Exclusions**

The Notice provides that the Settlement Class Members who wish to exclude themselves from the Settlement must submit a written statement to the Claims Administrator requesting exclusion at least 28 days before the Final Fairness Hearing. Class Members requesting exclusion are forever barred from receiving payments under the Settlement. Class Members may object to the proposed settlement by filing an objection with the court at least 28 days prior to the Final Fairness Hearing. (Rake Supp. Decl. Ex. B at 9-10, ECF No. 102-1.)

**E.    *Final Approval and Judgment***

The Settlement is subject to court issuing a Final Approval Order following a Fairness Hearing that (1) grants final approval of the Settlement Agreement; and (2) determines the amount of attorney fees that should be awarded to Class Counsel. The Fairness Hearing is to be set approximately four months following entry of the Preliminary Approval Order.

**LEGAL STANDARDS**

Rule 23(e) requires court approval of any settlement in a class action. FED. R. CIV. P. 23(e). Court approval is necessary to combat the "unique due process concerns for absent class

Page 9  – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

members" present in class action settlements. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011). When parties reach a class action settlement prior to class certification, the court applies a "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotation omitted). The court evaluates the proposed settlement for any sign that class counsel or certain class members have secured a disproportionate benefit at the expense of absent class members. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *Ciuffitelli v. Deloitte & Touche LLP*, Case No. 3:16-cv-00580-AC, 2019 WL 1441634, at *16 (D. Or. Mar. 19, 2019) (*Ciuffitelli III*).[3]

The proposed class must satisfy the class certification requirements found in Rule 23(a)–(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). The court also must evaluate the proposed settlement to ensure it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Upon preliminary approval of the class certification and settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* The matter then proceeds to a final hearing under Rule 23(e)(2), where class members may respond to the notice and raise objections. *Id.* The settlement approval is not binding until after

---

[3]     Magistrate Judge John V. Acosta issued three Findings and Recommendations in an action seeking to impose nonseller liability for participating and materially aiding securities sales under ORS § 59.115(3), *Ciuffitelli v. Deloitte & Touche LLP*, Case No. 3:16-cv-00580-AC. Because the court refers to all three of Judge Acosta's decisions in its Findings and Recommendations to resolve the pending motions to dismiss and motion for partial settlement, the court identifies his 2017 decision as *Ciuffitelli I*, his 2018 decision as *Ciuffitelli II*, and his 2019 decision as *Ciuffitelli III*.

the final hearing. *Id.*; *Russell v. Ray Klein, Inc.*, Case No. 1:19-cv-00001-MC, 2022 WL 1639560, *2 (D. Or. May 24, 2022).

## DISCUSSION

In their Motion for Preliminary Approval, the named plaintiffs move for an Order that does the following: (1) approves the proposed Settlement with DWT; (2) provisionally certifies a settlement class; (3) preliminarily approves the Distribution Plan from the settlement; (4) approves the proposed Claims Administrator; (5) approves the form and method of class Notice; (6) preliminarily approves plaintiffs' counsel as settlement Class Counsel; and (7) schedules a Fairness Hearing for final approval of the Settlement.

The Banks object to the court's approval of the Proposed Settlement, contending that the contribution claims bar is not fair, reasonable, or adequate because it is prejudicial to them as non-settling defendants. In the Banks' view, the contribution claims bar is unreasonable because they may be forced to pay more than their proportionate share of liability. The Banks contend that, despite DWT's "more significant and direct role in the securities sales," plaintiffs' settlement with DWT for only $3.677 million represents just a fraction of the alleged class damages of $25 million. (Pac. Premier Opp'n to Prelim. Approv. at 3, ECF No. 97.) The Banks raise no arguments concerning provisional class certification for settlement purposes, or other portions of plaintiffs' motion for preliminary approval. The court begins its analysis by examining preliminary settlement approval, including the Banks' objections to the contribution

claims bar portion of the proposed settlement, then turns to provisional class certification and the remaining requests.[4]

**A.    *Preliminary Settlement Approval***

    **1.    Contribution Claims Bar**

        **a.    *standing to object***

"Non-settling defendants generally lack standing to object to a partial settlement."

