Christopher J. Kayser, OSB #984244
cjkayser@lvklaw.com
John C. Rake, OSB #105808
jrake@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Ph: (503) 222-4424
Fax: (503) 827-7600

John W. Stephens, OSB #773583
stephens@eslerstephens.com
Michael J. Esler, OSB #710560
esler@eslerstephens.com
ESLER STEPHENS & BUCKLEY, LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Ph:  503-223-1510
Fax: 503-294-3995

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIANE ANDERSON, trustee of the Diane L. Anderson Revocable Trust; BONNIE BUCKLEY, trustee of the Bonnie K. Buckley IRA; CARL AND KIRBY DYESS, trustees of the Dyess Family Trust; PETER KOUBECK, an individual and trustee of Peter L. Koubeck IRA; MICHAEL PETERSON, trustee of the Michael T. Peterson IRA; and ED WILSON, an individual, | Case No.: 3:20-cv-01194-AR<br><br>**CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: April 4, 2024<br>Time: 10:30 a.m.<br>Courtroom 9B |
| Plaintiffs, | |
| v. | |
| DAVIS WRIGHT TREMAINE LLP, a Washington limited liability partnership; ROSS MILES, an individual; MAUREEN WILE, an individual; PACIFIC PREMIER BANK, a California chartered bank; and RIVERVIEW COMMUNITY BANK, a Washington chartered bank, | |
| Defendants. | |

# TABLE OF CONTENTS

CERTIFICATION OF CONFERRAL ........................................................................................ 1

MOTION ................................................................................................................................... 1

MEMORANDUM IN SUPPORT OF MOTION ....................................................................... 2

   I. FACTUAL BACKGROUND ............................................................................................ 2

     A. Preliminary Approval of Settlement ........................................................................... 2

     B. Allegations and Procedural Posture ............................................................................ 3

     C. The Settlement Process ............................................................................................... 5

     D. Administration of Notice ............................................................................................. 6

       1. U.S. Mail ................................................................................................................ 6

       2. Settlement Website ................................................................................................ 6

     E. Class Member Response ............................................................................................... 6

   II. ARGUMENT ................................................................................................................... 7

     A. The Settlement Class should be finally certified......................................................... 7

       1. The Class satisfies the Rule 23(a) and (b)(3) requirements for certification. ................ 7

       2. The Court-approved method of notice satisfies Due Process and has been fully
         implemented............................................................................................................ 7

     B. The Settlement is "fair, reasonable, and adequate."..................................................... 9

       1. Rule 23(e) Factors ............................................................................................... 11

         a. Class Representatives and Class Counsel have adequately represented the
           Class. ............................................................................................................... 11

         b. The Settlement was negotiated at arm's length. ....................................................... 12

         c. The relief provided for the Class is adequate.......................................................... 13

           i. The costs, risks and delay of trial and appeal weigh in favor of Settlement
             approval................................................................................................... 13

           ii. The effectiveness of the method of distribution and claim processing
             weighs in favor of Settlement approval. .............................................. 15

           iii. The requested attorneys' fees weigh in favor of Settlement approval. ............... 15

           iv. Rule 23(e)(3) requires identification of the Supplemental Agreement. .............. 17

         d. Class members are treated equitably........................................................................ 18

       2. The *Churchill* Factors........................................................................................... 19

         a. The strength of Class Representatives' case weighs in favor of Settlement
           approval. ........................................................................................................ 19

b. The risk, expense, complexity, and likely duration of further litigation weighs in favor of Settlement approval. ............................................................... 21

c. The risk of maintaining class action status through trial weighs in favor of Settlement approval. ............................................................................... 21

d. The amount offered in settlement weighs in favor of Settlement approval. ............. 22

e. The extent of discovery completed and the stage of the proceedings weigh in favor of Settlement approval. ............................................................... 23

f. The experience and views of counsel weigh in favor of Settlement approval. ......... 24

g. None of the parties in this case is a governmental entity. ........................................ 24

h. The reaction of Class Members to the proposed Settlement weighs in favor of Settlement approval. ............................................................................... 24

C. The distribution plan should be finally approved. ............................................................. 24

III. CONCLUSION .................................................................................................................... 26

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Adamson v. Lang*
  236 Or. 511 (1964)....................................................................................................20

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir. 2015) .................................................................................9

*Arnold v. Fitflop USA, LLC*
  No. 11-CV-0973 W(KSC), 2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) ..................24

*Bellinghausen v. Tractor Supply Co.*
  306 F.R.D. 245 (N.D. Cal. 2015)..............................................................................14

*Briseño v. Henderson*
  998 F.3d 1014 (9th Cir. 2021) ...........................................................................10, 15

*Carlin v. DairyAmerica, Inc.*
  380 F. Supp. 3d 998 (E.D. Cal. 2019) .................................................................13, 14

*Chun-Hoon v. McKee Foods Corp.*
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ......................................................................21

*Churchill Village, LLC v. General Electric*
  361 F.3d 566 (9th Cir. 2004) ...................................................................................19

*Ciuffitelli v. Deloitte & Touche LLP*
  Case No. 3:16-CV-00580-AC, 2018 WL 4568737 (D. Or. Aug. 1, 2018)............20, 22

*Cotton v. Hinton*
  559 F.2d 1326 (5th Cir. 1977) .................................................................................12

*Cuellar v. First Transit Inc.*
  Case No. 8:20-CV-01075-JWH-JDE, 2024 WL 83231 (C.D. Cal. Jan. 8, 2024) ............10, 12, 23

*General Telephone Co. of the Southwest v. Falcon*
  457 U.S. 147 (1982)..................................................................................................21

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ................................................................9, 10, 11, 19

*Hefler v. Wells Fargo & Co.*
  Case No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)................25

*Hessefort v. Super Micro Computer, Inc.*
  Case No. 18-CV-00838-JST, 2023 WL 7185778 (N.D. Cal. May 5, 2023) ................22

*In re Bluetooth Headset Products Liability Litigation*
  654 F.3d 935 (9th Cir. 2011) ...........................................................................16, 19

*In re Easysaver Rewards Litigation*
  906 F.3d 747 (9th Cir. 2018) ..................................................................................16

*In re Equity Funding Corp. of America Securities Litigation*
603 F.2d 1353 (9th Cir. 1979). .................................................................................26

*In re Extreme Networks, Inc. Securities Litigation*
Case No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .........................19, 20

*In re Facebook, Inc.*
822 F. App'x 40 (2d Cir. 2020) .................................................................................19