*Ciuffitelli III*, 2019 WL 1441634, at * 6 (citing *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582-83 (9th Cir. 1987)). Yet non-settling defendants may object where they can demonstrate that they will suffer some formal legal prejudice resulting from the settlement. *Id.* Plaintiffs do not dispute that the Banks have standing to object to the contribution claims bar. Additionally, the parties have agreed that the court's resolution of the contribution claims bar issue will streamline the final approval process because settlement is conditioned upon its entry. (Pls. Reply at 3-4 n.1, ECF No. 104.)

    The court finds that the Banks have standing to object to the entry of the contribution claims bar portion as part of the proposed settlement because it affects their rights to seek indemnification and contribution. *Ciuffitelli III*, 2019 WL 1441634, at *6 (concluding that non-settling defendants could object to the "contribution claims bar" portion of a proposed partial class action settlement); *Waller*, 828 F.2d at 583; *see also Eichenholtz v. Brennan*, 52 F.3d 478,

---

[4]    The Banks also raised objections to the proposed settlement on personal jurisdiction grounds. The court has determined in a separate Findings and Recommendation issued concurrently that it has specific personal jurisdiction over Riverview and Pacific Premier. Therefore, the Banks' objections on jurisdictional grounds are now moot, and the court declines to address those issues again here.

482 (3rd Cir. 1995) (finding non-settling defendant had standing to object to settlement where right to indemnification would be extinguished by bar order in settlement agreement). And, the court concludes that it is best to resolve arguments concerning the contribution claims bar at this juncture. *Ciuffitelli III*, 2019 WL 1441634, at *6 (resolving contribution claims bar issues at preliminary approval stage).

### b.    *analysis of contribution claims bar*

The contribution claims bar between plaintiffs and DWT states in relevant part:

> The Court **bars and permanently enjoins** all future claims for contribution, indemnity, and any similar claims that may be asserted in any proceeding by any person against DWT, including its respective subsidiaries, affiliates, licensees, licensors, predecessors, successors and assigns, and each of its past, present and future officers, directors, members, employees, agents, representatives, attorneys, partners, principals, associates, senior counsel, insurers, underwriters and claims administrators, where such claim arises from or relates to the conduct, transactions, or occurrences asserted in the second amended complaint (Appendix A). This injunction applies only to claims having the essential characteristics of contribution or indemnity, i.e., the claim arises from the claimant's own liability or potential liability to plaintiffs or to members of the class, and the claim is intended to allocate or distribute such liability or related harm.

(Rake Decl. Ex. B, Claim Bar Order at 1, ECF No. 90-1 at 44.) It further provides that "[t]his Claim Bar Order and Injunction shall be incorporated by reference into the final judgment with respect to DWT entered by the court in this case." (*Id.* at 2.)

The Banks assert two primary objections. First, the Banks contend that the contribution claims bar is facially prejudicial because it does not include *any* contribution or offset to account for the settlement with DWT. (Def.'s Pac. Premier Opp'n at 14.) The court disagrees. The Banks view the Claims Bar Order in isolation. The Claims Bar Order is just one piece of the overall Settlement with DWT. For example, paragraph 13 of plaintiffs' proposed Partial Judgment of

Dismissal of DWT specifically provides for a "Reduction of Subsequent Claims," which states that their claims are "reduce[d], on a dollar-for-dollar basis" (commonly known as a *pro tanto* credit) by the amount received through the settlement. (Pls.' Mot. Prelim. Approv. Ex. B at 15, ECF No. 89-4.) And the proposed Investor Claim Form to the putative class members states that "any payment or distribution made from the class action settlement fund to me shall reduce, on a dollar-for-dollar basis, the amount of claims." (*Id.* Ex. A-2 at 8, ECF No. 89-3.) Consequently, the court finds there are multiple parts of the Settlement that, when taken together, demonstrate that the contribution claims bar provides a credit to the non-settling Bank defendants and, therefore, is not facially prejudicial.

Second, the Banks argue that the contribution claims bar is unreasonable because the dollar-for-dollar reduction forces the non-settling defendants to pay more than their apportioned share, citing *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989). The Banks contend that to be fair, "any contribution claims bar must ensure that a non-settling defendant can only be held jointly and severally liable for the total liability apportioned to the non-settling defendants." (Def.'s Pac. Premier Opp'n at 13-14.) The Banks assert that it is plausible that a jury could find them liable for only one percent and DWT for 50 percent, and that under the joint and several liability of ORS § 59.115(3), it would be required to pay the entire judgment and be forbidden from seeking to recover the remaining 49 percent from DWT due to the contribution claims bar. In the Banks' view, failing to require the jury to apportion liability among settling and non-settling defendants does not protect their rights and could leave them unfairly on the hook for a greater portion of liability. Plaintiffs respond that the joint and several liability imposed on those

who participate and materially aid securities sales that violate ORS § 59.115(3) is not fault-based, and that the Banks' arguments about judgment credits are misplaced.