*In re Facebook, Inc., IPO Securities & Derivative Litigation*
343 F. Supp. 3d 394 (S.D.N.Y. 2018) .......................................................................19

*In re Mego Financial Corp. Securities Litigation*
213 F.3d 454 (9th Cir. 2000) ..........................................................................13, 14, 23

*In re Merrill Lynch Tyco Research Securities Litigation*
249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................................25

*In re Omnivision Technologies, Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................15, 21, 23, 25

*In re Pacific Enterprises Securities Litigation*
47 F.3d 373 (9th Cir. 1995) .....................................................................................12

*In re Polaroid ERISA Litigation*
240 F.R.D. 65 (S.D.N.Y. 2006) ...............................................................................11

*In re Zynga Inc. Securities Litigation*
Case No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..............................18

*Kim v. Allison*
8 F.4th 1170 (9th Cir. 2021) .............................................................................10, 19

*Lane v. Brown*
166 F. Supp. 3d 1180 (D. Or. 2016) ...........................................................................24

*Lane v. Facebook, Inc.*
696 F.3d 811 (9th Cir. 2012) ...................................................................................16

*Martinez v. Semi-Tropic Cooperative Gin & Almond Huller, Inc.*
Case No. 1:19-CV-1581 JLT CDB, 2023 WL 3569906 (E.D. Cal. May 19, 2023)...............11, 16

*Mondrian v. Trius Trucking, Inc.*
No. 1:19-CV-00884-DAD-SKO, 2022 WL 2306963 (E.D. Cal. June 27, 2022).......................17

*Mostajo v. Nationwide Mutual Insurance Co.*
No. 2:17-CV-00350-KJM-AC, 2022 WL 3141879 (E.D. Cal. Aug. 5, 2022) ........................16

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004).........................................................................12, 13

*Officers for Justice v. Civil Service Commission*
688 F.2d 615 (9th Cir. 1982) ...............................................................................9, 13

*Pommier v. Deloitte & Touche*
Case No. 16CV36439 (Mult. Co. Cir. Ct. Feb. 14, 2022) ...............................................11

*Redwen v. Sino Clean Energy, Inc.*
   Case No. CV 11-3936 PA (SSx), 2013 WL 12303367 (C.D. Cal. July 9, 2013) .........................19

*Rodriguez v. West Publishing Corp.*
   563 F.3d 948 (9th Cir. 2009) ........................................................................................................21

*Roes, 1-2 v. SFBSC Management, LLC*
   944 F.3d 1035 (9th Cir. 2019) ......................................................................................................10

*Saucillo v. Peck*
   25 F.4th 1118 (9th Cir. 2022) .......................................................................................................10

*Singh v. Roadrunner Intermodal Services, LLC*
   No. 1:15-CV-01497-DAD-BAM, 2019 WL 316814 (E.D. Cal. Jan. 24, 2019) ...........................17

*Swain v. Anders Group, LLC*
   No. 1:21-CV-00197-SKO, 2023 WL 2976368 (E.D. Cal. Apr. 17, 2023) ....................................16

*Taylor v. Populus Group, LLC*
   Case No. 20-CV-0473-BAS-DEB, 2022 WL 3045366 (S.D. Cal. Aug. 2, 2022) ........................12

*U.S. National Bank of Oregon v. Boge*
   311 Or. 550 (1991) ........................................................................................................................25

*Viceral v. Mistras Group, Inc.*
   Case No. 15-CV-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .............................14

*Villegas v. J.P. Morgan Chase & Co.*
   No. CV 09-00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .........................14

*Wong v. Arlo Technologies, Inc.*
   Case No. 5:19-CV-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..........................23

**Statutes**

Oregon Revised Statutes 59.115 ...........................................................................................................20

**Rules**

Federal Rule of Civil Procedure 23 ..............................................................................................passim

**Treatises**

Alba Conte & Herbert B. Newberg
   *Newberg on Class Actions* (4th ed. 2002) ....................................................................................13

**Secondary Sources**

Laarni T. Bulan & Laura E. Simmons
   *Securities Class Action Settlements: 2022 Review & Analysis*, Cornerstone Research (2023) .....22

## CERTIFICATION OF CONFERRAL

In compliance with LR 7-1, the parties made a good faith effort to confer regarding the issues in this motion. Defendant Davis Wright Tremaine ("DWT") does not oppose this motion or relief requested. Defendants Pacific Premier Bank and Riverview Community Bank (collectively with Pacific Premier, the "Banks") opposed preliminary approval of the DWT settlement based on objections to personal jurisdiction and to entry of a claims bar order containing a pro tanto contribution claims bar credit, which will be addressed in a forthcoming motion for entry of a claims bar order. They reserve the right to respond to this Motion after reviewing it. Defendant Miles also opposed preliminary approval of the DWT settlement relating to the claims bar contribution credit issue, but takes no position on this motion. Defendant Wile has not appeared.

## MOTION

Pursuant to the Court's Order, ECF 172, adopting in full United States Magistrate Judge Armistead's Findings and Recommendation, ECF 113, and the Court's Amended Order Preliminarily Approving Settlement and Providing for Notice, ECF 179, Plaintiffs Diane Anderson (as trustee of the Diane L. Anderson Revocable Trust), Bonnie Buckley (as trustee of the Bonnie K. Buckley IRA), Carl and Kirby Dyess (as trustees of the Dyess Family Trust), Peter Koubeck (an individual and as trustee of the Peter L. Koubeck IRA), Michael Peterson (as trustee of the Michael T. Peterson IRA), and Ed Wilson (collectively, "Class Representatives") move the Court for an order granting (1) final approval of the Class Action Settlement Agreement dated August 26, 2022 ("Settlement") between Class Representatives and DWT; (2) certification of the Settlement Class; and (3) approval of the Distribution Plan. All capitalized terms used, but not defined herein, shall have the same meaning as provided in the Settlement. This motion is based on the Declarations of John C. Rake ("Rake Decl."), John W. Stephens ("Stephens Decl."), Gary N. Hardiman ("Hardiman

Decl."), and Norman S. Transeth ("Transeth Decl.") filed with it, and on the pleadings and records of this action.

## MEMORANDUM IN SUPPORT OF MOTION

## I. FACTUAL BACKGROUND

### A. Preliminary Approval of Settlement

The Court has granted preliminary approval of the Settlement, pursuant to which DWT has agreed to pay a total amount of $4.5 million that will be split between the Class, Beattie Plaintiffs, and the Receiver. Rake Decl., Ex. A. The total settlement amount to be paid to the Class is $3,677,000. Rake Decl., Ex. A at 6. Pursuant to a Supplemental Agreement, the Receiver has agreed to accept $36,819 of the Class's portion of the settlement funds from DWT in exchange for the Receiver's release of claims against DWT. Rake Decl., Ex. B at 2.