At bottom, the parties' dispute the proper method of crediting the settlement amount that plaintiffs will receive against any future judgments that may be entered against the non-settling defendant Banks. The Banks contend that liability must be apportioned; plaintiffs seek a *pro tanto* credit reduction. As the Banks acknowledge, Judge Acosta considered both approaches and approved a *pro tanto* reduction in *Ciuffitelli III*, 2019 WL 1441634, at *7. In *Ciuffitelli III*, a law firm reached a partial settlement with investor plaintiffs in a large securities putative class action to resolve the secondary liability claims asserted against it under ORS § 59.115(3). *Id.* at *3-4. Other non-settling defendants – including accounting firms, a law firm, a bank, and a financial advisor – objected to the partial settlement, contending that the contribution claims bar unfairly extinguished their contribution rights and unfairly exposed them to a disproportionate amount of liability. *Id.* at *7-10. As Judge Acosta explained:

> Under a *pro tanto* reduction, "the amount paid by the settling defendants is deducted from the overall verdict, and the non-settling defendants are liable for the balance." [*Fluck v. Blevins*, 969 F. Supp. 1231, 1233 (D. Or. 1970]. Under a proportionate liability reduction, "the jury determines the amount of total damages and percentage of culpability for each defendant. The percentage attributable to the settling defendants is then subtracted, and the non-settling defendants are jointly and severally liable for the balance of the damages." *Id.* As numerous courts have observed, there are advantages and disadvantages to both methods.

*Id.* (citing *Fluck*, 969 F. Supp. at 1233-37 (discussing complexities of each method)); *Kaypro*, 884 F.2d at 1229-32 (same); and *Bragger v. Trinity Cap. Enter. Corp.*, Case No. 92 Civ. 2124 (LMM), 1993 WL 287626, at *1 (S.D.N.Y. July 23, 1993) (discussing that contribution claim bars are acceptable and desirable, but how a subsequent judgment is to be properly reduced is not

"that simple a question"), *appeal dismissed and remanded as moot by,* 30 F.3d 14 (3rd Cir. 1994).)

After reviewing several decisions by state and federal courts, including *Kaypro*, Judge Acosta reasoned that "both methods of offset are available under Oregon securities law" and that "Oregon courts, in their discretion, utilize the method either agreed upon by the parties or supported by the unique facts and circumstances present in each case to reach a result that is fair, reasonable, and adequate." *Id.* at *9. And Judge Acosta determined that "nothing in the Oregon law explicitly precludes partial settlements or bar orders in securities cases, or precludes a court from deeming a right to contribution to be satisfied or extinguished." *Id.* at *10. Finally, Judge Acosta concluded that the *pro tanto* contribution claims bar was "fair, reasonable, and adequate" in that case. *Id.*

The Banks make little effort to distinguish *Ciuffitelli III* here, except to erroneously contend in a footnote that the proposed contribution claims bar fails to provide *any* form of credit reduction. (Pac. Premier Opp'n at 14 n.4.) As discussed above, that statement is incorrect. The court is persuaded by the sound rationale in *Ciuffitelli III* and finds that applying a *pro tanto* method of crediting the non-settling defendants is fair, reasonable, and adequate here. Like the law firm defendant in *Ciuffitelli III*, DWT is in the business of providing personal services, the liability of its partners is limited, and nothing prevents DWT's attorneys from leaving the firm should a large judgment be entered against it, diminishing the possibility of future recovery. *Id.* at *10 (observing that the departure of attorneys leaves few assets remaining, and that no individual partners were named as defendants). Although it is not clear from the materials submitted by plaintiffs, it is likely that "the largest asset [DWT] has to pay a judgment is its

liability insurance," which is typically a wasting policy, and that "the longer litigation drags on, the less money is available to pay a judgment or settlement." *Id.* (citing *Adams v. Perkins & Co.*, Cas No. 1110-12903 (Mult. Cnty. Circuit Ct.) (attached to Pls.' Reply Ex. A, ECF No. 104-1)). The longer DWT remains in this litigation, the greater its defense costs become, thereby reducing the amount of any potential future recovery for plaintiffs from DWT. *Id.* Therefore, the court finds that the *pro tanto* contribution claims bar provides the greatest likely recovery for the class in the circumstances presented here and promotes the purpose of ORS § 59.115 to "afford the greatest possible protection to the public." *Adams v. Am. W. Secs., Inc.*, 265 Or. 514, 524 (1973) (quotation omitted).