The Class that has been provisionally certified includes: (a) each Oregon citizen who was sold a security issued by American Equities in American Eagle Mortgage 100, LLC; American Eagle Mortgage 200, LLC; American Eagle Mortgage 300, LLC; American Eagle Mortgage 400, LLC; American Eagle Mortgage 500, LLC; American Eagle Mortgage 600, LLC; American Eagle Mortgage Mexico 100, LLC; American Eagle Mortgage Mexico 200, LLC; American Eagle Mortgage Mexico 300, LLC; American Eagle Mortgage Mexico 400, LLC; American Eagle Mortgage Mexico 500, LLC; American Eagle Mortgage I, LLC; American Eagle Mortgage II, LLC; and American Eagle Mortgage Short Term, LLC (collectively, "AEM Funds"), and is owed money with respect to that investment; and (b) each person who is a co-claimant with an Oregon citizen identified in subsection (a). In addition, there are certain Beattie Plaintiffs whom the Court identified as fitting within the Class definition during the remand proceedings, ECF 42 at 13, but who were excluded from recovering from the Class portion of the settlement to avoid a double recovery. Such persons (Robert MacLellan, Gay MacLellan, RSM Revocable Trust, and M2M

Development Inc. 401k PSP) are expressly identified on the proof of claim form to avoid their making a claim on the Settlement through the Class. ECF 89-3 at 3.

**B. Allegations and Procedural Posture**

American Equities[1] sold securities in the form of promissory notes and membership interests in certain AEM Funds by means of untrue statements and misleading omissions in violation of the Oregon Securities Law. DWT was American Equities' law firm; it prepared offering materials used in connection with the sales of securities for the AEM Funds and provided legal services relating to the AEM Funds' offerings. DWT's relationship with AEM apparently ended in 2010. Class Representatives allege that DWT is liable pursuant to ORS 59.115(3) for participating and materially aiding in unlawful sales of AEM Fund securities, both during the time period it was representing AEM in connection with the sale of securities and after it ceased doing legal work for AEM.

Class Representatives filed this action in Multnomah County Circuit Court on February 25, 2020. ECF 1-1 at 1. The original complaint named DWT as the only defendant. Class Representatives filed a First Amended Complaint on July 17, 2020, ECF 1-1 at 62, which added Miles, Wile, and Pacific Premier Bank as defendants. On July 22, 2020, DWT removed the action to this Court. ECF 1 at 1. Class Representatives moved for remand to state court. ECF 16. On July 14, 2021, Judge Acosta issued findings and recommendation concluding that there were 104 class members and the motion to remand should be denied. ECF 42. Judge Hernández largely adopted Judge Acosta's findings and denied Class Representatives' motion to remand on February 23, 2022. ECF 52. On March 25, 2022, following resolution of the remand motion, Class Representatives

---

[1] American Equities, Inc. ("AEI"); its principals, defendants Ross Miles and Maureen Wile; and AEI affiliate American Eagle Mortgage Management ("AEMM") are collectively referred to as "American Equities."

filed a Second Amended Complaint that added Riverview Community Bank as a defendant. ECF 60.

On October 6, 2022, Class Representatives filed a motion for preliminary approval of the Settlement. ECF 89 at 1. The Banks opposed the motion, arguing that the contribution claims bar[2] in the Settlement is prejudicial to them. ECF 97 at 7; ECF 98. On November 21, 2022, Class Representatives filed a Supplemental Motion for Preliminary Approval of the Settlement, ECF 101, which included the finalized agreement between the Receiver and DWT described above, and an updated form of Notice to the Class. ECF 102-1 at 2, 14. On September 5, 2023, Judge Armistead issued findings and recommendation granting the Class Representatives' Motion for Preliminary Approval, as supplemented with the Updated Notice. ECF 113; ECF 114. On October 3, 2023, the Banks filed objections to these findings and recommendation, ECF 122; ECF 123, to which the Class Representatives responded on October 17, 2023. ECF 134. Judge Hernández adopted Judge Armistead's findings and recommendation regarding the motion for approval of the Settlement in full on December 14, 2023, ECF 172, and entered a further detailed Amended Order regarding the same on January 5, 2024. ECF 179.

On January 9, 2024, Class Representatives filed an unopposed motion to stay the action against the Banks, with the case against Miles and Wile remaining active, and the ongoing approval process of the Settlement with DWT continuing. ECF 181. The Court granted the motion to stay on January 11, 2024. ECF 183.

---

[2] Class Representatives and DWT will be filing a joint motion for entry of a claims bar order that addresses this issue related to the DWT settlement approval..

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

### C. The Settlement Process

Class Counsel began working on this matter in late summer 2019. Over the course of several months, counsel actively investigated the case and potential defendants, ultimately filing a complaint against DWT in February 2020. Rake Decl., ¶¶ 3–4, Stephens Decl., ¶ 6.

Prior to the mediation, Class Counsel received more than 122,600 pages of documents from the parties and third parties, principally the Receiver. Rake Decl., ¶ 8. Approximately 20,700 pages of Receiver documents related to DWT, while DWT separately produced approximately 4,400 pages of discovery. *Id.* In addition to extensive document review and production, Class Counsel and their staff also participated over many months in locating and identifying all members of the class, conducting witness interviews and legal research in connection with the remand motion, and preparing more detailed Amended Complaints. Rake Decl., 6, Stephens Decl., ¶ 8.

On December 1, 2021, Class Counsel and DWT's counsel, along with the counsel for the Banks, counsel for the Receiver, and counsel for Beattie Plaintiffs, participated in a lengthy mediation session with Robert A. Meyer, JAMS Mediation, Arbitration and ADR Services. Rake Decl., ¶¶ 7, 9. Negotiations with DWT lasted into the evening. *Id.* DWT reached tentative settlement terms with Class Representatives, Beattie Plaintiffs, and the Receiver, with DWT agreeing to pay a total settlement amount of $4.5 million that would be split between the Class, Beattie Plaintiffs, and Receiver. *Id.* ¶ 9. Committing the settlement terms to paper took many months due to various factors, including, among other things, the complexities of allocating the total settlement amount among the different investor groups and COVID-related complications that affected attorney's availability. *Id.* ¶¶ 10–12, Stephens Decl., ¶ 12.