Accordingly, the court concludes that the dollar-for-dollar method of crediting the non-settling Bank defendants is fair, reasonable, and adequate under the circumstances of this case.

### 2.    Analysis of Remaining Rule 23(e)(2) Factors

To guide the court's inquiry that the proposed settlement is fair, reasonable, and adequate, Rule 23(e)(2) identifies four factors:

> (A) the plaintiffs and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2)(A)-(D). The Ninth Circuit also has identified several factors the court may consider, many of which overlap with those in Rule 23(e)(2):

> the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout

the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *In re Bluetooth*, 654 F.3d at 946. The court begins with the Rule 23(e)(2) factors, then addresses the *Hanlon* factors. All factors weigh in favor of approving the proposed settlement.

Factors one and two favor approval. The record reflects that plaintiffs and their counsel have adequately represented the class. Plaintiffs' counsel has extensive experience handling securities litigation. They have pursued this action for over three years, investigating claims, exchanging formal and informal discovery, moving to remand, and engaging in mediation while pursuing relief in accordance with class-wide interests. (Pls.' Mot. Prelim. Approv. 12-14.) The proposed settlement was negotiated at arm's length with a neutral mediator after the parties engaged in nearly two years of investigation and discovery. (Rake Decl. ¶¶ 3-6.)

As to the third factor, the court finds that the relief provided for the class is adequate. The SAC seeks damages of $25.3 million from five defendants. The settlement agreement resolves the dispute against DWT in exchange for a payment of nearly $3.7 million, or roughly 15 percent of the total damages sought. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (concluding that settlement amount of roughly one-sixth of potential recovery was fair and adequate "given the difficulties" of that case); *Hunichen v. Atonomi LLC*, Case No. C19-0615-RAJ-SKV, 2021 WL 5854964, at *9 (W.D. Wash. Nov. 12, 2021) (approving partial settlement of 20 percent of total damages). The amount of recovery must be considered in light of the strength of the risk, complexity, and likely duration continued litigation. *Junkersfeld v. Med.*

*Staffing Sols., Inc.*, Case No. 1:19-cv-00236-EPG, 2022 WL 223964, at *6 (E.D. Cal. Jan. 25, 2022) (noting that to assess this factor, the court compares the proposed settlement with the best possible outcome for the class). Here, there are significant inherent risks to plaintiffs and class members given the complexities of this case. The Class faces challenges at class certification, summary judgment, and trial, which could result in little or no recovery. Even if plaintiffs prevailed at trial, DWT could appeal the verdict, further delaying any recovery. Thus, the court finds that the settlement provides an opportunity for meaningful recovery and is well within the range of possible approval.

The fourth factor also weighs in favor of approval. The proposed settlement does not grant preferential treatment to plaintiffs or segments of the class. The Plan of Distribution compensates all class members equally based on their net recognized losses, derived from their investment account balance on May 10, 2019. *Ciuffitelli III*, 2019 WL 1441634, at *18.  The court finds no obvious deficiencies in the proposed settlement and no improper grant of preferential treatment to plaintiffs or to any segment of the class.

Considering the other *Hanlon* fairness factors not already discussed above, including the extent of discovery completed, the stage of the proceedings, and the experience and views of counsel, the court concludes that they weigh in favor of preliminary approval. Counsel for DWT and plaintiffs are highly experienced in securities litigation and have had nearly three years to assess the relative strengths and weaknesses of their claims and defenses. The parties have exchanged documents through formal and informal discovery in this action, the Fund Litigation, and the *Beattie* Litigation, and the Proposed Settlement is the product of a serious, informed decision. *See Hunichen*, 2021 WL 5854964, *9 (concluding fairness factors weighed in favor of

preliminary approval because counsels' decision to resolve case was informed by years of litigation and review of documents).