The fully-executed Settlement is dated August 26, 2022. Rake Decl., Ex. A. The Supplemental Agreement is dated October 28, 2022. Rake Decl., Ex. B. The Supplemental Agreement had been negotiated, but not finalized and signed, at the time the Settlement with DWT

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

was executed. *Id.*, ¶ 15. The court in charge of the Receivership granted approval of the

Supplemental Agreement on November 22, 2022. *Id.*

### D. Administration of Notice

Paragraph 10 of the Amended Order Preliminarily Approving Settlement and Providing for

Notice approved the form and methods proposed in the Motion for Preliminary Approval, ECF 179

at 4, as modified slightly by the Updated Notice attached as Ex. A to the Hardiman Decl. The

administration of notice was implemented by the Claims Administrator, Transeth & Associates,

LLC ("Transeth"), as assisted by Class Counsel, as follows:

#### 1. U.S. Mail

Class Counsel printed and sent copies of the Updated Notice and Proof of Claim to Class

Members through the U.S. Mail on January 19, 2024. Hardiman Decl., ¶ 2. With respect to six

Updated Notice packets that were returned as undeliverable, Transeth, with the assistance of Class

Counsel, obtained updated addresses for those six Class Members and mailed the Updated Notice

and Proof of Claim to those addresses. Transeth Decl., ¶ 4.

#### 2. Settlement Website

No later than January 24, 2024, the Settlement website was established at

www.AmericanEagleClassAction.com, where Class Members can view and print the Updated

Notice and Proof of Claim, the Settlement and Supplemental Agreement, and all orders related to

the motion for preliminary approval of the Settlement. Hardiman Decl., ¶ 3.

### E. Class Member Response

As of February 14, 2024, Transeth has received 41 completed claim forms. Transeth Decl.,

¶ 5. Also as of February 14, 2024, no objections or requests for exclusion from the Class have been

received by Class Counsel or the Claims Administrator. *Id.;* Rake Decl., ¶ 18; Transeth Decl., ¶ 5.

## II. ARGUMENT

### A. The Settlement Class should be finally certified.

The Class Representatives respectfully request that the Court grant final certification of the Class as a settlement class because: (1) the Class satisfies the requirements of Rule 23(a) and (b)(3); and (2) the Court-approved form and method of the Updated Notice and Proof of Claim satisfy Rule 23 and due process requirements and have been fully implemented pursuant to the Court's orders.

#### 1. The Class satisfies the Rule 23(a) and (b)(3) requirements for certification.

The Court completed the first step in the settlement approval process when it granted preliminary approval of the Settlement and provisionally certified the Class. ECF 113 at 29; ECF 172; ECF 179. The Court's September 5, 2023 Findings and Recommendation made specific findings that the Class meets each of the four Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy. ECF 113 at 21–23; *see also* ECF 172; ECF 179 at 2.

Similarly, the Court found that the Class met each of the Rule 23(b)(3) requirements that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." ECF 113 at 24–25. Class Representatives respectfully submit that nothing has changed since these findings were made and they remain accurate.

#### 2. The Court-approved method of notice satisfies Due Process and has been fully implemented.

Notice provided to a class that is certified under Rule 23(b)(3) must be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Court's Findings and Recommendation approved the form and method of notice. ECF 113 at 27–28.[3] Specifically, the Court noted that the Claims Administrator will "send a copy of the Updated Notice and the Proof of

---

[3] The Court further approved the Updated Notice in its amended order. ECF 179 at 4 & n.1.

Claim and Release Form to all potential class members at their last known address provided in American Equities records" and "maintain [a] settlement website dedicated to the settlement and include the telephone number and email address in all written materials." *Id.* Thus, the court concluded that the "proposed form and method of the Updated Notice comply with the requirements in Rule 23, satisfy due process, and provide the best practicable notice under the circumstances." *Id.* at 28. *See also* ECF 179 at 4 ("The Court finds that the form and methods of notifying Class Members of the Settlement set forth herein and the form's terms and conditions meet the requirements of due process and Rule 23.").

Because the Court previously determined that the form and method of Updated Notice complied with Rule 23 and Due Process requirements, and because the Claims Administrator, with support from Class Counsel, adhered to the method of Updated Notice approved by the Court, the notice sent to the Class complied with Rule 23 and due process requirements and is the best notice practicable under the circumstances, clearly and concisely informing Class members of their rights with respect to the Settlement. As a result, the Court should grant final certification of the Class as a settlement class.

Finally, the Court, in its preliminary approval order, appointed LVK and Esler Stephens as Class Counsel. ECF 113 at 28 (Judge Armistead's recommendation that LVK and Esler Stephens be appointed as Class Counsel); ECF 172 at 2 (order adopting Judge Armistead's findings and recommendation in full). The Court should confirm that appointment as part of the final approval of the Settlement. Fed. R. Civ. P. 23(c)(1)(B). For the reasons discussed in the preliminary approval opinion and order, and based on their diligence in identifying and bringing claims, experience in handling securities class actions and other complex litigation, knowledge about applicable law, and resources committed for the Class, LVK and Esler Stephens have fairly and adequately represented the interests of the Class. Rake Decl., ¶¶ 3–13, Ex. D; Stephens Decl., ¶¶ 2–12, Exs. A, B, C.

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

**B. The Settlement is "fair, reasonable, and adequate."**

Rule 23(e) requires Court approval and notice before a putative class action may be settled: "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit has "repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (simplified). As the court explained in *Officers for Just. v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), "voluntary conciliation and settlement are the preferred means of dispute resolution," which "is especially true in complex class action litigation." The "fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Id.* Rather,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id. See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Pursuant to subsection (e)(2) of Rule 23, the Court may approve a settlement that will bind class members "only on finding that it is fair, reasonable, and adequate" after considering the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of

payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

With respect to Rule 23(e)(2)(C)(iii) regarding attorney fees, the Ninth Circuit further instructs

courts to "analyze three factors: (1) whether counsel 'receive[d] a disproportionate distribution of

the settlement'; (2) whether the parties agreed to a 'clear sailing arrangement'; and (3) whether the

settlement includes a 'kicker' or 'reverter' clause." *Cuellar v. First Transit Inc.*, Case No. 8:20-CV-

01075-JWH-JDE, 2024 WL 83231, at *3 (C.D. Cal. Jan. 8, 2024) (quoting *Briseño v. Henderson*,

998 F.3d 1014, 1026–27 (9th Cir. 2021)). Other factors also considered by the Ninth Circuit

include:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status throughout
> the trial; (4) the amount offered in settlement; (5) the extent of discovery completed
> and the stage of the proceedings; (6) the experience and views of counsel; (7) the
> presence of a governmental participant; and (8) the reaction of the class members of
> the proposed settlement.