Finally, the court must examine the Proposed Settlement under the Ninth Circuit's heightened standard for pre-certification class actions. The court must apply a more probing inquiry for any sign that class counsel or certain class members have secured a disproportionate benefit at the expense of absent class members. *Roes, 1-2*, 944 F.3d at 1049; *Bluetooth*, 654 F.3d at 947; *Ciuffitelli III*, 2019 WL 1441634, at *16. The court applies a "higher level of scrutiny for evidence of collusion or other conflicts of interest." *Roes, 1-2*, 944 F.3d at 1043. "The Ninth Circuit has identified three signs of a collusive settlement: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney fees separate and apart from class funds without objection by defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund." *Ciuffitelli III*, 2019 WL 1441634, at *17 (citing *Bell v. Consumer Cellular, Inc.*, Case No. 3:15-cv-00941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017)); *accord Bluetooth*, 654 F.3d at 947.

The settlement bears no hallmarks of collusion. The bulk of the proposed settlement will compensate the class ($3,677,000) as opposed to class counsel. Although DWT has agreed not to oppose class counsel's fee request if it is less than 25 percent, the proposed settlement requires court approval of the fee award. The proposed settlement does not contain a "clear sailing" provision; instead fees are paid from the settlement fund and there is no reversion of any settlement fund to DWT. Additionally, the presence of the *Beattie* plaintiffs and the Receiver

during the mediation process further demonstrates the lack of collusion. *See Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 4207245, at *8-9 (N.D. Cal. Sept. 4, 2018) (finding no collusion where there was no clear sailing provision, funds did not revert to defendants, and the parties engaged in mediation). In short, the settlement appears to be the product of serious, informed non-collusive negotiations.

**B.     *The Class Should be Provisionally Certified***

    **1.     Rule 23(a)**

For class certification, the proposed class must meet four certification prequisites: numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23(a). Additionally, the class must meet one of the requirements in Rule 23(b), which defines the three types of classes permitted. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013)

Numerosity requires a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a class of greater than forty members is sufficient. *Villaneuva v. Liberty Acquisitions Serv., LLC*, 319 F.R.D. 307, 314 (D. Or. 2017); *Ciuffitelli III*, 2019 WL 1441634, at *12. Although not specifically mentioned in Rule 23, courts consider ascertainability when determining numerosity. Ascertainability means that the class be "sufficiently definite so that it is feasible for the court to determine membership by reference to objective criteria." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1325 (W.D. Wash. 2015). As previously determined by this court, plaintiffs have identified 103 persons who fit the class definition. (Pls.' Mot. Prelim. Approv. at 19.) Thus, numerosity is satisfied.

Commonality requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "A common question 'must be of such a nature that it is capable of classwide

resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (quoting *Dukes*, 564 U.S. at 350). This requirement has "been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Ciuffitelli III*, 2019 WL 1441634, at *12.   A single significant question of law or fact is sufficient. *Jimenez v. Allstate Ins.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Courts have found the commonality element satisfied "'where putative class members have been injured by the same material misrepresentations and omissions.'" *Ciuffitelli III*, 2019 WL 1441634, at *12 (quoting *In re Bank of Am Corp. Secs.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (simplified).)

Plaintiffs have identified several common issues of law and fact which are amenable to class resolution, including: (1) whether the American Equities securities were sold by means of untrue statements or misleading omissions; and (2) whether DWT participated or materially aided in the unlawful sales of those securities. (Pls.' Mot. Prelim. Approv. at 20.) Because common answers to these questions are "apt to drive the resolution" of this litigation, the court finds the commonality element satisfied. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).

Typicality requires that the "claims . . . of the representative parties are typical of the claims . . . of the class." FED. R. CIV. P. 23(a)(3). "The test of typicality serves to ensure that the interest of the named representative aligns with the interests of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (simplified). Typicality looks to "whether other members have the same or similar injury, whether the action is based on conduct which is

not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (simplified).