*Id.* at *4 (quoting *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021)). *See also Hanlon*, 150 F.3d at

1026. Finally, when, as here, "the parties negotiate a settlement agreement before the class has been

certified, settlement approval requires a higher standard of fairness and a more probing inquiry than

may normally be required under Rule 23(e)." *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022)

(quoting *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019)). This level of

review is meant "to ensure that class representatives and their counsel do not secure a

disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to

represent." *Roes*, 944 F.3d at 1049 (simplified). This means that "the district court must show it has

explored comprehensively all factors, and must give a reasoned response to all non-frivolous

objections." *Kim*, 8 F.4th at 1178 (simplified).

### 1. Rule 23(e) Factors

#### a. Class Representatives and Class Counsel have adequately represented the Class.

"To determine adequacy of representation under Rule 23(e)(2), the Court may consider whether the interests of the named plaintiff are aligned with the interests of the Class Members." *Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.*, Case No. 1:19-CV-1581 JLT CDB, 2023 WL 3569906, at *12 (E.D. Cal. May 19, 2023) (simplified). Class Representatives and Class Counsel have adequately represented the Class in connection with this litigation and the Settlement. Class Representatives have claims that are typical of and coextensive with those of the Class and have no interests that are antagonistic to members of the Class. *Hanlon*, 150 F.3d at 1020. Class Representatives and the Class "share the common goal of maximizing recovery, [so] there is no conflict of interest between the class representatives and other class members." *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Class Counsel, who are experienced and have received recognition for their work in handling significant securities cases and class action litigation like this matter, have diligently represented the Class for years throughout this highly contentious litigation. Rake Decl., ¶¶ 3–13; Stephens Decl., ¶¶ 6–12. For example, Class Counsel previously represented 140 investors who lost more than $50 million in investments in Aequitas Capital Management in four related cases, which included achieving favorable settlements with multiple defendant groups and a receiver. *See, e.g., Pommier v. Deloitte & Touche*, Case No. 16CV36439 (Mult. Co. Cir. Ct. Feb. 14, 2022); Rake Decl., Ex. D at 3; Stephens Decl., ¶¶ 2, 6. A list of other securities matters and class actions handled by Class Counsel is found in supporting declarations. Rake Decl., Ex. D; Stephens Decl., ¶ 2.

The Class Representatives and DWT reached the Settlement only after nearly two years of investigation and discovery had taken place. *See, e.g.*, Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note to 2018 amendment (analysis under this factor includes, for example, "the nature

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

and amount of discovery" undertaken to date in the litigation). As described above, Class Counsel began investigating this case in late summer of 2019, conducting extensive document discovery and witness interviews over a period of many months before filing a complaint against DWT in February 2020. Thereafter, Class Counsel continued investigating the matter, reviewing thousands of pages of documents, preparing key pleadings and briefs, preparing for the mediation that took place in December 2021, and successfully negotiating a partial settlement that provides significant monetary relief to Class Members. Rake Decl., ¶ 9; Stephens Decl., ¶ 11.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). *See also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (same); *Taylor v. Populus Grp., LLC*, Case No. 20-CV-0473-BAS-DEB, 2022 WL 3045366, at *7 (S.D. Cal. Aug. 2, 2022) ("Because the parties' counsel are the ones most familiar with the facts of the litigation, courts give great weight to their recommendations." (simplified)). "[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

In short, Class Counsel and Class Representatives have adequately represented the Class and this factor weighs in favor of final approval of the Settlement.

### b. The Settlement was negotiated at arm's length.

The Settlement arises out of extended, informed, arm's-length negotiations between experienced counsel for the Parties, including a lengthy mediation with Robert A. Meyer of JAMS Mediation, Arbitration and ADR Services. Rake Decl., ¶ 9; Stephens Decl., ¶ 11. "The presence and assistance of an experienced mediator in the settlement process strongly suggests that the settlement is non-collusive." *Cuellar*, 2024 WL 83231 at *5 (simplified).

Here, because the parties negotiated at arm's length, reaching an agreement with the aid of a neutral mediator and experienced counsel on all sides, this factor weighs in favor of approval.

### c. The relief provided for the Class is adequate.

The third factor examines whether "the relief provided for the class is adequate" considering "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

### i. The costs, risks and delay of trial and appeal weigh in favor of Settlement approval.

The Second Amended Complaint seeks damages in the approximate amount of $25.3 million from five defendants. ECF 60 at 60. The Settlement, in turn, resolves the dispute as to one defendant only—DWT—in exchange for payment of just under $3.7 million, nearly 15% of the total damages sought. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526 (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)).

"To determine whether [a] settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1011 (E.D. Cal. 2019) (simplified). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Just.*, 688 F.2d at 628). The adequacy of the amount offered in settlement "cannot be assessed in a vacuum. Rather, it must be considered in

light of the strength of the plaintiff's case and the risks in pursuing further litigation." *Viceral v. Mistras Grp., Inc.*, Case No. 15-CV-02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (simplified). *See also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.") (citing *Mego*, 213 F.3d at 459). As the *Carlin* court observed, "[c]ourts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount." 380 F. Supp. 3d at 1011 (simplified); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement with approximately 8.5% to 25.4% recovery of the anticipated total recovery).

Here, the substantial relief (nearly $3.7 million) that will be received by the Class pursuant to the partial settlement is highly favorable, especially when viewed against the litigation risks. Due to the complexities inherent in this case and the fact that DWT did not represent AEI after 2010, the certainty of this substantial settlement amount must be judged in the context of the legal and practical obstacles to obtaining a large judgment against DWT at trial. Continuing litigation through the conclusion of discovery, class certification, summary judgment, and trial would be expensive and would delay any recovery to Class Members for years. Moreover, even if the Class Representatives tried the case and prevailed, DWT could appeal the verdict, thus adding years of further delay and expense to the litigation.

For all of these reasons, as well as those discussed above regarding the recommendations of counsel, the sufficient discovery obtained and evaluated prior to Settlement, and more, the amount of the Settlement is clearly adequate.

> The amount Plaintiffs might recover if they prevailed at trial is uncertain. … If the case goes to trial, Plaintiffs' attorneys' fees and costs would increase steadily, cutting further into any award they might receive. Litigation is also time-consuming; if

Defendants were to appeal a jury verdict in favor of Plaintiffs, it could be years before Plaintiffs see a dollar. Against all of this, the Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option.