Plaintiffs' claims arise from the same alleged course of conduct that gives rise to the claims of other class members and are based on the same legal theories. Plaintiffs allege that they purchased American Equities securities in AEM Funds that were sold in violation of Oregon securities law. Plaintiffs allege that the securities were marketed as stable, secure, and solvent investments, when they were not. (SAC ¶¶ 30-33.) Plaintiffs allege that DWT participated and materially aided the sale of those securities by preparing the offering materials and lending credibility to American Equities fundraising. (*Id.* ¶¶ 11-13.) Plaintiffs and class members allege the same legal theories in holding DWT and the non-settling defendants accountable and assert the same legal right to rescissory damages. *Ciuffitelli III*, 2019 WL 1441634, at *13. The court finds plaintiffs' claims are sufficiently typical of the class members to satisfy this element.

Adequacy requires that "representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This element examines: (1) whether the plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Ciuffitelli III*, 2019 WL 1441634, at *14; *Ellis*, 657 F.3d at 985.

Plaintiffs and Class Counsel have no conflicts with the other Class Members. The plaintiffs are incentivized to adequately represent the class because they share a common economic injury from their purchases of American Equities securities. Class Counsel is highly experienced and qualified, having successfully litigated and settled numerous class actions, including securities class actions. The adequacy of representation requirement is satisfied.

Page 23 – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

2.      **Rule 23(b)**

After satisfying Rule 23(a), plaintiffs must show that the proposed class action can meet

one of the requirements of Rule 23(b). Plaintiffs rely on Rule 23(b)(3) here, which provides that

a class may be certified if "the court finds that questions of law and fact common to the members

of the class predominate over any questions affecting only individual members," and that a class

action is superior to other available methods. FED. R. CIV. P. 23(b)(3).

The "predominance inquiry is 'far more demanding' than Rule 23(a)'s commonality

requirement." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018) (quoting

*Amchem*, 521 U.S. at 624).  "The main concern of the predominance inquiry under Rule 23(b)(3)

is 'the balance between individual and common issues.'" *Id.* (quoting *Wang v. Chinese Daily*

*News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013)). To show that common issues predominate,

plaintiffs "must show that the common question relates to a central issue" in their claim. *Olean*

*Wholesale*, 31 F.4th at 665. "Courts readily find predominance in securities cases alleging a

common scheme accomplished through misrepresentations and omissions similar to those

alleged here." *Ciuffitteli III*, 2019 WL 1441634, at *15 (determining that common issues

predominated over individual issues in a similar case alleging secondary liability against a law

firm under ORS § 59.115(3)); *accord Amchem*, 521 U.S. at 625 ("Predominance is a test readily

met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

As in *Ciuffitelli III*, the court concludes that the common questions of law and fact are

amenable to common proof and are central to proving plaintiffs' claims. To establish their claims

against DWT, plaintiffs will need to prove: (1) that American Equities violated Oregon securities

law by selling unregistered securities or sold securities by means of untrue statements and

misleading omissions; and (2) that DWT participated or materially aided the sales of those

securities. "Without favorable findings on these critical issues, none of the class claims can

succeed." *Ciuffitelli III*, 2019 WL 1441634, at *16. The class claims will rise or fall in unison.

*See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (holding that

common questions about materiality of misrepresentations in securities fraud case predominated;

"the class is entirely cohesive: It will prevail or fail in unison."). Accordingly, the court finds that

common issues predominate over individual issues.

Rule 23(b) also requires that a class action be "superior to other available methods for the

fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). This inquiry

examines whether "the objectives of the particular class action procedure will be achieved in the

particular case. This determination necessarily involves a comparative evaluation of alternative

mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (internal citation omitted).

Superiority focuses on whether "classwide litigation of common issues will reduce" costs and

promote efficiency. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Class-wide litigation is superior here. The alternative method of resolving this matter

would involve pursuing approximately 103 individual lawsuits or settlements, which would

"unnecessarily burden the judiciary," and "would prove uneconomic for potential plaintiffs." *Id.*

Thus, the court finds that the class action format preferable in this circumstance. Accordingly,

the court finds the superiority requirement is satisfied.

Because the proposed class meets the requirements of Rule 23(a) and (b)(3), plaintiffs'

motion for preliminary certification of the proposed class for settlement purposes should be

granted.

Page 25 – FINDINGS AND RECOMMENDATION ON PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT

**C.**    *Distribution Plan is Fair and Reasonable*

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994)).  It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits. *Id.*

The proposed Distribution Plan is described in the Notice and seeks to disperse the monies in the Settlement Fund on *pro rata* basis using the class member's AEM Fund account balance on May 10, 2019, as adjusted. (Notice at 6-7; Claim Form at 10-12.) The named plaintiffs will receive the same *pro rata* amount as all other class members. Plaintiffs describe that using May 10, 2019 as a starting point treats each class member equally and is based on the principal and interest each is owed on the same date. Plaintiffs also contend that using their account balances as of that date relieves class members of the administrative burden of establishing their individual claims because the Receiver already has confirmed those amounts. (Pls.' Mot. Prelim. Approv. at 28.)