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) .

### ii. The effectiveness of the method of distribution and claim processing weighs in favor of Settlement approval.

Here, each Class Member will share in the Settlement Fund on a pro rata basis based on their AEM Fund account balance on May 10, 2019, as adjusted. Hardiman Decl., Ex. A at 7-8. Prior to distribution, each Class Member will receive a calculation of their "net recognized loss," and they will have an opportunity to correct any deficiencies in the calculation. *Id.*, Ex. B. at 10. Funds will be distributed directly to Class Members as individual settlement checks. Transeth Decl., ¶ 7. This method will provide for the most efficient distribution process while minimizing any inconvenience to the Class Members. Finally, the "net recognized losses" of the Class Members are based on their verified account balances in the Receivership, adjusted for any distributions from the Receiver. ECF 89 at 28; Hardiman Decl., Ex. B at 10–12. Thus, there is minimal, if any, concern here regarding the possibility of "unjustified claims." *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This factor weighs in favor of final approval.

### iii. The requested attorneys' fees weigh in favor of Settlement approval.

The Ninth Circuit has explained that "the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)). Thus, courts must scrutinize settlements for evidence of collusion, specifically including three signs:

(1) when counsel receive a disproportionate distribution of the settlement;
(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds [or without objection by the

defendant]; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (simplified); *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012).

Here, the Settlement provides that class Counsel's fees must be approved by this Court and that such fees may not exceed 25% of the Settlement Amount. Rake Decl., Ex. A at 12. *See Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-CV-00350-KJM-AC, 2022 WL 3141879, at *6 (E.D. Cal. Aug. 5, 2022) ("The benchmark for attorney's fees in the Ninth Circuit is 25 percent." (citing *In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018))). There is no reversion of any of the Settlement Amount to DWT. Rake Decl., Ex. A at 6. And while DWT has agreed in the Settlement that it will take no position in response to Class Counsel's attorney fee petition (provided it remains under the 25% threshold), "the existence of a clear sailing provision is not necessarily fatal to approval." *Martinez*, 2023 WL 3569906 at *14. Instead, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948 (simplified). Thus, when examining a similar type of clear sailing provision in *Martinez*, the court determined a fee award from the common fund was appropriate, explaining that the clear sailing arrangement "does not mandate a finding of collusion and the factor does not weigh against final approval of the settlement". 2023 WL 3569906 at *14. *See also Swain v. Anders Grp., LLC*, No. 1:21-CV-00197-SKO, 2023 WL 2976368, at *10 (E.D. Cal. Apr. 17, 2023) (determining in the context of clear sailing provision that fees were "reasonable based on evidence submitted by class counsel"); *Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-CV-01497-DAD-BAM, 2019

WL 316814, at *7 (E.D. Cal. Jan. 24, 2019) (again in the context of clear sailing provision, determining that "the requested fees are justified and do not betray the class's interests").[4]

Additionally, where the parties have engaged in mediation, as here, such participation "tends to support the conclusion that the settlement process was not collusive." *Mondrian v. Trius Trucking, Inc.*, No. 1:19-CV-00884-DAD-SKO, 2022 WL 2306963, at *14 (E.D. Cal. June 27, 2022) (simplified). The presence in the negotiations of counsel for the Class Representatives, the Beattie Plaintiffs, and the Receiver further underscores the lack of any collusion. Rake Decl., ¶¶ 7, 9; Stephens Decl., ¶¶ 10–12.

In sum, the Settlement is the result of serious, informed, non-collusive negotiations between the Class Representatives, the Beattie Plaintiffs, the Receiver, and DWT. This factor also weighs in favor of final approval.

### iv. Rule 23(e)(3) requires identification of the Supplemental Agreement.

Aside from the Settlement, the only other agreement at issue here is the related Supplemental Agreement made by Class Representatives and the Receiver. Rake Decl., Ex. B. The general goal of the Supplemental Agreement was to provide consideration to the Receiver from a portion of the settlement funds from DWT in exchange for the Receiver's release of claims against DWT. As noted above, at the time the Settlement was executed, the Supplemental Agreement had been negotiated but not signed. Rake Decl., ¶ 15. The Supplemental Agreement has since been finalized and signed, and the receivership court has approved it, providing for the payment of $36,818.89 to the Receiver from the DWT Settlement. Rake Decl., Ex. A at 2; Ex. B at 1, 6, 11.

---

[4] For all the reasons described in Class Counsel's Motion for Attorney Fees filed herewith, the requested fees are reasonable, justified, and "do not betray the class's interests."

**d. Class members are treated equitably.**

In considering the final Rule 23(e) factor, whether "the proposal treats class members equitably relative to each other," the 2018 Advisory Committee Notes state that "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Here, the Plan of Distribution is designed to compensate each Class Members equally based on their net recognized loss, which derives from their investment account balance on May 10, 2019, as adjusted. Hardiman Decl., Ex. A at 7–8, 16; *id.*, Ex. B at 10–12. There is no preferential treatment when Class Representatives will receive the same pro rata distribution based on their losses as other Class Members, nor are the Class Representatives seeking any sort of incentive award. *See, e.g.*, *In re Zynga Inc. Sec. Litig.*, Case No. 12-CV-04007-JSC, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015). Similarly, once the Settlement is effective, the Class Representatives and Class Members who have not opted out will release all claims for damages against DWT arising out of or relating in any way to (1) any claim that is asserted or could be asserted in the class action, or (2) American Equities, the Receivership Pools[5] and/or American Equities Securities.[6] Thus, this factors weighs in favor of final approval.

---

[5] This is defined as "American Eagle Mortgage 100, LLC; American Eagle Mortgage 200, LLC; American Eagle Mortgage 300, LLC; American Eagle Mortgage 400, LLC; American Eagle Mortgage 500, LLC; American Eagle Mortgage 600, LLC; American Eagle Mortgage Mexico 100, LLC; American Eagle Mortgage Mexico 200, LLC; American Eagle Mortgage Mexico 300, LLC; American Eagle Mortgage Mexico 400, LLC; American Eagle Mortgage Mexico 500, LLC; American Eagle Mortgage Mexico 600, LLC; American Eagle Mortgage I, LLC; American Eagle Mortgage II, LLC; and American Eagle Mortgage Short Term, LLC." Rake Decl., Ex. A at 3. For the sake of clarity, the release applies to investments in American Eagle Mortgage Mexico 600, LLC, even though it is not one of the "Funds."