Additionally, the Distribution Plan permits adjustments to each class member's May 10, 2019 account balance. Plaintiffs describe that a class member may have received a distribution from the Receiver which would reduce their "net recognized loss," or a class member may have paid money to the Receiver to settle a clawback claim, which would increase their net recognized loss.

The court has reviewed the Distribution Plan. It was formulated with the assistance of the Receiver and compensates all class members in a similar manner based on their account balance and net recognized loss. Accordingly, the court finds the plan is fair, reasonable, and adequate. *Ciuffitelli III*, 2019 WL 1441634, at *19 (approving Plan of Allocation that compensated all class members equally based on their net losses).

### D.    *Form and Method of Notice*

After the court has determined that preliminary approval of the settlement and provisional class certification are appropriate, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," provided that the parties offer the court enough information to "determine whether to give" such notice. FED. R. CIV. P. 23(e)(1). For classes certified for settlement purposes under Rule 23(b)(3), the court "must direct to class members the best notice that is practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B). Rule 23(c)(2) governs the form and content of a proposed notice. Although notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. Oct. 8, 2014) (finding form of notice was reasonably calculated to provide notice and was best under circumstances).

Plaintiffs have provided the court with an Updated Notice that incorporates a change suggested by the Banks.  (Supp. Rake Decl. Ex. B, ECF No.102.) The Updated Notice contains each requirement specified in Rule 23(c)(2). Plaintiffs propose to have the Claims Administrator send a copy of the Updated Notice and the Proof of Claim and Release Form to all potential class members at their last known address provided in American Equities records. The Claims

Administrator also will maintain settlement website dedicated to the settlement and include the telephone number and email address in all written materials.

The court finds that the content of the Updated Notice is reasonably calculated to inform the absent class members. Here, the Notice itself clearly identifies the nature of the action; the class definition; the claims, issues, and defenses; and the options available to the putative class members–to appear through an attorney or exclude themselves from the class; the method for doing so; and the binding effect of a class judgment.

Therefore, the court finds that the proposed form and method of the Updated Notice comply with the requirements in Rule 23, satisfy due process, and provide the best practicable notice under the circumstances. *See Ontiveros*, 303 F.R.D. at 367 (finding notice provided by claims administrator satisfied Rule 23); *Ciuffitelli III*, 2019 WL 1441634, at *20 (finding notice by mail, publication, and website was fair, reasonable and adequate to notify investor class).

**E.    Class Counsel**

Plaintiffs also request that current co-counsel, Larkins Vacura Kayser LLP (LVK) and Esler Stephens & Buckley, PP (Esler Stephens), be appointed Class Counsel. Both firms have represented plaintiffs since the outset of this litigation. The Banks do not challenge counsel's qualifications and the court notes that these firms have extensive experience handling class actions, including complex securities cases. The court has reviewed their qualifications, efforts, and resources committed previously, and as noted above, finds that they will fairly and adequately represent the putative class. Accordingly, the court recommends that LVK and Esler Stephens be appointed Class Counsel.

**F.    Claims Administrator**

As described above, the motion for preliminary approval asks the court to appoint

Transeth & Associates, LLC as Claims Administrator. (Pls.' Mot. Prelim. Approv. at 29.) The

court has reviewed Transeth's qualifications and recommends the firm be appointed as Claims

Administrator.

## CONCLUSION

For the above reasons, plaintiffs' Motion for Preliminary Approval (ECF No. 89), as

Supplemented by the Updated Notice Form (ECF No. 101), should be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to District Judge Marco A.

Hernandez. Objections, if any, are due within fourteen days. If no objections are filed, the

Findings and Recommendation will go under advisement on that date. If objections are filed, a

response is due within fourteen days. When the response is due or filed, whichever date is

earlier, the Findings and Recommendation will go under advisement.

DATED: September 5, 2023.


_____
/s/ Jeff Armistead

JEFF ARMISTEAD
United States Magistrate Judge