[6] This is defined as "securities that were in the form of private notes and ownership interests in certain 'American Eagle Mortgage'-branded funds or pools (other than American Eagle Mortgage

### 2. The *Churchill* Factors

As mentioned above, a district court in the Ninth Circuit

examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim*, 8 F.4th at 1178 (quoting *Bluetooth*, 654 F.3d at 946 (citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004))); *see also Hanlon*, 150 F.3d at 1026.

#### a. The strength of Class Representatives' case weighs in favor of Settlement approval.

When entering into the Settlement, the Class Representatives, guided by experienced securities and class action counsel, weighed the risk in continuing with the litigation and proving their claims. "Courts experienced with securities fraud litigation routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear." *Redwen v. Sino Clean Energy, Inc.*, Case No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) (simplified). "Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win." *In re Extreme Networks, Inc. Sec. Litig.*, Case No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (securities litigation is "highly complex," "notably difficult and notoriously uncertain.").

---

III, LLC and American Eagle Mortgage IV, LLC), which are now in receivership (i.e., the Receivership Pools)." Rake Decl., Ex. A at 3.

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

In this case, the claims against DWT arise under the Oregon Securities Law. Under ORS 59.115 (1)(b), a person who sells a security in Oregon by means of untrue statements or misleading omissions is liable to the purchaser for the purchase price plus interest. ORS 59.115 (3), in turn, provides that "[e]very person ... who participates or materially aids in the sale" is jointly and severally liable with the seller. *See, e.g.*, *Adamson v. Lang*, 236 Or. 511, 515 (1964) (lender whose financing "ma[de] it possible" for promoter to sell stock liable to investors). Thus, Class Representatives must prove "that the securities were sold in violation of Oregon Securities law; that is, primary liability. Then, [Class Representatives] must establish that [DWT] participated or materially aided in the sale." *Ciuffitelli v. Deloitte & Touche LLP*, Case No. 3:16-CV-00580-AC, 2018 WL 4568737, at *1 (D. Or. Aug. 1, 2018), *report and recommendation adopted*, 2018 WL 4568586 (D. Or. Sept. 21, 2018).

While the Class Representatives are confident in the strength of their claims, they could face significant legal and factual defenses at summary judgment or trial. In the absence of the Settlement, DWT, who prepared the offering materials between 2003 and 2010, would presumably assert many of the defenses asserted by the Banks in their various motions and objections, including as to the reach of ORS 59.115 (3)'s secondary liability to lawyers, accountants, and other professionals, and as to the Class Representatives' ability to establish AEI's primary liability. Further, DWT may allege as a statutory defense that it "did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the [primary] liability is based." ORS 59.115 (3). Such a defense could require a "battle of the experts" regarding conduct constituting "reasonable care" under these circumstances, and whether AEI's fraud reasonably should have been known by DWT. *See, e.g., Extreme Networks*, 2019 WL 3290770 at *8 (noting that "risks inherent in a 'battle of the experts' of complex economic theories in a jury trial" was a factor in support of approving proposed class action settlement). DWT will also likely try to

minimize the extent of its participation; while Class Representatives allege that the DWT-drafted offering materials were used to sell AEM fund securities from February 2003 through May 2019, DWT likely will contend that it could not have "participated or aided" in sales after 2010, the year the final offering the firm documented closed.

In sum, the difficulties that would be faced by Class Representatives at summary judgment, trial, and appeal weigh in favor of a finding that the Settlement is fair, reasonable, and adequate. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (noting that first factor is satisfied when "there are significant barriers plaintiffs must overcome in making their case").

### b. The risk, expense, complexity, and likely duration of further litigation weighs in favor of Settlement approval.

This factor mirrors the factor in Rule 23(e)(2)(C)(i) regarding "the costs, risks, and delay of trial and appeal." As discussed above, *supra* 13, this factor weighs in favor of final approval.

### c. The risk of maintaining class action status through trial weighs in favor of Settlement approval.

While this Court has preliminarily certified the Class, the certification is for purposes of the Settlement. And while Class Representatives believe this case is well-suited for class action treatment, if the Settlement had not stopped the litigation vis-à-vis DWT, Class Representatives expect DWT may have challenged certification given the multiple Fund offerings and the timing of its representation of AEI. Moreover, any order that "grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). *See also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time." (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *Omnivision*, 559 F. Supp. 2d at 1041 ("Even if the Court were to certify the class, there is no guarantee the certification would

survive through trial, as Defendants might have sought decertification or modification of the class.")))). For these reasons, this factor also weighs in favor of final approval.

### d. The amount offered in settlement weighs in favor of Settlement approval.

The next factor to be considered is the amount offered in settlement. Here, DWT has agreed to pay a total amount of $4.5 million, which will be split between the Class, Beattie Plaintiffs, and the Receiver. The total settlement amount to be paid to the Class is $3,677,000. Rake Decl., Ex. A at 6. Pursuant to the Supplemental Agreement, the Receiver has agreed to accept $36,819 of the Class's settlement funds from DWT in exchange for the Receiver's release of claims against DWT. As noted above, the Settlement resolves this dispute as to one defendant only—DWT—in exchange for payment of just under $3.7 million, nearly 15% of the total damages sought ($25.3 million from five defendants).

The approximate 15% recovery here—from *one* defendant—is higher than class action settlements granted final approval in other securities cases.[7] For instance, the median settlement for securities cases under $25 million in 2022 was 11.1%; for those cases in the range of $25 to $74 million, the median settlement in 2022 was 8.5%. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review & Analysis* 6, Cornerstone Research (2023).[8] *See also Hessefort v. Super Micro Computer, Inc.*, Case No. 18-CV-00838-JST, 2023 WL 7185778, at *6 (N.D. Cal. May 5, 2023) (noting that 22% recovery "is higher than recoveries achieved in other securities fraud class actions of similar size (between $75 and $149 million) which settled for median recoveries of 4.9 percent between 2012 and 2020, and 7.4 percent in 2021"); *Wong v. Arlo*

---

[7] Class Representatives note that the other securities cases are not Oregon Securities Law cases, which often can result in more significant recoveries for investors. *See, e.g., Ciuffitelli*, 2019 WL 6893018.

[8] https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (Last visited February 11, 2024).

*Techs., Inc.*, Case No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021)

(approving a securities class action settlement representing 2.35% of total damages); *Omnivision*,

559 F. Supp. 2d at 1042 (noting that 9% "maximum potential recovery" which, after accounting for

attorney fees and costs, would "give Plaintiffs a certain recovery in excess of 6% of the potential"

was "higher than the median percentage of investor losses recovered in recent shareholder class

action settlements.").

    For these reasons, this factor weighs in favor of final approval.

### e. The extent of discovery completed and the stage of the proceedings weigh in favor of Settlement approval.

    This fifth factor "requires the Court to gauge whether [Class Representatives] had sufficient

information to make an informed decision about the merits of [their] case." *Cuellar*, 2024 WL

83231 at *9 (citing *Mego*, 213 F.3d at 459). "The more discovery that has been completed, the more

likely it is that the parties have a clear view of the strengths and weaknesses of their cases." *Id.*

(simplified).

    The parties here reached Settlement only after a multi-year investigation and extensive

exchange of informal and formal discovery, including more than 122,600 pages of documents from

parties and third parties. Rake Decl., ¶ 8. Further, the assistance of a third-party mediator further

suggests that the parties possessed "a clear view of the strengths and weaknesses of their cases."

*Cuellar*, 2024 WL 83231 at *9. *See also id.* (observing that production of "thousands of lines of

electronic documents and data … gives the Court confidence that [plaintiff] possessed sufficient

information to make an informed decision about the settlement"). This factor weighs in favor of

final approval.

             CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

**f. The experience and views of counsel weigh in favor of Settlement approval.**

Class Counsel are experienced securities class action litigators who have recommended the Settlement as being fair, reasonable, and adequate. Rake Decl., ¶ 17; Stephens Decl., ¶ 13. For this reason, and those described more fully above, *supra* 11, this factor strongly weighs in favor of final approval.

**g. None of the parties in this case is a governmental entity.**

This factor is not relevant as no governmental entity participated in this case.

**h. The reaction of Class Members to the proposed Settlement weighs in favor of Settlement approval.**

The last factor to be considered is the reaction of Class Members to the proposed Settlement. "The absence of significant numbers of objectors weighs in favor of finding the settlement to be fair, reasonable and adequate." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1191 (D. Or. 2016) (simplified).

Class Counsel, on behalf of the Claims Administrator, mailed the Updated Notice and Claim Form to all Class Members on January 19, 2024. In addition, the Updated Notice and Claim Form has been on the website, www.AmericanEagleClassAction.com, since January 24, 2024. As of February 14, 2024, 41 claim forms have been returned and no objections or exclusions have been received. The lack of objections is compelling evidence that the Settlement is fair and reasonable, and is another factor weighing in favor of approval. *See Arnold v. Fitflop USA, LLC*, No. 11-CV-0973 W(KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (class members' reaction "presents the most compelling argument favoring settlement").

**C. The distribution plan should be finally approved.**

Class Representatives also seek final approval of the Distribution Plan. A plan of allocation of settlement funds is subject to the same "fair, reasonable and adequate" standard that governs the

settlement as a whole. *Omnivision*, 559 F. Supp. 2d at 1045 (simplified). Allocation plans that disburse settlement funds to class members on a "pro rata basis based on the relative size" of potential claims have "frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, Case No. 16-CV-05479-JST, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) (citing cases). *See also In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

Here, Class Representatives respectfully request that the Court finally approve the Distribution Plan described in the Updated Notice and Claim Form, whereby each Class Member shares in the Settlement Fund on a pro rata basis based on their AEM Fund account balance on May 10, 2019, as adjusted. Hardiman Decl., Ex. A at 7–8. Using the Class Members' account balances in AEM Funds as of May 10, 2019 as a starting point for the distribution has several benefits. First, using the account balance as of the same date treats each Class Member, including the Class Representatives, the same as every other Class Member. Second, a Distribution Plan that is based on the amounts of principal and interest owed as of the same date best honors each investor's expectations in terms of what they invested and the interest income they were promised. *E.g., U.S. Nat'l Bank of Or. v. Boge*, 311 Or. 550, 565 (1991) (doctrine of good faith and fair dealing "protects reasonable expectations of the parties to a contract" (simplified)). Third, as a practical matter, using account balances as of May 10, 2019 (amounts which have been confirmed by the Receiver) relieves the significant burden that would otherwise fall on Class Members to document their investments as part of the claims process, and could save tens of thousands of dollars in claims administration expenses.

The Distribution Plan proposed in the Updated Notice includes the possibility of several reasonable adjustments to a Class Member's account balance as of May 10, 2019, to arrive at a "net

recognized loss." For example, if a Class Member has received distributions from the Receiver, that will reduce their net recognized loss. In contrast, if a Class Member has paid money to the Receiver to settle clawback claims, for example, that will increase their net recognized loss. Finally, although Class Representatives and their lawyers are not aware of any such Class Members, it is possible some Class Members have obtained settlements with a third party (such as an investment adviser) arising out of their AEM Fund investments. The claim form requires Class Members to disclose any such payments, and calls for such payments to reduce the net recognized loss. These offsets are all appropriate where (a) the third party recovery is for losses that form the basis of the securities class action, (b) the approval of the plan of distribution is derived in part from the fact that the claims of the class members exceed the sums in the settlement fund, (c) the class members are innocent victims, (d) eliminating the offset provision could mean a double recovery for some class members (even if the chances are small), and (e) eliminating the offset provision would mean at the very least that the partial recoveries for the losses of the innocent class members would be more uneven than recoveries with the offset provision in place. *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1357, 1363, 1365 (9th Cir. 1979).

Because it has a reasonable and rational basis and treats all Class Members fairly, the proposed Distribution Plan should be granted final approval.

## III. CONCLUSION

For the foregoing reasons, Class Representatives respectfully request that the Court grant final approval of the Settlement and Distribution Plan, certification of the Settlement Class, appointment of LVK and Esler Stephens as Class Counsel, and enter the partial judgment of dismissal of DWT.

CLASS REPRESENTATIVES' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

DATED: February 15, 2024.

LARKINS VACURA KAYSER LLP

s/ John C. Rake
Christopher J. Kayser, OSB #984244
cjkayser@lvklaw.com
John C. Rake, OSB #105808
jrake@lvklaw.com
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Ph: 503-222-4424
Fax: 503-827-7600

ESLER STEPHENS & BUCKLEY, LLP

s/ John W. Stephens
John W. Stephens, OSB #773583
stephens@eslerstephens.com
Michael J. Esler, OSB #710560
esler@eslerstephens.com
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Ph: 503-223-1510
Fax: 503-294-3995

Of Attorneys for Plaintiffs